## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK, )
and KHADIJA COLE, individually and )
on  behalf of similarly situated persons, )
 )
 ) Civil Action No._____
    Plaintiffs, )
 ) Hon. _____
-vs- )
 )
SAS ANALYTICS )
INC., FAST ENTERPRISES, LLC, and )
CSG GOVERNMENT SOLUTIONS, )
 )
Defendants. )

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

### Introduction

1. The State of Michigan's Unemployment Insurance Agency ("Agency") administers unemployment insurance through automated programs ("programs") which were defectively designed, implemented, and/or maintained, and which has deprived Plaintiffs, and thousands of Michigan's unemployment insurance claimants like them, of their fundamental rights under the constitution, and under Michigan law.

2. In many cases, the programs regularly and as a matter of practice determined that eligible beneficiaries committed unemployment fraud without any factual basis. The programs subjected previous beneficiary payments to renewed automated scrutiny and "robo-adjudication" of new fraud determinations for past benefits paid.

3. Under the robo-adjudication system, if any discrepancy is found between the information reported by a claimant and their former employer, the system flags the claimant's

file as fraudulent. Under the program's automated processes, once this occurs there is often no meaningful way for a claimant to respond to the Agency's allegation of fraud.

4.      This system has resulted in countless unemployment insurance claimants being accused of fraud even though they did nothing wrong. This finding automatically results in a penalty equal to five times the benefits received (the maximum allowed under the state statute). These punitive assessments regularly total $10,000-$50,000 and sometimes more.

5.      Wrongful practices related to the program's determination of fraud include:

   a.    Sending "fraud questionnaires" containing self-incriminating questions, without any explanation of the factual basis for the Agency's fraud allegations or any sufficient information that would provide claimants with a meaningful opportunity to respond;

   b.    At times, failing to send fraud questionnaires at all and the programs issuing robo-determinations of fraud without even having a basis to believe that the questionnaires were received;

   c.    Robo-determinations of fraud based solely on the claimant's silence in not returning the fraud questionnaire;

   d.    Misallocating income a claimant received prior to unemployment across all 13 weeks in the fiscal quarter in which a claim is filed and thereafter issuing a robo-determination of fraud when a claimant truthfully reports no income in a benefit week;

   e.    Automatic robo-determinations of fraud based on differences between the claimant and the employer's characterization of an employment separation without any investigation into whether the discrepancy was the result of administrative error, good faith dispute, or misrepresentation by the employer;

   f.    Sending confusing and defective fraud determination notices that do not inform claimants of the factual basis of the Agency's determination of fraud and do not provide any information to allow claimants to evaluate or respond to the Agency's determination;

   g.    Automatically assessing the maximum penalty allowed by statute—five times overpayment—without any factual basis  to determine intent, all done by computerized robo-determination;

h.   Unauthorized and warrantless seizures of tax returns and wage garnishment without any evidentiary basis or factual finding that would permit the conclusion that that fraud has occurred, depriving claimants of their property without due process of law;

i.   Using unsupported fraud determinations as a basis for indefinite payment plans with the State for which the claimant is financially unable to pay;

6.     The defective programs and/or their implementation resulted in claimants being falsely accused of intentional misrepresentation and assessed onerous financial penalties because of garden variety discrepancies between employer and employee-reported information. The class plaintiffs herein are claimants who have been affected by these unlawful practices.

7.     The class plaintiffs herein are claimants who have been affected by these unlawful practices.

8.     Plaintiffs bring claims under Section 1983, and this Court's equitable powers to enforce their rights under the Due Process Clause and other protections of the United States Constitution, and under the laws of the State of Michigan.

## Jurisdiction

9.     Jurisdiction in this Court over the Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 is provided by 28 U.S.C. §§ 1331 and 1343(3). The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §1983, and Rule 57 of the Federal Rules of Civil Procedure.  Diversity jurisdiction is proper under 28 U.S.C. §§ 1332.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to this action occurred therein.

**Parties**

**Defendants**

11.     Defendant SAS, Inc., upon information and belief, is headquartered at 100 SAS Campus Drive, Cary, North Carolina 27513-2414, and does business with the State of Michigan's Unemployment Insurance Agency through the procurement process overseen by the Michigan Department of Technology, Management and Budget ("DTMB"), and designed, created, implemented, maintains and controls ownership over the production of the "Enterprise Fraud Detection System" ("EDFS").

