UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
and KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,
 individually and on behalf of
similarly situated persons,

        Plaintiffs,

Civil Action No. 17-10657

Hon. David M. Lawson

-vs-

SAS INSTITUTE INC.,
FAST ENTERPRISES, LLC,
CSG GOVERNMENT SOLUTIONS,
STEVE GESKEY in his individual capacity,
SHEMIN BLUDELL, in her individual capacity,
DORRIS MITCHELL, in her individual capacity,
DEBRA SINGLETON, in her individual capacity,
JULIE A. McMURTRY, in her individual capacity,
SHARON MOFFET-MASSEY, in her individual capacity,
CLAYTON TIERNEY, in his individual capacity,
ANDREW PHILLIPS, in his individual capacity,
JEREMY GRAGG, in his individual capacity,
JENNIFER TUVELL, in her individual capacity,
KRISTEN ARAKI-TOKUSHIGE, in her individual capacity,
MIKE PATTERSON, in his individual capacity,
ALLISON FORGIE-MCCLUR G, in her individual capacity,
RICHARD STATEN, in his individual capacity,
REBECCA ROSIER, in her individual capacity,
DANA ROWE, in her individual capacity,
TIM PALMER, in his individual capacity,
STEVEN GOODHALL, in his individual capacity, and
PAUL PLUTA, in his individual capacity
jointly and severally

        Defendants.

**PLAINTIFFS' RESPONSE TO SAS INSTITUTE INC. AND ANDREW PHILLIPS' MOTION FOR SANCTIONS**

# INTRODUCTION

Plaintiff brought products defects and constitutional due-process-based claims against SAS based on fraud detection software SAS designed, warranted and maintained that resulted in a 93% false positive rate of error in fraud determinations of unemployment insurance claimants. SAS filed a Rule 12 motion to dismiss Plaintiffs' complaint, and has now moved for sanctions under Rule 11. SAS's motion for sanctions, like its motion to dismiss, is based primarily on the factually unsupported claim that SAS's software was not used in any way until after Plaintiffs' claims arose. These types of factual contentions, the veracity of which would be discoverable during the discovery phase of Plaintiffs' case, are not a valid reason to for dismiss under Rule 12(b)(6), and do not support the imposition of sanctions.

In response to SAS's Rule 11 motion, Plaintiffs incorporate their responses to the various Defendants' Rule 12 motions, specifically R. 74 (Response to FAST); R. 75 (Response to CSG); R. 76 (Response to SAS); and R. 111(Response to State Defendants). For these, and the reasons that follow, SAS motion should be denied.

I. PLAINTIFFS ALLEGED VIABLE CLAIMS FOR RELIEF AGAINST SAS.

    A. **Standard of Pleading**.

As to the what factual specifics Plaintiffs are required to plead, in *Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010), the court stated:"[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id*. at 275-76 (citations omitted).

**B. Plaintiffs Adequately Identified the Tortious Conduct of SAS and Phillips.**

Plaintiffs' complaint does not involve the typical excessive force allegations that form the basis of most §1983 claims, where plaintiffs need to articulate the use of force undertaken by individual police officers. Instead, it is a claim against multiple defendants who acted in concert in creating and implementing an electronic system which deprived thousands of claimants of basic due process rights guaranteed by the constitution.

To state a claim under 42 U.S.C. §1983 at the pleading stage, a Plaintiff must allege that each defendant, through their individual actions, has contributed to a violation of the Constitution. As this Court has noted, this standard can be met when the plaintiffs allege that each defendant was personally involved in the alleged constitutional violations or when they allege substantive allegations from which that involvement can be inferred. *Corsetii v. Hackle* 2013 US Dist. Lexis 76908 (E.D.

2

Mich. 2013)

Moreover, the "direct personal involvement" requirement can be established in a variety of ways. In *Taylor v. Michigan Department of Corrections*, 69 F.3d 76 (6th Cir. 1995), an MDOC official sought dismissal of the plaintiff's claims, alleging he failed to establish the "personal involvement" necessary to sustain a § 1983 claim. Relying on *Hill v. Marshall*, 962 F2d 1209 (6th Cir. 1992), the Sixth Circuit rejected the argument and explained:

> Just as in the present case, Morris objected to the imposition of liability, arguing that he could not be held liable for actions taken in his supervisory capacity and that the plaintiff did not plead and prove Morris' direct personal involvement. The Sixth Circuit rejected this argument, stating:
>
> Here, by contrast, Morris is charged with abandoning the specific duties of his position . . .in the face of actual knowledge of a breakdown in the proper workings of the department. Hill does not seek to hold Morris vicariously liable . . . . Rather, Morris personally had a job to do, and he did not do it. His failure to do his job resulted directly in a violation of the plaintiff's Eighth Amendment right. [Hill v Marshal 962 F.2d 1209, 1213 (6th Cir. 1992).]
>
> In the instant case Foltz is charged with abandoning the specific duties of his position -- adopting and implementing an operating procedure that would require a review of the inmate's files before authorizing the transfers -- in the face of actual knowledge of a breakdown in the proper workings of the department. A jury could find on the facts that Foltz personally had a job to do, and that he did not do it."

