UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

        Plaintiffs,                            Case Number 17-10657

v.                                                Honorable David M. Lawson

SAS INSTITUTE INC., FAST
ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, JULIE A.
McMURTRY, and SHARON
MOFFET-MASSEY,

        Defendants.

_____/

## OPINION AND ORDER DENYING MOTION TO QUASH SUBPOENA AND ORDERING COMPLIANCE

The plaintiffs have filed this putative class action against certain contractors who were involved in designing and implementing an automated fraud detection system brought on line in 2012 by the State of Michigan's Unemployment Insurance Agency (UIA). They also have sued certain functionaries and decisionmakers of the UIA in their individual capacities. The plaintiffs allege that they were accused wrongfully of making fraudulent claims for unemployment benefits, and then had their property confiscated by the State with no notice, all by means of the automated system.

Defendant FAST Enterprises LLC (FAST) has subpoenaed the plaintiffs' records from the UIA (which are the main focus of the plaintiffs' claims) under Federal Rule of Civil Procedure 45, but the UIA has refused to produce any records. It has filed a motion to quash the subpoena, now before the Court, contending the information sought is privileged, and the burden of producing the

information is excessive. The parties argued the motion orally on February 6, 2019, at which time plaintiffs' counsel agreed that none of his clients have asserted or intended to assert a privilege over these records for purposes of this case and would consent to disclosure. The Court allowed the parties and the UIA to file supplemental briefs, which have been received. Finding no merit in the UIA's arguments, the Court will deny the motion to quash the subpoena and order prompt compliance.

I.

The plaintiffs have alleged that the UIA, with the help of outside contractors SAS Institute Inc., FAST, and CSG Government Solutions, designed and implemented a flawed automated system that examined unemployment compensation claims to detect fraud. The system, known as the Michigan Integrated Data Automated System (MiDAS), searched for discrepancies in the records of unemployment compensation recipients after coordinating collection procedures with employers, other state agencies, and the federal government. MiDAS's electronic "cross-checking" mechanism alerted the UIA when income was reported for claimants or when some activity affected a claimant's eligibility for benefits. MiDAS, using an "income-spreading" formula, would calculate a claimant's weekly income based on an average of total income received over a quarter, and then "spread" the income over each week in the quarter, regardless of whether a claimant truthfully reported no income in one or more weeks. If the system identified a discrepancy between an employer record and corresponding information in the claimant's application, the claimant's file was flagged as a potential case of misrepresentation.

A "flag" caused MiDAS to initiate an automated process that transmitted questionnaires to the claimant, seeking a response within ten days. The questionnaires posed multiple choice questions that resulted in a robo-determination of fraud if a triggering answer were selected. The

questionnaires were to be shared with claimants via their Michigan Web Account Management System (MiWAM ) accounts, but in some instances, the system failed to send the questionnaires, or the questionnaires were sent to dormant MiWAM accounts. And because MiDAS reviewed claims from the six preceding years, questionnaires were sent to claimants whose benefits had expired already. The system did not provide any other means of notifying claimants of the questionnaire's existence. And a claimant received no other notice of the alleged fraud determination. Failure to respond or selecting one of the triggering answers in the questionnaire resulted in a default determination that the claimant knowingly and intentionally misrepresented or concealed information to receive benefits unlawfully.

Once a default determination was made, an initial letter demanding repayment and assessing penalties and interest was to be issued to the claimant. There was no opportunity to appeal or otherwise contest the finding at that point in the process. The statement sent to claimants indicated that penalties for non-payment may include interception of the claimant's state and federal income tax refunds, garnishment of wages, and legal collection activity through a court of law. Other consequences, discussed in other opinions filed in this case, followed. *See Cahoo v. SAS Inst. Inc.*, 322 F. Supp. 3d 772, 786-87 (E.D. Mich. 2018), *aff'd in part, rev'd in part and remanded sub nom. Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019).

On December 14, 2018, defendant FAST served on the State of Michigan a subpoena seeking certain unemployment compensation records relating to the five named plaintiffs and six other individual claimants identified in the plaintiffs' initial disclosures, all of whom suffered hardships from false robo-fraud determinations by the UIA's automated system. The documents sought are defined as "[a]ll Communications and Documents related to" those individuals, "including all Documents and Communications related to their unemployment claims,

adjudications, appeals, and re-adjudications." FAST also asked for "[a[]ll Communications and Documents related to the Project that were transmitted to the Auditor General." Subpoena, ECF No.164-2, PageID.4010-11. The request covers the period from January 1, 2012 through the date of response. *Id.*, PageID.4010.

