UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

       Plaintiffs,         Case Number 17-10657
v.         Honorable David M. Lawson

SAS INSTITUTE INC., FAST
ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, JULIE A.
McMURTRY, and SHARON
MOFFET-MASSEY,

       Defendants.
_____/

## OPINION AND ORDER DENYING SECOND MOTION TO QUASH SUBPOENA AND ORDERING COMPLIANCE

Before the Court is another motion by non-party Michigan Unemployment Insurance Agency (UIA) to quash a subpoena. In February of this year, the plaintiffs served a subpoena on the UIA asking for a wide range of documents, internal information, and identifying information. The plaintiffs have filed this putative class action against certain contractors who were involved in designing and implementing an automated fraud detection system brought on line in 2012 by the UIA. Although the UIA is not a named party, it is a principal actor, and the plaintiffs have sued certain of its functionaries and decisionmakers in their individual capacities. The plaintiffs allege that they were accused wrongfully of making fraudulent claims for unemployment benefits, and then had their property confiscated by the State with no notice, all by means of the automated system.

On February 26, 2019, the plaintiffs served on the Agency a subpoena to produce documents responsive to 51 requests. The UIA has not contested all of them, and at oral argument on June 25, 2019 it withdrew its objections to requests number 24 and 47. Among the items remaining in dispute, the subpoena seeks copies of various internal communications:

> 23. From 2012 to the present, please provide copies of all correspondence, emails, memos, and other documents from Stephen Geskey to employees of CSG Government Solutions, Fast Enterprises, LLC, or SAS Institute Inc.
>
> 41. From 2015 to the present, please provide copies of all correspondence, directives, policies, guidelines, memos, meeting minutes, and other documents that purport to end or that summarize the termination of the unemployment insurance agency's use of the Unemployment Insurance Agency Integrated System, the MiDAS System, and/or the Enterprise Fraud Detection Software in the identification, flagging, adjudication, or determination on fraud issues.
>
> 44. All internal reports and/or memoranda that were sent to Michigan Unemployment Insurance Agency's director and/or acting director between Dec. 1, 2013, and Aug. 31, 2018, about the number of claimant fraud and/or potential claimant fraud cases being identified by the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software.
>
> 45. All internal reports and/or memoranda that were sent to the Unemployment Insurance Agency director and/or acting director between Dec. 1, 2013, and Aug. 31, 2017, which raised concerns, expressed concerns, or discussed concerns about whether the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software was functioning properly and/or being operated properly by agency staff.
>
> 46. All internal reports and/or memoranda that were sent to the Governor or staff in the Governor's office between Dec. 1, 2013, and Aug. 31, 2017, which raised concerns, expressed concerns, or discussed concerns about whether the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software was functioning properly, whether management was properly responding to issues, and/or whether the systems were being operated properly by agency staff.
>
> 48. All correspondence:
>
> a. That was sent by the Michigan Unemployment Insurance Agency to CSG Government Solutions and/or its representatives or subcontractors from Jan. 1, 2013 to the present that express concerns about the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or

      the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

b. From CSG Government Solutions and/or its representatives or subcontractors that relate to the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

c. That was sent by the Michigan Unemployment Insurance Agency to Fast Enterprises, LLC and/or its representatives or subcontractors from Jan. 1, 2013 to the present that express concerns about the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

d. From Fast Enterprises, LLC and/or its representatives or subcontractors that related to the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

e. That was sent by the Michigan Unemployment Insurance Agency to SAS Institute Inc. and/or its representatives or subcontractors from Jan. 1, 2013 to the present that express concerns about the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

f. From SAS Institute Inc. and/or its representatives or subcontractors that related to the performance of the Unemployment Insurance Agency Integrated System, the MiDAS System, or the Enterprise Fraud Detection Software in matters relating to unemployment insurance fraud.

Plfs' Subpoena, ECF No. 190-1.

The subpoena also seeks information on all individuals affected by the fraud adjudication systems at issue in this case:

42. For unemployment insurance claimants where a determination and/or redetermination of fraud was made utilizing the Unemployment Insurance Agency Integrated System, the MiDAS System, and/or the Enterprise Fraud Detection Software, please produce all spreadsheets or other documents listing:

a. Full name of each claimant.

b. Address of the claimant.

    c. Date of the determination/redetermination.

    d. Whether the determination/redetermination was appealed.

    e. Results of any appeal.

    f. Amount of restitution assessed.

    g. Amount of penalties assessed.

    h. Amount of interest assessed.

    i. Date(s) of any reimbursement to the claimant.

    j. Amount(s) of any reimbursement to the claimant.