12.     Defendant FAST Enterprises, LLC, upon information and belief, is headquartered at 7229 South Alton Way, Centennial, CO 80112, and does business with the State of Michigan's Unemployment Insurance Agency through the procurement process overseen by the Michigan DTMB, and designed, created, implemented, maintains and controls ownership over the production of the Michigan Integrated Data Automated System ("MiDAS").

13.     Defendant Consumer Government Services ("CSG"), upon information and belief, is headquartered at 180 N. Stetson Ave., Suite 3200, Chicago, IL 60601, and does business with the State of Michigan's Unemployment Insurance Agency through the procurement process overseen by the Michigan DTMB, through a Procurement Contracting Officer position, and in conjunction with the Agency and DTMB continues to provide full-time, on-site management to oversee MiDAS production support and additional initiatives including:

    a.     Public Act 138 and 241 of 2014 compliance;

    b.     Integrity initiative for the ongoing Enterprise Fraud Detection
           System (EFDS) Project;

    c.     Implementation of the Interstate Reciprocal Overpayment
           Recovery Agreement (IRORA);

d.     UIA and Michigan Administrative Hearing System (MAHS) appeals improvements; and

e.     Development of Standard Operating Procedures for the UIA Tax Office.

14.     Each Defendant's actions were undertaken under color of state law. The term "Defendants" hereafter refers to all Defendants unless otherwise indicated.

**Plaintiffs**

15.     Plaintiff and Class Representative Patti Jo Cahoo ("Cahoo") is a resident of Michigan and was charged with filing a fraudulent claim in 2014 after filing for unemployment benefits.

16.     Plaintiff and Class Representative Kristen Mendyk ("Mendyk") filed for unemployment in December 2009 after being fired from her job in April 2008.  Plaintiff Mendyk received unemployment benefits for one year and was accused of making a fraudulent claim in November of 2016.

17.     Plaintiff and Class Representative Khadija Cole ('Cole") applied for unemployment benefits after being laid off from her position as a mortgage closer in 2014.  One year later, after receiving unemployment benefits, she received a statement indicating that she had made a fraudulent claim and owed approximately $29,000.

<u>Class Action Allegations</u>

18.     Plaintiffs bring this class action under Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of Plaintiffs and all other persons who have been wrongfully accused of fraudulent activity and/or denied benefits they are rightfully entitled to.

19.     The class is so numerous that joinder of all members is impracticable as there are thousands of plaintiffs.

20.     Plaintiffs' claims are typical of the claims of the other members of the Class, as Plaintiff and other members of the Class were injured by being accused of fraudulent activity and assessed egregious fines and/or being denied benefits that they were rightfully entitled to.

21.     Defendants acted wrongfully in the same basic manner to the entire class.

22.     Plaintiffs will fairly and adequately represent the interests of the Class and have retained competent and experienced counsel.

23.     Plaintiffs have no interests that are contrary to or in conflict with those of the class.

### Common Factual Allegations

24.     Pursuant to federal laws, the Michigan Unemployment Insurance Agency ("Agency") collects state payroll taxes from covered employers in Michigan and pays UI benefits to eligible claimants.

25.     To qualify for benefits an individual must establish that they were employed by a covered employer and meet certain wage and work eligibility requirements. A claimant must also establish they were not separated from employment due to misconduct connected to the work and did not voluntarily leave employment without good cause.

26.     Eligible claimants, including the individual Plaintiffs herein, have property interests created by state and federal law in any UI benefits, which are protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the constitutional rights incorporated therein.

27.     Under Defendants' programs, recommendations, and/or implementation, the Agency has applied a computer applications designed, created, implemented, installed, and or maintained by Defendants to search for discrepancies in the records of individuals who are receiving, or have previously received, UI benefits and their employers.

28.     If a discrepancy is found between a record submitted by an employer and corresponding information reported by the claimant when applying for benefits, the Agency's computer program automatically flags the claimant's file as a potential case of claimant misrepresentation.

29.     Even though the discrepancy may also be the result of an employer error or good faith dispute, no corresponding process is employed to flag an employer's file for potential misrepresentation.