*Id*. at 81.

3

In their Complaint, Plaintiffs allege that Phillips was the SAS project manager. R. 43, ID 754. They allege that SAS' contact with UIA began in December, 2012 and continues through December 2017. R. 43, ID 753. They allege SAS designed, created, implemented, maintained, configured and/or controlled the "Enterprise Fraud Detection System" ("EFDS") used to make unemployment insurance fraud determinations in the administration of the State's unemployment insurance. *Id.* Indeed, the EFDS, which was responsible for the robo-adjudications of fraud, is at the heart of the problem. The SAS contract demonstrates in detail the responsibility of SAS in the unconstitutional fraud adjudications. *See* R. 61-2, ID 1615-16, specifically, ¶¶ 6-23, fraud priority/scoring framework; 6-26, fraud score aggregation; 6-41, system must execute ad hoc analysis in seconds or minutes, not hours; 6-42, system must make "batch" determinations; 6-45, system must interface with agency systems based on priority/scoring framework, 6-50 system must interface with MiDAS. Plaintiffs have adequately pled that this fraud detection software was constitutionally defective, depriving Plaintiffs of the most basic of due process guarantees. *See* R. 43, ID 749-53, ¶¶ 4-9, and ID 763-69, ¶¶ 48-89. The SAS contract also provides that SAS is responsible for "configuring fraud analysis for four (4) UIA benefit and fraud detection analysis scenarios". Exhibit 1, Bates p. 82, 83, and that SAS "must integrate the UIA fraud analysis results periodically with . . . the

UIA MiDAS system, based on the severity and priority of the potential cases" . Exhibit 1, Bates p. 84.

As to when the EFDS was used, the SAS contract was entered into on December 21, 2012, Exhibit 1, Bates p. 1. The contract also provides that it follows "the completion of the EFDS Project, released on February 17, 2012", by the State through UIA, Exhibit 1, Bates p.55. The contract provides further that the Phase 2 UIA functional design would be approved by June 30, 2013, that the Phase 2 UIA construction and testing complete would occur by August 30, 2013, and that the Phase 2 UIA implementation would occur by September 30, 2013, Exhibit 1, Bates p. 162. The contract also provides that the expected Phase 2 project duration was 18 months, Exhibit 1, Bates p. 57.

SAS claims that Plaintiffs were charged with knowledge that the EFDS was never used before June, 2015 and that none of the named Plaintiffs' fraud determinations were "apparently" made before the software was in place. R. 107, ID 2501. Notably, SAS does not provide any record support for the "June, 2015" contention that even remotely, much less conclusively establishes that the EFDS was not employed in any way that caused the injuries complained of.

Plaintiffs allege that the defective and unconstitutional EFDS contributed to a 93% false positive rate for fraud determinations. Notably, Plaintiffs also identified

5

Defendant Phillip Johnson as the project manager, which generally means that he would have managed the entire EFDS project, including its design and implementation. SAS' contract notes the following specific responsibilities of Defendant Johnson: (1) managing the implementation of the fraud detection product; (2) implementing the fraud detection product with data from a legacy environment and database system; (3) managing IT projects in a government environment; (4) managing comprehensive project plans; (5) scope management; (6) issues management; (7) creating and executing implementation plans; and (8) written and verbal communication with the client [UIA] and technical staff. R61-2, ID 1617.

In *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 (9th Cir.1981), a case cited by SAS in its motion to dismiss, the court stated:

> [P]ersonal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

In this case, Plaintiffs allege that SAS and Phillips caused Plaintiffs' injuries with its constitutionally defective fraud detection software which it knew would be used to make fraud determinations against persons like Plaintiffs. It also participated with UIA and other defendants in implementing the software. See R.61-2, ID 1594

6

At the very least, SAS's fraud detection software set in motion a series of acts by others which SAS knew or reasonably should have known would result in the constitutional injuries suffered by Plaintiffs. Plaintiffs more than adequately pled constitutional violations, proximate cause and damages as to these Defendants.