The UIA refused to produce the requested files and instead filed a motion to quash the subpoena. It contends that Michigan law prohibits it from disclosing any individual's "confidential" unemployment records to private third parties and none of the exceptions to that prohibition apply. *See* Mich. Comp. Laws § 421.11(b)(1). It also argues that a federal regulation compels the Agency to file a motion to quash to avoid disclosure. *See* 20 C.F.R. § 603.7(a).

II.

Unemployment compensation insurance in this country was established as a joint federal-state program by the Social Security Act of 1935. *See generally Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 574-78 (1937). Under Title IX of the Act, the states are afforded "broad freedom" to design and operate their unemployment insurance programs. *New York Tel. Co. v. New York State Dept. of Labor,* 440 U.S. 519, 537-40 (1979). But those programs must "satisfy[] certain minimum criteria" to qualify for their share of federal funding. *Charles C. Steward Mach. Co.*, 301 U.S. at 574. One such condition for funding is that the state's program comply with the regulations established by the Secretary of Labor that are "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

The Department of Labor has interpreted that requirement to mean that state law "must include provision for maintaining the confidentiality of any [unemployment compensation (UC)] information which reveals the name or any identifying particular about any individual or any past or present employer or employing unit, or which could foreseeably be combined with other

publicly available information to reveal any such particulars, and must include provision for barring the disclosure of any such information, except as provided in this part." 20 C.F.R. 603.4(b). Section 421.11 of Michigan's Employment Security Act (MESA) was enacted to ensure that UC information remained confidential under 20 C.F.R. § 603.4. Mich. Comp. Laws § 421.11(a). Section 421.11(b)(1) of that statute declares that UC information from a claimant or employer is "confidential" and not available to the public, with some exceptions. It also states, among other things, that the information "must not be used in any action or proceeding before any court . . . unless the unemployment agency is a party to or a complainant in the action or proceeding, or unless used for the prosecution of fraud, civil proceeding, or other legal proceeding in the programs indicated in subdivision." *Id.* § 421.11(b)(1)(iii).

The UIA filed a motion to quash the subpoena under Federal Rule of Civil Procedure 45(d)(3)(iii) and (iv) for the plaintiffs' and other claimants' UC information. It insists that it is required by law to file that motion (more on that later), and it asks the Court to relieve it of the obligation to comply with the subpoena. Those subsections of the rule require a court to "quash or modify" a subpoena that "requires disclosure of privileged or other protected information, if no exception or waiver applies," or if the production "subjects a person to undue burden."

### A. Privilege

The UIA's privilege argument faces several problems. First, the only privilege identified by the UIA is the state statute. However, the claims in this case arise under federal law, not state law. Therefore, "federal common law determines the extent of the privilege." *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006); *see also Boddie v. Cranston*, 181 F.3d 99 (Table) (6th Cir. 1999) ("A federal court considering a 42 U.S.C. § 1983 claim applies the federal common law of privilege."); *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998)

("Questions of privilege are to be determined by federal common law in federal question cases."). A privilege created by state law will not prohibit disclosure in a federal action brought under federal law.

Second, a section in the federal regulations allows disclosure of UC information by a state agency "if authorized by State law and if such disclosure does not interfere with the efficient administration of the State UC law." 20 C.F.R. § 603.5. But those exceptions, found in subsections (a) through (g), do not govern here (save one) because the information was sought by subpoena in a federal civil action. *Ibid.* (allowing disclosure "in response to a court order or to an official with subpoena authority") (referencing 20 C.F.R. § 603.5(h)). Disclosure under subsection (h) is permissible "even if doing so would violate state law." *A.G. v. Burroughs*, No. 13-1051, 2014 WL 1807110, at *3 (D. Or. May 7, 2014).

Third, among the exceptions in section 603.5 is informed consent. *See* 20 C.F.R. § 603.5(d). State law contains a similar provision. *See* Mich. Comp. Laws § 421.11(b)(ii)(C). At a status conference, counsel for the plaintiffs, who professed authority to speak for the six additional identified claimants, stated that those individuals would consent to disclosure. Apparently, the UIA had not received written consent forms when it filed its motion, nor had it received them when it filed its supplemental brief. But those consents ought to provide an easy resolution to the UIA's quandary.