43. For unemployment insurance claimants who were flagged for potential fraud and no determination or redetermination of fraud was made where the Unemployment Insurance Agency Integrated System, the MiDAS System, and/or the Enterprise Fraud Detection Software was utilized, please produce all spreadsheets or other documents listing:

    a. Full name of each claimant.

    b. Address of the claimant.

    c. Date of the flagging.

    d. Whether any protest was submitted by the claimant.

    e. Date of any protest.

    f. Results of any protest.

Plfs' Subpoena, ECF No. 190-1, PageID.4417-18.

    In its tardy motion to quash the subpoena, the UIA advances four arguments. First, it contends that the information sought is not relevant to the named plaintiffs' claims, or the question of class certification. Second, it argues that the requests are unduly burdensome. Third, it asserts that federal regulations prohibit disclosure of confidential claimant information, and that the Court ought not to order disclosure given the "drastic nature" of this request. Fourth, the UIA believes

that if the Court requires disclosure, the information ought to be subject to the protective order and the plaintiffs ought to bear the costs of production.

The UIA filed its present motion to quash the subpoena under Federal Rule of Civil Procedure 45(d)(3)(A)(iii) and (iv). Those subsections of the rule require a court to "quash or modify" a subpoena that "requires disclosure of privileged or other protected information, if no exception or waiver applies," or if the production "subjects a person to undue burden." As noted in an earlier opinion, the district courts in this circuit generally apply basic discovery law as found in Federal Rule of Civil Procedure 26(b), compelling production of information "that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and balancing the interests against disclosure with the requesting party's need to obtain the information. *See Williams v. United Steelworkers of Am.*, No. 1:09-CV-743, 2011 WL 2135179, at *8 (S.D. Ohio May 27, 2011); *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 720 (S.D. Ohio 2006); and *E.E.O.C. v. Honda of Am. Mfg., Inc.*, No. 2:06-CV-0233, 2006 WL 2934072, at *1 (S.D. Ohio Oct. 12, 2006)).

"Undue burden is to be assessed in a case-specific manner" by balancing many factors that resonate with the proportionality analysis. *See In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). When a subpoena is challenged by a stranger to the lawsuit, "the status of that person as a non-party is a factor." *Ibid.* (quoting *Power*, 191 F.R.D. at 136).

By now, it is difficult to look at the UIA's position in response to the plaintiffs' subpoena without suspecting a strategy of delay. The UIA is not a named party, but its interests plainly are at stake in this litigation. And certainly, the plaintiffs' subpoena will require some considerable effort for compliance. But the UIA advances many of the same arguments previously rejected by

the Court regarding burdensome production, cost shifting, and the UIA's role as a "non-party" in this case.

### A. Requests 42 and 43 for names and addresses

The UIA challenges the plaintiffs' request for the names and addresses of the 44,000 claimants affected by the automated system as irrelevant, unduly burdensome, and prohibited by federal law. These arguments are not persuasive for several reasons.

First, the relevance of the names and addresses of all individuals who were subjected to the UIA's automated fraud system is obvious. The parties presently are engaged in class discovery. The plaintiffs need information on those persons who were subject to the UIA's automated systems to determine whether certification is appropriate under Federal Rule of Civil Procedure 23(a). The UIA argues that if the plaintiffs already know how many individuals fall into the class — approximately 44,000 according to a press release issued by the State — then there is no need to identify the individuals specifically at this stage of the case. The UIA argues without any elaboration that the plaintiffs will be able to determine whether commonality is satisfied here based on the large number of persons alone. However, it is self-evident that the plaintiffs cannot establish commonality without some insight into the circumstances surrounding each fraud determination and the process a claimant was afforded.