30.     This process can occur at any time, even several months after a claimant has stopped collecting benefits and is no longer regularly interacting with the UIA.

31.     Once a claimant's file has been flagged, the computer system begins the process of determining whether or not to open an investigation the claimant for intentional misrepresentation without any human input or evaluation.

32.     The computer thus automatically prepares a form letter addressing the claimant's eligibility for benefits and requesting more information related to potential misrepresentation.

33.     This robo-accusation letter states: "A question of eligibility and/or qualification has been raised on this claim" and instructs the claimant to respond to a set of questions on the reverse side of the form.

34.     If received, this letter is the first time a claimant is informed of an issue regarding their UI benefits.

7

35.    When generated in the computer, this form does not identify "question of eligibility and/or qualification," nor does it state on what information the new question was based.

36.    The reverse side of this form states "Additional information is necessary regarding misrepresentation" and requests that claimants answer two computer generated questions.

37.    First, the claimant is asked: "Did you intentionally provide false information to obtain benefits you were not entitled to receive?" And second, "Why did you believe you were entitled to benefits?" with a list of 8 responses including "I needed the money," "I did not understand how to report my earnings or separation reason," and "Someone else certified (reported) for me."

38.    The form does not provide an option for claimants to state that they believe they are legitimately entitled to unemployment benefits and have reported their information in good faith.

39.    In order to give such an answer a claimant must write in their response under the "other" section of the form.

40.    The document does not provide the claimant with notice of what the discrepancy actually is, making it nearly impossible for a claimant to formulate a proper response to the charge of misrepresentation.

41.    If the Agency does not receive a reply to this letter within ten calendar days or receives a response the program deems unsatisfactory, the Agency's computer system robo-adjudicates the fraud issue and automatically determines that the claimant has knowingly and intentionally misrepresented or concealed information to unlawfully receive benefits.

42.     In many cases, the determination is automated and made by a computer without the benefit of any investigatory review, or human input or evaluation of any kind.

43.     In many cases, the automated programs deliver and/or create defective information, and are defective.

44.     Once a robo-adjudication occurs, the claimant is automatically ineligible for hardship waivers that would otherwise be available.

45.     The accusation of fraud alone is also enough to deprive a claimant of their right to a free advocate under Michigan's Advocacy Assistance Program operated by the Agency. MCL 421.5a.

46.     Once the computer has made this determination, the Agency sends the claimant another form letter entitled "Notice of Determination" which states "Your actions indicate you intentionally misled and/or concealed information to obtain benefits you were not entitled to receive."

47.     The "Notice of Determination" letter also does not state what these actions were, or give any information as to why the claimant is no longer eligible.  The letter terminates benefits on any active claims and states that the person is required to pay the amount assessed on the determination.

48.     Enclosed with this letter is a document titled "Restitution (List of Overpayment)" which lists the amount of alleged overpayment and seeks the repayment of the actual benefits paid in addition to a statutory penalty for fraudulent misrepresentation of four times that amount, for a total assessment of five times the benefits received or sought by the claimant. The five times penalty may be assessed even if the claimant never actually received benefits from the Agency.

9

49.     Claimants have the opportunity to appeal this determination to an Administrative Law Judge within 30 days after the determination is made.

50.     Until a claimant makes such an appeal, an actual Agency employee has often never been involved in evaluating a fraud case, which the computer has robo-adjudicated.

51.     Claimants are often unaware of any issue regarding their UI benefits until after the appeal deadline has passed and they have been assessed thousands of dollars in fines.

52.     This system and software, including its design and implementation, is constitutionally deficient and routinely deprives individual unemployment claimants, who are some of the state's most economically vulnerable citizens, of their most basic constitutional rights.

53.     At all relevant times herein, Defendants, acting under color of law, created, designed, developed, implemented, and continue to maintain programs that are constitutionally deficient and defective.

## Count I
## Negligent Design & Products Liability

54.     Plaintiff hereby restates and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     The defective condition of the automated programs designed, created, implemented, and/or maintained by Defendants constitute a breach by Defendants of an implied warranty, rendering them liable for the injuries sustained by Plaintiffs and class members.

56.     Defendants knew or had reason to know the particular purposes for which the programs were to be used and potential claimant users, such as Plaintiffs and class members,

would rely on Defendants' apparent expertise or judgment furnishing goods suitable for such purposes and uses.