Plaintiffs complaint, especially when coupled with the SAS contract, more than adequately identifies the SAS defendants, their tortious conduct and their contribution to the constitutional violations. The SAS contract also establishes the concert of action between SAS and state officials

### B. Plaintiffs Adequately Allege Proximate Cause.

#### 1. Plaintiffs adequately allege that SAS caused them harm.

Plaintiffs allege that SAS had a contract with UIA to design and implement fraud detection software that began in 2012 and continues until December, 2017, R. 43, ID 753. Plaintiffs allege that the fraud detection software was used to robo-adjudicate fraud determinations, resulted in a 93% rate of false positives, and that Plaintiffs and many like them were damaged as a result. From these inferential allegations, which must be accepted as true, proximate cause can be inferred. *Terry, supra*, 604 F3d at 275-76. SAS argues, without any evidence that could properly be used under FRCP 12(b)(6), or any evidence at all for that matter, that UIA did not begin using SAS software until June, 2015. See the SAS 12(b)(6) motion, R. 61, ID

7

1459, and the Rule 11 motion, R. 107, ID 2501. This unsupported argument is not appropriate in support of a motion to dismiss for failure to state a claim, and cannot support imposition of sanctions at the pleading stage. Moreover, it would not absolve SAS even if it could be considered. The conduct complained of continued well past "June, 2015".

### 2. There was no intervening cause that relieves SAS from liability.

SAS argues that "Plaintiffs injuries, if any, were caused not by SAS's software, but by the alleged insufficiencies of UIA's processes. . . ." R. 107, ID 2499. However, Plaintiffs alleged that the tortious conduct of various defendants caused their injuries, and have sued them jointly and severally. The UIA officials' actions were not an intervening cause, they were a contributing cause. As stated in W. Prosser, Restatement (Second) of Torts § 442B, at 469 (4th Ed. 1992):

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

The Comment provides in part:

> This is to say that any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," no matter how it is brought about, except where there is

8

such intentionally tortious or criminal intervention, and it is not within the scope of the risk created by the original negligent conduct.

*Id*. at 470.

In this case, the risk of harm created by SAS was that their constitutionally defective software would result in false fraud determinations and that there would be false robo-adjudications made against UI claimants, such as Plaintiffs. SAS, with its experience in unemployment insurance administration, knew or should have known that there were penalties attached to fraud determinations, and resulting collection efforts to collect the penalties. This potential harm was clearly foreseeable. SAS' defective fraud detection software was obviously a substantial factor in causing that harm. Since there is no evidence of any intentionally tortious or criminal behavior, SAS is not relieved from liability even if the harm was brought about ultimately by the intervention of UIA officials. Moreover, since false fraud determinations, penalties, garnishments, and tax refund intercepts are clearly within the scope of the risk created by the original negligent conduct, SAS would not be relieved of liability even if there was subsequent intentional tortious conduct by another.

In this case, there was no intervening cause. SAS's conduct caused a risk of the particular harm Plaintiffs suffered, and is a proximate cause of Plaintiffs' injuries.

### D. **Plaintiffs Product Liability, Tort, and Warranty Claims (Counts I Through V) Are Cognizable under Michigan Law**

Plaintiffs brought claims for negligence under Michigan's Product Liability Statute. M.C.L. 600.2945 et seq. Plaintiffs alleges that SAS, negligently produced a defective product, the fraud detection software that caused harm. It is well settled law that where a manufacturer places a product into the stream of commerce, whether through a contractual intermediary or directly, and that product causes harm arising out of a failure to exercise reasonable care, the manufacture is liable. *See Snider v. Bob Thibodeau Ford, Inc.*, 42 Mich.App. 708, 713 (1972) ("products liability law rests on a policy giving the consumer a legally-enforceable right, as against the manufacturer, to proceed on the assumption that the product will serve in normal use without causing injury."); *Gregory v.Cincinnati Inc.*, 450 Mich. 1, 11 n. 7 (1995) ("…a negligence claim tests the defendant's conduct instead of the product to determine whether it was reasonable under the circumstances") A manufacturer has a duty to design its products so as to eliminate any unreasonable risk of foreseeable injury. *Shipman v. Fontaine Truck Equip Co.*, 184 Mich. App. 706, 711 (1990).

SAS' contract with UIA provides evidence that they were integrally involved in the design and manufacture of the fraud detection software at issue. It states:

> This contract is for the installation and configuration of COTS software data analytics product which analyzes data for patterns that might reveal an organized attempt to defraud the Michigan Unemployment Insurance Agency (UIA) and the DHS Food

10

Assistance Program (FAP).

R. 61-2, ID 1566.

SAS has no evidence, other than their unsupported assertion in their motion, that it was not involved in the production of the EFDS that contributed to Plaintiffs injuries. Based upon the information known at this time, Plaintiffs have sufficiently pled their negligence claim in a manner that allows this Court to reasonably infer a duty existed requiring Defendant to exercise reasonable care in the production of its software, that the duty was breached and that Plaintiffs suffered injuries as a result.