The UIA has devoted much of its brief to explaining why it filed the motion to quash the subpoena. Another federal regulation says that if the agency receives a subpoena for UC records, it must file such a motion *unless* "a court has previously issued a binding precedential decision that requires disclosures of this type, or a well-established pattern of prior court decisions have required disclosures of this type." 20 C.F.R. § 603.7(b). The UIA argues that there is no binding

precedential decision on the issue, and the only pattern of prior decisions comes from courts outside of this district. FAST, relying mainly on *Easter v. Beacon Tri-State Staffing*, No. 17-CV-197, 2017 WL 5126153, at *3 (S.D. Ohio Oct. 17, 2017), counters that it matters not that the cases favoring disclosure come from other district courts.

The Court need not resolve that territorial question. The issue raised by this argument is whether the UIA is required to file the motion to quash. It has done so, perhaps taking a cautious approach. Even if it had been excused from taking that step by a pattern of decisions that addressed its obligation to disclose, its decision to contest the subpoena moved it past the consideration mandated by 20 C.F.R. § 603.7.

Section 603.7 provides no guidance on how such a motion to quash a subpoena, when filed, should be decided. The district courts in this circuit generally apply basic discovery law as found in Federal Rule of Civil Procedure 26(b), compelling production of information "that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and balancing the interests against disclosure with the requesting party's need to obtain the information. *See Williams v. United Steelworkers of Am.*, No. 1:09-CV-743, 2011 WL 2135179, at *8 (S.D. Ohio May 27, 2011); *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 720 (S.D. Ohio 2006); and *E.E.O.C. v. Honda of Am. Mfg., Inc.*, No. 2:06-CV-0233, 2006 WL 2934072, at *1 (S.D. Ohio Oct. 12, 2006)). Courts across the country have done the same. *See Armstrong v. Hy-Vee, Inc.*, No. 15-CV-3085, 2016 WL 1228577, at *1 (D. Neb. Mar. 28, 2016) ("Typically, unemployment information and records are relevant to claims of wrongful termination and are proper discovery requests."); *Welch v. Logan Gen. Hosp., LLC*, No. 15-01022, 2015 WL 13386892, at *4 (S.D. W. Va. Aug. 7, 2015) (denying motion to quash where information requested was "relevant to the claims and defenses of the parties in this matter pursuant to Rule

26(b)(1) of the Federal Rules of Civil Procedure"); *Ibew-Neca Retirement Plan v. Strickland & Sons Elec., LLC*, No. 12-CV-2106, 2014 WL 988473, at *3 (E.D. Mo. Mar. 13, 2014) (denying motion to quash where "records sought would allow [the plaintiff] to determine the amount of damages due from the defendants"); *Kelley v. Billings Clinic*, No. CV 12-74-BLG-SEH-CSO, 2013 WL 2422705, at *4 (D. Mont. June 3, 2013) (denying motion to quash where "it appear[ed] that the information sought [was] discoverable under Fed. R. Civ. P. 26(b)(1)"); *Gray v. Savage Servs. Corp.*, No. 12-CV-225, 2013 WL 1787999, at *3 (D. Me. Apr. 26, 2013) (explaining that the subpoenaed information was discoverable under Rule 26(b)(1) because it was relevant to questions of the plaintiff's credibility, the defendant's after-acquired evidence defense, and the plaintiff's mitigation of damages).

The information sought here falls squarely within the permissible scope of discovery defined by Rule 26(b)(1). The plaintiffs and other claimants contend that they were wrongfully accused of fraud by the State's MiDAS system, and they suffered significant economic loss and other hardship as a result. Information critical to those claims likely will be found in their respective UC files. The impact of the MiDAS system's functioning and operation — the triggers, notices, responses, and robo-adjudication — all have a direct bearing on the plaintiffs' claims and FAST's defenses. The information is discoverable and ought to be produced.

## B. Undue Burden

The UIA separately argues that requiring production of unemployment records for the six non-party individuals subjects the UIA to an undue burden under Federal Rule of Civil Procedure 45(d)(3)(A)(iv). "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the

burden imposed.'" *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Ibid.* (quoting *Power*, 191 F.R.D. at 136)).

The UIA asserts that the broad request for "all communications and documents" without any detail as to specific dates and topics ought to be narrowed. FAST disagrees, arguing that the claimant files for the non-party individuals are "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As noted earlier, the relevance of the individuals' files is manifest, and as discussed below, the cost of production is not exorbitant. The UIA says generally that the files may contain "voluminous pages of data that are not relevant or informative." But they have not identified any particulars to support that hypothetical argument.