The UIA cites *Boykin v. Comerica Management Company, Inc.*, No. 09-10234, 2009 WL 2222899 (E.D. Mich. July 22, 2009), to bolster its position, but that case does not support its argument. There, Magistrate Judge Majzoub wrote that "[d]istrict courts have come down on both sides of the issue of whether discovery of the names and addresses of potential class members should be allowed prior to class certification." *Id.*, 2009 WL 2222899, at *3. She explained that courts coming down on the "yes" side of that debate have relied on *Hoffman-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 170 (1989), in which the Supreme Court concluded that the district court in an age discrimination case properly allowed discovery of the names and addresses of similarly situated employees, because, at least in part, several hundred employees had already filed consents seeking to join the action. *Boykin*, 2009 WL 2222899, at *3. In declining to apply *Hoffman La-Roche*, Judge Majzoub observed that "[i]n contrast to the factual situation in [*Hoffman La-Roche*], there is no indication that any other plaintiffs wish to join this action" and that "[i]n similar circumstances, courts have been wary to allow broad discovery aimed at identifying additional plaintiffs." *Ibid*. She concluded that "[b]ecause Plaintiffs have not provided any evidence that other persons are possible plaintiffs in this action, the burden of compelling Defendants to provide statewide discovery of their employees is undue." *Id.*, 2009 WL 2222899, at *4. Critically, however, Judge Majzoub acknowledged that the identity of similarly situated potential class members was relevant to the plaintiffs' claims as alleged in the amended complaint and therefore allowed discovery, albeit limited in scope. *Ibid*.

Here, it is widely known that there are other (several thousand) possible plaintiffs who wish to join this action. *Boykin* actually supports, not disfavors, disclosure.

Second, the UIA cannot establish that the requests impose an undue burden where the information sought apparently is readily available in its database. "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Modern Plastics Corp.*, 890 F.3d at 251 (quoting *Am. Elec. Power*, 191 F.R.D. at 136). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents.'" *Ibid*. (quoting *Power*, 191 F.R.D. at 136)). As the plaintiffs correctly note, it is entirely disingenuous

for the UIA to complain where the State, on numerous occasions, has made public representations about the number of claimants that were wrongfully accused of fraud. For example, as recently as February 28, 2019, the State issued a press release titled, "State seeks help to reach those due unemployment insurance fraud refunds," that goes on to say that "[s]ince the *comprehensive review* in 2018, more than $20.8 million has been refunded to nearly 40,000 residents who had their fraud determinations reversed." Plf.s' Resp., ECF No. 195-14, PageID.4599 (emphasis added). The UIA has not explained what additional effort it must expend to comply with the plaintiffs' requests when considering it apparently already collected and reviewed the information sought, even when questioned on the point at oral argument.

Third, federal law does not prohibit disclosure of confidential claimant information where a Court order authorizes disclosure. *See Cahoo v. SAS Inst. Inc.*, 377 F. Supp. 3d 769, 2019 WL 1771803, at *3 (E.D. Mich. 2019). In the opinion and order denying the UIA's first motion to quash, the Court looked to Rule 26(b) to inform its decision. *See id.* at *4 ("The district courts in this circuit generally apply basic discovery law as found in Federal Rule of Civil Procedure 26(b), compelling production of information "that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and balancing the interests against disclosure with the requesting party's need to obtain the information."). The UIA attempts to distinguish the present subpoena's demands from the subpoena in the first motion to quash, arguing that the names and addresses of the persons affected by the automated system are not relevant because they are not parties to the case. As discussed above, the relevance of the information sought is manifest to the plaintiffs' pursuit of class certification. The UIA cannot credibly argue that the interest against disclosure outweighs the benefit of obtaining the names and addresses of putative class members.

Moreover, on the present record, there is no basis to shift costs. Rule 45 states that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). "This provision has been deemed to 'make cost shifting mandatory in all instances which a non-party incurs significant expense from compliance with a subpoena.'" *Linglong Americas Inc. v. Horizon Tire, Inc.*, No. 15-1240, 2018 WL 1631341, at *2 (N.D. Ohio Apr. 4, 2018) (quoting *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)); *see also Under v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001).

The command to protect a non-party producer from "significant" expense, much like the obligation to protect a party from "undue burden," invokes a case specific inquiry. *See Bills v. Kennecott Corp.*, 108 F.R.D. 459, 463 (D. Utah 1985). The determination of what costs are significant is within the trial court's discretion. *Sound Sec., Inc. v. Sonitrol Corp.*, No. 08-05350, 2009 WL 1835653, at *1 (W.D. Wash. June 6, 2009). Expenses incurred complying with a subpoena must also be reasonable, and the determination of reasonableness also is a discretionary call. *In re Aggrenox Antitrust Litigation*, 14-02516, 2017 WL 4679228, at *2 (D. Conn. Oct. 18, 2017).