57.    Plaintiffs and class members were unaware that the product created an unreasonable risk of injury.

58.    As a direct and proximate consequence of the breach of implied warranty by Defendants,

Plaintiffs and class members have suffered and will continue to suffer in the future, the following damages: emotional anguish, lost earnings, lost earning capacity, psychological and behavioral damages, and any other damages incidental to the injuries sustained.

59.    Defendants were grossly negligent.

60.    Defendants acted with disregard of a known defect.

<u>**Count II**</u>
<u>**42 U.S.C. §1983 Violation of the 4th and 14th Amendments**</u>

61.    Plaintiffs herein reincorporate the allegations in the above paragraphs.

62.    The administration of unemployment insurance is one that has been traditionally and exclusively administered by the State of Michigan.

63.    By their conduct as described herein, Defendants, while acting under color of law, deprived plaintiffs, and many others like them, of their fundamental constitutional rights, including but not limited to: the right due to process, the right against self-incrimination, the right to not be subjected to excessive fines, and the right to be free of unwarranted searches and seizures.

64.    Defendants are liable for violation of 42 U.S.C. §1983, which prohibits the deprivation under color of law of state law of rights secured under the United States Constitution.

65.     Defendants relied exclusively on the State of Michigan and the federal government to fund the design, creation, implementation, and maintenance of the MiDAS and EDFS software programs.

66.     By and through the design, creation, implementation, instruction to State employees, supervision of the computer systems, and/or maintenance of software programs that were implemented to automate the unemployment insurance disbursement process, Defendants engaged in an activity traditionally and exclusively relegated to the State of Michigan.

67.     The injury incurred by Plaintiffs was one that could only be aggravated by the acts of governmental authority exercised by the State of Michigan.

68.     Defendants have affirmatively participated in devising, creating, promulgating, maintaining, supervising, and/or updating a system that deprives claimants of their rights to due process.

69.     At all times relevant, Defendants, acting under color of law, were required to obey the laws of the United States including those laws identified and described in the 4th and 14th Amendments to the United States Constitution.

A.     **Defendant's MiDAS and fraud detection, collection, and seizure programs fail to comply with minimum due process requirements as mandated by federal law.**

70.     Plaintiffs herein reincorporate their allegations in the above paragraphs.

71.     The federal government, through the Department of Labor, provides monetary grants to states, including Michigan's Unemployment Insurance Agency, in support of state unemployment insurance programs.

72.     To receive certification for such grants, states must assess penalties of no less than fifteen (15) percent of the amount of the erroneous payments, if the state "determines an

erroneous payment…was made to an individual due to fraud committed by such individual." 42 U.S.C. §503(a)(11)(A).

73.    Assessments collected as a penalty for fraud must be deposited into the unemployment fund of the state.  §503(a)(11)(B).

**B.  A core component of the federal grant program includes a mandate that states provide due process to unemployment claimants accused of fraud.  The MiDAS and Enterprise Fraud Detection System ("EDFS") systems violate procedural due process rights by preventing claimants from having meaningful notice, adjudication, or an opportunity for claimants to be heard.**

74.    Plaintiffs herein reincorporate their allegations in the above paragraphs.

75.    Federal law establishes the minimum due process requirements for those who receive grants to support unemployment insurance programs.

76.    Federal law allows for states to recover overpayments by deducting them from future unemployment benefits, subject to the due process requirement that "[a]ny such deduction shall be made only in accordance with the same procedures relating to notice and opportunity for a hearing as apply to the recovery of overpayments of regular unemployment compensation paid by such State." 42 U.S.C. §503 (g)(1).

77.    Federal law also allows states to recover overpayments and penalties through the interception of federal income tax refunds, subject to minimum due process requirements.

78.    Accordingly, states are barred from pursuing collection of unemployment compensation debts, including penalties, through collections actions and the interception of federal income tax refunds, unless specific steps are taken with regard to notice, consideration of evidence, and a fair opportunity to be heard.