**E. Plaintiffs' Claims are not Mooted by *Zynda*.**

SAS contends that *Zynda* somehow rendered Plaintiffs' monetary damage claims moot. This argument is nonsense. The *Zynda* case resolved prospective injunctive relief only. In this case, Plaintiffs' seek monetary damages for both economic and non-economic injuries. In *Zynda,* UIA (through various defendants sued in their official capacities) agreed to revisit certain fraud determinations and repay amounts it deemed were wrongfully taken. However, none of Plaintiffs were parties to that case and thus they cannot enforce the settlement. Furthermore, even if Plaintiffs recouped all of their economic damages based on the agreement, that would not satisfy Plaintiffs non-economic damage claims, including claims for punitive damages, available to these Plaintiffs' for violations of their

11

constitutional rights.

Moreover, in *Zynda*, the court specifically held that it could not order UIA to reopen cases to redetermine whether claimants were entitled to refunds because that would involve granting retroactive injunctive relief, *Zynda v. Arwood*, 175 F Supp 3d 791, 801 (ED Mich 2016). Thus, *Zynda* clearly would not render Plaintiffs economic claims moot.

Furthermore, as the *Zynda* court stated: "[A] litigant can suffer an injury-in-fact from a denial of due process regardless of the effect that more process would have on the outcome of the particular determination at issue", *id*. at 803, citing *Wright v. O'Day*, 706 F. 3d 679, 771 (CA 6, 2013). Thus, not only does *Zynda* not render Plaintiffs claims moot, *Zynda* makes clear that Plaintiffs have viable claims for due process violations whether or not UIA provides additional process with regard to the initial fraud determinations made against them.

II. NO SANCTIONS SHOULD BE IMPOSED AGAINST COUNSEL FOR PLAINTIFFS.

FRCP 11(b) provides:

Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> 1. (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

This case involves a systemic failure that deprived tens of thousands of innocent Michigan citizens of their property and violated their constitutional rights. It involved dozens of culpable actors. SAS and Phillips contributed to that failure, and Plaintiffs have pled viable legal claims warranted by existing law, and have made good faith legal arguments applying the facts to their legal contentions. Their factual contentions have more than ample evidentiary support, and/or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery. SAS's cart-before-the-horse argument would require Plaintiffs to fully investigate and discover the case before filing a complaint, and then and prove up their case in the complaint. There is no such requirement.

SAS makes other misrepresentations and misleading statements that merit mention. It claims that Plaintiffs' amended complaint does not track their

13

proposed amended complaint attached to their motion to amend complaint. However, the Court never ruled on the motion to amend; at the Court's status conference held before hearing the motion, the parties stipulated to allowing Plaintiff to amend the complaint, and before the stipulation occurred, Plaintiff informed all parties, and the representative of SAS who was not a party at the time, that the amended complaint would add parties and claims different than the proposed amended complaint attached to Plaintiffs' motion. The parties stipulated with this knowledge.

SAS also contends that because Plaintiffs amended their complaint after seeing Defendants' motions to dismiss and SAS's Rule 11 pleading (sent to Plaintiffs before SAS was a party), Plaintiffs should be sanctioned. However, it is common for parties to amend after receiving a motion under Rule 12(b). In fact, Rule 15 specifically allows a party to amend "within 21 days after service of a motion under Rule 12(b)".

Even more absurd is SAS's contention that Plaintiffs' counsel should be sanctioned because they "repackaged the *Zynda* and *Bauserman* complaints in an attempt to hold SAS and Phillips liable for the same alleged wrongs". As explained above, *Zynda* involved a claim for injunctive relief against UIA. These Plaintiffs were not involved in *Zynda* and do not seek injunctive relief. Moreover,

they could not obtain the injunctive relief the plaintiffs sought in *Zynda* from SAS. The wrongs for which these Plaintiffs seek to hold SAS and Phillips liable are their damages incurred as a result of the defects in the products SAS produced and the constitutional violations SAS and Phillips caused.

The claim about *Bauserman* is more absurd still. *Bauserman* involved a claim for injunctive relief against the Michigan Legislature to enjoin it from taking monies from the UIA Contingent Fund, dollars that were purportedly earmarked for unemployment insurance, and placing them into the general fund where the funds could be used for any purpose. Plaintiffs, with their claims for money damages, are hardly seeking to hold SAS and Phillips liable for this alleged wrong.

## **CONCLUSION**

WHEREFORE, for these reasons, SAS's motion for sanctions should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/Jonathan R. Marko* |
|  | Jonathan R. Marko (P72450) |
|  | Counsel for Plaintiffs |
|  | **Marko Law, PLC** |
|  | 645 Griswold Street, Suite 4100 |
| Date:  October 24, 2017 | Detroit, Michigan 48226 |
|  | (313) 965-5555 |
|  | Jon@ernstmarkolaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2017, I presented the foregoing paper to this Court's ECF System, which will send notification of such filing to the above listed attorneys of record.

*/s/ Katie L. Williams*

15