Moreover, although the UIA is not a named defendant in this case, its employees certainly are. The claimants' files constitute the corpus of the claims against the defendants. Shielding the State defendants from the information that is contained in those documents simply because the request may be overinclusive is not in the interest of justice. It is premature to expect the defendants to refine their request at this early stage of discovery. The UIA has not demonstrated that the request as to the non-party individuals is unduly burdensome, when the files are readily available in its database.

The UIA also says it should not be required to produce the information because it would be costly to assemble. The thrust of this argument, however, is not so much that it should be relieved from compliance altogether, but that it should not be required to shoulder the costs of production. In support, it points to language in the federal regulation that allows the imposition of

conditions on production. *See* 20 C.F.R. § 603.7(a) ("Only if such motion [to quash a subpoena] is denied by the court or other forum may the requested confidential UC information be disclosed, and only upon such terms as the court or forum may order, such as that the recipient protect the disclosed information and pay the State's or State UC agency's costs of disclosure.").

One condition identified in section 603.7(a) — protection of the information — has been addressed by the parties already. The defendants point out that a protective order has been entered in this case some time ago, and the UIA is considered a covered third party under the protective order. *See* Protective Order at ¶ 1, ECF No. 159, PageID.3890 ("Any party to this litigation and any third-party that produces documents or information in this matter ('Covered Third-Party') shall have the right to designate as 'Confidential,' subject to this Order, any information, document, or thing, or portion of any document or thing, which the Party in good faith believes would be entitled to protection under Rule 26(c)(1)(G) or under any other provision of the Federal Rules of Civil Procedure or federal law."). The restriction on further disclosure is an appropriate limitation. *See e.g.*, *Gray v. Savage Servs. Corp.*, No. 12-CV-225-NT, 2013 WL 1787999, at *3 (D. Me. Apr. 26, 2013) ("The defendant represents that it will treat the information that it obtains pursuant to the subpoena as confidential pursuant to the confidentiality order already entered in this case . . . an appropriate protection that I have incorporated into my order, below."); *see also Armstrong v. Hy-Vee, Inc.*, No. 15-CV-3085, 2016 WL 1228577, *2 (D. Neb. Mar. 28, 2016) ("[T]he Court orders the Defendants to designate and treat the information disclosed pursuant to the subpoena as confidential[.]"); *Ibew-Neca Retirement Plan v. Strickland & Sons Elec., LLC*, No. 12-CV-2106, 2014 WL 988473, at *3 (E.D. Mo. Mar. 13, 2014) ("[T]he Court will order the Plaintiff Funds to designate and treat the information disclosed pursuant to the subpoena as confidential[.]").

FAST predictably takes issue with the UIA's request for cost-shifting, arguing that it ultimately is within the Court's discretion to impose the costs of production on the defendants.

Absent a protective order, it generally falls to the party producing discovery to bear the costs of production. *See Medtronic Sofamor Danek, Inc. v. Michelson,* 229 F.R.D. 550, 553 (W.D. Tenn. 2003); *see also Oppenheimer Fund v. Sanders,* 437 U.S. 340, 358 (1978)). However, Rule 45 provides that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). "This provision has been deemed to 'make cost shifting mandatory in all instances which a non-party incurs significant expense from compliance with a subpoena.'" *Linglong Americas Inc. v. Horizon Tire, Inc.*, No. 15-1240, 2018 WL 1631341, at *2 (N.D. Ohio Apr. 4, 2018) (quoting *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)); *see also Under v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001).

Moreover, federal law provides that "[t]he costs to a State or State UC agency of making a disclosure of UC information . . . must be paid by the recipient of the information or another source paying on behalf of the recipient, either in advance or by way of reimbursement." 20 C.F.R. § 603.8(d). Costs must be calculated in accordance with certain cost principles and administrative requirements. 20 C.F.R. § 603.8(c). Although generally "[federal] grant funds must not be used to pay any of the costs of making any disclosure of UC information, . . . they may be "used to pay costs associated with disclosures under § 603.7(b)(1) (concerning court-ordered compliance with subpoenas) if a court has denied recovery of costs." 20 C.F.R. 603.8(b).