Courts have identified factors for determining the analogous undue burden when a demand for discovery is served. Those factors, to be balanced against one another, are:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with the production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.

*Medtronic Sofamor Danek, Inc. v. Michelson,* 229 F.R.D. 550, 553 (W.D. Tenn. 2003) (citing *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002)).

Here the UIA has not estimated or itemized any of the costs it expects to incur in producing the documents responsive to Requests 42 and 43. The Court cannot even begin to balance the factors listed above because there is nothing in the record that suggests that the expenses are "significant." The UIA says in a footnote that it will file a supplemental affidavit detailing costs prior to any hearing on this motion, but nothing has been forthcoming.

The UIA makes a valid point that the information when produced should be protected from further disclosure. There is currently in place a protective order that address confidentiality, and there is no reason why that order cannot be made to apply to the production of claimant information demanded by the subpoena. The plaintiffs' attorneys will present a supplemental order that achieves that end.

B. Requests for correspondence

The UIA does not object to producing the requested correspondence. Instead, it argues that the plaintiffs ought to provide search terms and keywords to narrow the scope of the plaintiffs' voluminous and possibly duplicative and cumulative requests. The plaintiffs agree that compliance with their wide-ranging subpoena calls for a collaborative effort with the producing entity. The parties have a duty to comport themselves accordingly. *See L-3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) (noting that counsel have a duty "to confer in good faith with opposing counsel in an effort to resolve or at least narrow the scope of a discovery dispute before bringing the dispute before the Court."). That is because "[c]rafting appropriate search terms requires 'careful thought, quality control, testing, and cooperation with

opposing counsel," and is not always an easy task." *L-3 Communications*, 313 F.R.D. at 667 (quoting *William A. Gross Constr. Assocs., Inc. v. American Manufacturers Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009)); *see also In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 652 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process.").

The problem here appears to be a lack of any collaborative effort, prompted in part by a disagreement over who should take the first step. It is sensible that the entity that possesses and stores the sought-after data would be in the better position to begin the negotiations by proposing a range of custodians and search terms. Once the plaintiffs see the proposal, they can either agree with the scope or propose additional terms or custodians. That has become the conventional approach when dealing with large-volume ESI production.

> [F]or keyword searching to be an effective information retrieval tool, the process of crafting keywords must be a cooperative one. The party responsible for production will usually be most familiar with its own records, and therefore will be "best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Sedona Conference, *Sedona Principles* at 38 (2d ed. 2007). Efficiently crafting search terms requires "input from the ESI's custodians as to the words and abbreviations they use." *William A. Gross*, 256 F.R.D. at 136; *see also id.* at 135 (complaining about lawyers "designing keyword searches in the dark, by the seat of the pants, without adequate (indeed, here, apparently without any) discussion with those who wrote the emails").

*L-3 Communications*, 313 F.R.D. at 667.

Negotiations over ESI production have guardrails of their own. For instance, if after plaintiffs' counsel provides input the UIA believes that a particular term is overly burdensome, it "ha[s] an obligation not just to assert [its] objection, but explain the grounds for the objection and to point to evidence supporting it." *Id.* at 670. "If asked, [the UIA] must offer specific suggestions

for narrowing the offending search terms in a way that addresses [its] concerns while still retrieving as many of the relevant documents targeted by the disputed search terms as possible." *Ibid.*; *see also The Case for Cooperation,* 10 Sedona Conf. J. 339, 354 (2009) ("[C]ounsel may not use his superior information as to the location or nature of responsive documents to thwart good faith discovery requests by refusing to engage cooperatively to identify . . . the search terms likely to produce responsive documents.").

Conclusion

The UIA's motion presents no basis to partially quash the subpoena, request the plaintiffs to craft search terms, or, on the present record, shift costs.

Accordingly, it is **ORDERED** that the second motion by non-party Michigan Unemployment Insurance Agency to quash the subpoena (ECF No. 190) is **DENIED**.

It is further **ORDERED** that the plaintiffs' attorneys shall prepare a proposed order that extends the protection of the confidentiality order previously entered, *see* ECF No. 159, to the production contemplated by the subpoena.

It is further **ORDERED** that upon entry of the supplemental confidentiality order, the UIA shall promptly comply with the subpoena.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   June 25, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on June 25, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---