79.    26 U.S.C. §6402(f)(3) specifically requires states to provide specific notice and affords claimants no less than sixty (60) days to present evidence, and requires states to consider

evidence from the claimant in determining whether the alleged fraud or other overpayment debt can be enforced:

      (3)    Notice; consideration of evidence.  No State may take action under this subsection until such State –

      (A)    notifies the person owing the covered unemployment compensation debt that the State proposes to take action pursuant to this section;

      (B)    provides such person at least 60 days to present evidence that all or part of such liability is not legally enforceable or is not a covered unemployment compensation debt;

      (C)    considers any evidence presented by such person and determines that an amount of such debt is legally enforceable and is a covered unemployment compensation debt; and

      (D)    satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under subparagraph (C) is valid and that the State has made reasonable efforts to obtain payment of such covered unemployment compensation debt.

      80.    The minimum due process requirements listed above apply to the following types of unemployment compensation debt: past-due debt for erroneous payments due to alleged fraud; past-due debt for erroneous payments due to alleged fraud; past-due debt due to the claimant's alleged failure to report earnings; contributions to the state's unemployment fund for which the person is alleged to be liable; and any penalties and interest assessed on such alleged debt.  26 U.S.C. §6402(f)(4).

81.     These minimum due process requirements must be afforded to all claimants, regardless of whether or not the claimants are ultimately determined to be "guilty" or "innocent" of receiving or trying to obtain UIA benefits through fraud or other improper means.

82.     Michigan accepts federal funds in furtherance of its unemployment benefits program, imposes penalties for unemployment fraud, and is therefore obligated to comply with the minimum due process requirements mandated by federal law.

83.     Defendants, under color of law, and through their erroneous creation, design, development, implementation, and maintenance of programming for unemployment insurance services, have failed to afford claimants accused of fraud of meaningful notice, adjudication, or an opportunity for claimants to be heard.

**C. The MiDAS and Enterprise Fraud Detection System ("EDFS") systems violate substantive due process rights by depriving claimants of their property through programming that determines the outcome of "fraud" cases without meaningful notice, adjudication, or an opportunity for claimants to be heard.**

84.     Plaintiffs herein reincorporate their allegations in the above paragraphs.

85.     Defendants, while acting under color of law, deprived plaintiffs, and many others like them, of their fundamental constitutional rights, including but not limited to: the right due to process, the right against self-incrimination, the right to not be subjected to excessive fines, and the right to be free of unwarranted searches and seizures.

86.     Defendants have affirmatively devised, created, promulgated, maintain, supervise, and/or update a system that deprives claimants of their rights to due process.

87.     At all times relevant, Defendants, acting under color of law, were required to obey the laws of the United States including those laws identified and described in the 4th and 14th Amendments to the United States Constitution.

88.     Claimants have a constitutional right to know the allegations against them and the information on which they are based.

89.     The notice provided through MiDAS and generated by the EDFS falls well short of the constitutional standard of due process. The communication provided to claimants gives them absolutely no notice of the reasons for which their eligibility is being questioned.

90.     The forms provided to claimants when the EDFS software detects inconsistencies through MiDAS are confusing even to those experienced with the workings of the unemployment insurance system, much less ordinary citizens attempting to navigate the UI system after a recent job loss.

91.     Even after a determination has been made and severe fraud penalties assessed, the communications with claimants often still do not inform them of what the problem was with their claim, what information it was based on, and what the claimant could do to rectify the situation. This process is wholly inadequate and deprives claimants of their right to a fair hearing and due process of law.

92.     Defendants' actions violate claimants' rights against self-incrimination by presuming fraudulent intent against claimants who do not return the computer- generated questionnaire—without a hearing, without human review, and without any factual basis to support a finding of fraudulent intent.

93.     Defendants' programs and/or implementation of them violates constitutional rights of beneficiaries by drawing negative inferences and presuming fraudulent intent on the part of claimants based solely on the fact that no response was received within ten days or that beneficiaries chose to exercise their constitutional right to remain silent.

94.     Defendants have designed the computer programs to assess the penalty amounts against all claimants accused of misrepresentation regardless of the facts or circumstances of the case.

95.     Many of these cases are the result of Defendants' programs computing alleged errors, creating misunderstandings, or a combination of both.

96.     Defendants' actions also violate claimants' rights to equal protection under the law. The Defendants' systems automatically presume that claimants, and not employers, have misrepresented information based on routine administrative discrepancies.