The language of the regulation suggests that courts have discretion to deny a request for cost-shifting. But Rule 45(d)(2)(B)(ii) leaves little room for that. The rule states that a non-party producer must be protected from "significant" expense. That relative command, much like the

obligation to protect a party from "undue burden," invokes a case specific inquiry. *See Bills v. Kennecott Corp.*, 108 F.R.D. 459, 463 (D. Utah 1985). The determination of what costs are significant is within the trial court's discretion. *Sound Sec., Inc. v. Sonitrol Corp.*, No. 08-05350, 2009 WL 1835653, at *1 (W.D. Wash. June 6, 2009). Expenses incurred complying with a subpoena must also be reasonable, and the determination of reasonableness is also within the trial court's discretion. *In re Aggrenox Antitrust Litigation*, 14-02516, 2017 WL 4679228, at *2 (D. Conn. Oct 18, 2017).

Courts have identified factors for determining the analogous undue burden when a demand for discovery is served. Those factors, to be balanced against one another, are:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with the production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.

*Medtronic*, 229 F.R.D. at 553 (citing *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002)).

FAST's request here is broad, but the likelihood of discovering important information is great. And the information sought is simply not available from other sources. The UIA maintains the information for the precise purpose of administering its unemployment compensation system, which is the system the plaintiffs allege it wrongfully administered, causing the injuries in this case. All of the parties to this case will benefit in having the information available to them, as the files presumably will illustrate the manner in which MiDAS was used to make the fraud determinations as to the claimants.

The cost of production is uncertain. The UIA apparently has endeavored to maximize its estimate, tendering an affidavit by administrative law specialist Teresa Burns, who states that the

costs to respond to the subpoena with delivery via an encrypted flash drive or encrypted email will be $8,238.03 and $8,218.80, respectively. In its supplemental brief, it mentioned an interim cost estimate to produce the documents in paper form, although the subpoena specifies a different mode of production. It is not clear why the disclosure must be made in an encrypted format. It also is not clear based on Ms. Burns's affidavit that the costs were calculated in accordance with the requirements of section 603.8(c). The Court asked the parties to confer and refine the cost estimates. But based on the supplemental briefs, it appears that the parties are still at an impasse on such details as the mode of production and the overall costs of compliance.

FAST argues that (1) the UIA is not a disinterested party because it was substantially involved in the system that spawned this litigation; (2) the UIA can bear the costs of production as easily as the entity defendants; and (3) because this case is of public importance, the UIA has a duty to bear the costs of compliance. The UIA responds that that (1) it does not have an interest in the outcome of the case; (2) there has been no showing that the Agency can bear the costs more readily than FAST; and (3) while the case may be of some public importance, this factor alone does not tip the scale.

It is disingenuous for the UIA to argue that it has no interest in this litigation. As the Court noted at the hearing, production is not unduly burdensome. The cost estimate of approximately $8,000, even with the encryption charge, is rather modest. In terms of proportionality, these are core documents and are necessary for the lawsuit to be defended and most likely prosecuted.

Nonetheless, the cost of production is essentially a taxpayer expense, and the federal regulations contemplate at least some measure of cost sharing. So does Rule 45. *See In re Modern Plastics Corp.*, 890 F.3d at 252 ("[I]f an objection is made and the court orders the non-party to comply, the court must protect a non-party from *significant* expenses resulting from compliance.")

(emphasis added). But until a firm estimate of the cost of producing the material in a usable format is presented, the Court will not allocate the specific expenses of production. Those expenses will be shared by all the parties in the case, including the State defendants. And the absence of a firm estimate will not delay production of the documents that have been subpoenaed.

III.

There is no privilege that excused the UIA from responding to the subpoena. The costs of compliance will be allocated among all the parties, once the costs of production can be reliably determined.

Accordingly, it is **ORDERED** that the motion by non-party Michigan Unemployment Insurance Agency to quash the subpoena (ECF No. 161) is **DENIED**.

It is further **ORDERED** that representatives of the UIA, FAST, and other parties in the case wishing to furnish input, promptly must meet and confer in person to resolve outstanding questions about the mode of production. The UIA also promptly must identify the costs of producing the documents in the mode agreed upon. Production must occur no later than **May 7, 2019**, unless relief from the Court is obtained upon proper motion.

It is further **ORDERED** that the documents produced shall be deemed "Confidential" under the protective order previously issued (ECF No. 159), and further dissemination is restricted as that Order provides.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date:   April 23, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on April 23, 2019.

                      s/Susan K. Pinkowski
                      SUSAN K. PINKOWSKI