97.     Defendants' programs, which then report discrepancies to the Agency, have no rational basis for concluding that the cause of any discrepancy is that claimants, and not employers, have misrepresented information to the Agency.

98.     Defendants' actions violate the constitutional right to due process because errors resulting from faulty programming in the EDFS and MiDAS software also include quintuple penalty provision, which constitutes a criminal penalty being imposed without a hearing. Often, such errors are based solely on a claimant's silence in the face of the accusation.

99.     Defendants, under color of law, and through erroneous programming, have devised, created, promulgated, maintained, supervised, maintained, and/or updated these programs, which has resulted in the imposition of criminal penalties that may not be enforced against an individual who has not been afforded the protections that the constitution requires, including the requirement that the offense be proved beyond a reasonable doubt.

100.    By devising, creating, promulgating, maintaining, supervising, and/or updating these programs, Defendants deprive claimants of their rights to due process and impose punitive quintuple penalties and notifications to beneficiaries of criminal prosecution of fraudulent

unemployment insurance claims along with procedures for the referral of cases to local prosecutors for prosecution.

101.    The penalties imposed are punitive in nature, resulting in the seizure of large penalties from individuals who are without a source of income, and go well beyond the amount necessary to make the state whole and maintain the integrity of the UI trust fund.

102.    Defendants' practices, by and through the design, creation, development, implementation, and maintenance of these programs also violate the constitutional guarantee against unreasonable searches and seizures. Claimants who have been robo-adjudicated by the Agency to have committed intentional misrepresentation are also automatically subject to a variety of collection procedures, including the reduction of future benefits and the interception of their state and federal tax returns, or even future wage garnishment.

103.    Claimants also have property rights in their benefits and state tax returns, and Defendants' programs deprive claimants of this property without a warrant and without due process of law.

104.    Each of the foregoing constitutional protections has been incorporated against the states under the Fourteenth Amendment to the United States Constitution.

### Count III
### Violations of the Michigan State Constitution Art. I §16

105.    Plaintiffs herein reincorporate their allegations in the above paragraphs.

106.    Defendants' actions herein described also violate Plaintiffs' rights under the Michigan Constitution.

107.    Article 1 § 16 of The Michigan Constitution of 1962 provides: "Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained".

108.   Defendants' programs impose a quintuple penalty for claims of unemployment insurance fraud, meaning that claimants accused of fraud must pay the overpaid benefits back plus a penalty of four times the amount of the overpayment.  The overpayment penalty can result in penalties as much as 400%.

109.    Defendants' conduct, by and through the design, creation, implementation, and maintenance of their programs violates Plaintiffs' rights to be free from excessive fines.

**Count IV**
**Violations of the Michigan State Constitution Art. I §17**

110.   Plaintiffs herein reincorporate their allegations in the above paragraphs.

111.   Defendants' actions by and through their computer programs described herein also violate Plaintiffs' rights under the Article 1 § 17 Michigan Constitution.

112.   Article 1 § 17 of The Michigan Constitution of 1962 provides in relevant part:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations, and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

113.   An essential element of due process is that claimants be afforded the opportunity to be heard at a meaningful time and manner before being deprived of life, liberty, or property.

114.   Plaintiff and the class members have a property interest in unemployment benefits, tax refunds, and wages that are garnished by the State without due process and fair and just treatment.

115.   Plaintiff and the proposed Class Members have a liberty interest in avoiding persecution and/or imprisonment without due process and fair and just treatment by the state.

116.   Defendants, in designing, creating, implementing, and maintaining their computer programs have an obligation to Plaintiff and the Class members to ensure they adhere to its due

process obligations and follow the minimum due process standards that are required under federal law with respect to the collection of unemployment debts, including overpayments and penalties.

117.    Defendants, in designing, creating, implementing, and maintaining their computer programs routinely violated and continue to violate the rights of Plaintiff and Class Members by intercepting tax refunds, garnishing wages, and forcing repayments from claimants:

a.    without providing the required notice of the bases asserted for disqualification;

b.    without providing at least 60 days for claimants to present evidence;

c.    without consideration of the factual basis or proof for or against the finding of culpable conduct.

d.    without a hearing;

e.    without providing claimants an opportunity to be heard at a meaningful time and in a meaningful manner;

f.    By utilizing an automated decision making system equipped with a software program that determines fraud of unemployment insurance claim cases, whereby the computer code in the automated decision-making process contains the rules that are used to determine a claimant's guilt and those rules change the substantive standard for guilt or are otherwise inconsistent with the requirements of due process.

118.    To the extent that the programs designed, created, implemented, and maintained by the Defendants generate UIA notices, such notices are deficient because they fail to inform the claimant that there has been an actual adjudication of fraud for failure to report, fail to provide the claimant with an opportunity to be heard at a meaningful time and in a meaningful manner, and fail to apprise the claimants of their possible defenses and the procedures to assert those defenses.

119.    Adequate pre-deprivation proceedings are not impracticable and are, in fact, required under state law.

120.    Post-deprivation remedies are insufficient and inadequate because they fail to provide due process when the automated decision-making process occurs in secret and there is no available record keeping trail to determine what happened in the decision-making process.

121.    Even a temporary deprivation of wages, unemployment benefits, or tax refunds creates a substantial burden on claimants who rely upon such income to support themselves and their families.

122.    For the reasons outlined above, Defendants' conduct violates Plaintiffs' fundamental rights to due process of law and the right against self-incrimination.

<u>**Count VI**</u>
<u>**Violation of 31 U.S.C. §3729, The False Claims Act**</u>

123.    Plaintiff hereby restates and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    The False Claims Act ("FCA") prohibits individuals from engaging in specified fraudulent activity, and makes persons who engage in such conduct liable to the United States government. *See* 31 U.S.C. § 3729(a).

125.    Beginning in August 2015, when the EDFS software was incorporated into MiDAS and launched, the fraudulent activity committed occurred where unemployment insurance claimants in the State of Michigan applied, received, and then were found guilty of unemployment insurance fraud, when in fact no fraudulent activity occurred.

126.    Despite the lack of fraudulent activity on the part of such claimants, Defendants have failed to modify their programs to curb efforts to collect previously disbursed benefits and

penalties knowing that such penalties were excessive and in violation of claimants state and federal constitutional rights.

## **Prayer for Relief**

**WHEREFORE,** Plaintiffs individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.      An Order certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

B.      An Order appointing Cahoo, Mendyk, and Cole as representatives for the Class and appointing their counsel as lead counsel for the Class;

C.      An order awarding Plaintiffs and all other Class Members damages in an amount to be determined at trial for the wrongful acts of SAS Analytics, FAST Enterprises, and CSG Government Solutions described herein;

D.      An Order enjoining SAS Analytics, FAST Enterprises, and CSG Government Solutions, their agents, successors, employees, and other representatives, from engaging in or continuing to engage in the design, implementation, development and maintenance of software utilized by the UIA for unemployment benefits; and requiring SAS Analytics, FAST Enterprises, and CSG Government Solutions to preserve all evidence relevant to this lawsuit and to notify UIA applicants, with who utilize the software to apply for unemployment benefits of the pendency of this and related litigation;

E.      Restitution as authorized by law;

F.      Payment to the Class of all damages associated with denied benefits in an amount to be proven at trial;

G.      Payment to the Class of all damages associated with delayed benefits and for damages as a result of the defective design, creation, implementation, and maintenance of the aforementioned software programs;

H.      An assessment of punitive damages, consistent with the actual harm SAS Analytics, FAST Enterprises, and CSG Government Solutions have caused and the reprehensibility of their wanton and willful conduct, and the need to punish and deter such conduct;

I.      An order awarding attorney's fees pursuant to applicable Federal and State law;

J.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

K.      Any and all other and further relief as this Court deems just, equitable, or proper.

**<u>Demand for Jury Trial</u>**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/Jonathan R. Marko*
Jonathan R. Marko (P72450)
Kevin Ernst (P44223)
Counsel for Plaintiffs
**Ernst & Marko Law, PLC**
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
(313) 965-5555
kevin@ernstmarkolaw.com
jon@ernstmarkolaw.com

Craig E. Hilborn (P43661)
Counsel for Plaintiffs
**Hilborn & Hilborn, P.C.**
999 Haynes St., Ste. 205
Birmingham, MI 48009
(248) 642-8350
craig@hilbornlaw.com

Date:   March 2, 2017