

# EXHIBIT F

**TO DECLARATION OF SARA M. BERRY**

Case 2:17-cv-10657-DML-RSW  ECF No. 212-7 filed 07/11/19  PageID.4890  Page 2 of 34
Case 2:17-cv-10657-DML-RSW  ECF No. 208-7 filed 06/25/19  PageID.4742  Page 2 of 34
Motion to Quash - February 6, 2019

1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3     Patti Jo Cahoo, et al.,

 4                   Plaintiff,
                                          Case No. 17-10657
 5        -v-

 6     SAS Institute, Inc., et al.,

 7                   Defendant.
       _____/
 8
                            MOTION TO QUASH
 9
                BEFORE THE HONORABLE DAVID M. LAWSON
10                   United States District Judge
               Theodore Levin United States Courthouse
11                  231 West Lafayette Boulevard
                         Detroit, Michigan
12                       February 6, 2019
       APPEARANCES:
13
       FOR THE PLAINTIFFS:    Anthony D. Paris
14                            Maurice and Jane Sugar Law Center
                              4605 Cass Avenue, 2nd Floor
15                            Detroit, Michigan  48201

16     FOR DEFENDANTS         Susan M. McKeever
       SAS INSTITUTE,         Bush Seyferth & Paige
17     PHILLIPS:              3001 West Big Beaver Road, Suite 600
                              Troy, Michigan  48084
18
       FOR DEFENDANTS         Erik F. Stidham
19     FAST ENTERPRISES,      Holland & Hart LLP
       GRAGG, TRUVEL,         800 W. Main Street, Suite 1750
20     ARAKI-TOKUSHIGE,       Boise, Idaho  83702
       PATTERSON:
21

22     (APPEARANCES CONTINUED TO FOLLOWING PAGE)

23

24             To Obtain a Certified Transcript Contact:
               Rene L. Twedt, CSR-2907, RDR, CRR, CRC
25                     www.transcriptorders.com
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4891 Filed 07/14/19 Page 3 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4743 Page 2 of 34

2

Motion to Quash - February 6, 2019

```
1   APPEARANCES (Continued):

2    FOR DEFENDANTS          Stephen J. Rosenfeld
     CSG GOVERNMENT          Timothy J. Lowe
3    SOLUTIONS, STATEN,      McDonald Hopkins PLC
     ROSIER, ROWE,           39533 Woodward Avenue, Suite 318
4    PALMER, GOODHALL,       Bloomfield Hills, Michigan  48304
     PAUL:
5
     FOR DEFENDANT           Emily A. McDonough
6    McMURTRY:               Department of Attorney General
                             525 W Ottawa Street
7                            PO Box 30736
                             Lansing, Michigan  48909
8
     FOR DEFENDANT           Debbie K. Taylor
9    MOFFET-MASSEY:          Department of Attorney General
                             3030 W. Grand Boulevard, Suite 9-600
10                           Detroit, Michigan  48202

11
     FOR NON-PARTY MOVANT    Shannon W Husband
12   MICHIGAN UNEMPLOYMENT   Department of Attorney General
     INSURANCE AGENCY:       3030 W. Grand Boulevard, Suite 9-600
13                           Detroit, Michigan  48202

14

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT F, Pg. 2**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 filed 06/25/19 PageID.4999 Page 4 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4744 Page 3 of 33

Motion to Quash - February 6, 2019

3

TABLE OF CONTENTS

MATTER                                                                    PAGE

MOTION TO QUASH
Argument by Ms. Husband .................................   5
Argument by Mr. Rosenfeld ...............................  16
Argument by Mr. Stidham .................................  25
Argument by Mr. Paris...................................  27
Motion Taken Under Advisement by the Court...............  29


CERTIFICATE OF COURT REPORTER............................  33

**EXHIBIT F, Pg. 3**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4893 Filed 07/11/19 Page 5 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4745 Page 4 of 33

Motion to Quash - February 6, 2019                    4

 1  Detroit, Michigan

 2  February 6, 2019

 3  2:16 p.m.

 4                          *      *      *

 5          THE CLERK:  All rise.  The United States District

 6  Court for the Eastern District of Michigan is now in session,

 7  the Honorable David M. Lawson presiding.

 8          THE COURT:  You may be seated.

 9          THE CLERK:  Now calling the case of Patti Jo Cahoo

10  and others versus SAS and others, Case Number 17-10657.

11          THE COURT:  Good afternoon, Counsel.  Would you put

12  your appearances on the record, please?

13          MS. HUSBAND:  Shannon Husband, Assistant Attorney

14  General, on behalf of non-party Michigan Unemployment

15  Insurance Agency.

16          THE COURT:  I'm sorry, your name again?

17          MS. HUSBAND:  Shannon Husband, like husband and wife.

18          THE COURT:  You represent who?

19          MS. HUSBAND:  The non-party, Michigan Unemployment

20  Insurance Agency, the movant.

21          THE COURT:  Oh, it's your motion?

22          MS. HUSBAND:  Yes.

23          THE COURT:  Right.  Okay.

24          MR. ROSENFELD:  Good afternoon, your Honor.  Stephen

25  Rosenfeld and Tim Lowe on behalf of Defendant CSG.

Case 2:17-cv-10657-DML-RSW  ECF No. 202-7 filed 06/25/19  PageID.4469  Page 5 of 34
Case 2:17-cv-10657-DML-RSW  ECF No. 208-7 filed 07/11/19  PageID.4744  Page 5 of 34

Motion to Quash - February 6, 2019

5

 1          MR. STIDHAM:  Erik Stidham, your Honor, on behalf of

 2    Defendant Fast Enterprises.

 3          MR. PARIS:  Tony Paris, your Honor, on behalf of the

 4    Plaintiffs.

 5          THE COURT:  All right.  The motion is to quash a

 6    subpoena for two categories of information.  One is the

 7    documents relating to the named plaintiffs and the other

 8    individuals who are not named plaintiffs but are the claimants

 9    listed in the plaintiffs' initial disclosures.

10          And the second category is communications and

11    documents related to the project that were transmitted to the

12    Auditor General.

13          Are you seeking to quash the subpoena with respect to

14    both categories?

15          MS. HUSBAND:  No, your Honor.  We're only moving to

16    quash the subpoena as it relates to the individuals, not

17    the --

18          THE COURT:  All right.  That would be the first

19    category?

20          MS. HUSBAND:  Yes.

21          THE COURT:  All right.  Have you complied with the

22    subpoena with respect to the second category yet?

23          MS. HUSBAND:  We have not.  There has -- we're still

24    trying to -- I guess one of the things we wanted to talk to

25    the Court about is the issue of costs.

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 filed 07/11/19 PageID.4895 Page 7 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4741 Page 6 of 33

6

Motion to Quash - February 6, 2019

1       THE COURT:  On that subpoena?

2       MS. HUSBAND:  Yes.  Yes.  It was nominal, your Honor,

3   but there were costs.

4       THE COURT:  All right.  Is there some reason why you

5   haven't produced them and then taken up the issue of costs?

6       MS. HUSBAND:  Well, it was my understanding, your

7   Honor, that we -- it's our position that we shouldn't be

8   required to produce the documents unless costs are paid ahead

9   of time.  That's in the CFR.

10      And, also, it was my understanding that if there was

11  an issue with respect to costs after a bill was produced that

12  the parties would have an opportunity to discuss that with the

13  Court.

14      THE COURT:  Well, maybe we're putting the cart before

15  the horse, but is not the CFR directed to information that

16  pertains to individual claimants?

17      MS. HUSBAND:  Correct.  And there is also information

18  in those files that would pertain also to employers.

19      THE COURT:  And that's with respect to the second

20  category?

21      MS. HUSBAND:  No.  You're correct, your Honor.

22      THE COURT:  So where do the costs come in?

23      MS. HUSBAND:  The costs for the production.  Well,

24  we're a non-party, your Honor, so our first position is that

25  as a non-party we're not required to continue to produce

**EXHIBIT F, Pg. 6**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4806 Filed 07/11/19 Page 8 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4748 Page 7 of 34

7

Motion to Quash - February 6, 2019

1    documents without some discussion with respect to whether the

2    parties are going to share the costs of producing the

3    documents.

4            THE COURT:  And where does that come from?

5            MS. HUSBAND:  Well, your Honor, the -- I believe that

6    Federal Rule 45 talks about cost sharing, and it was also in

7    the case that I cited in my motion, the In Re: Modern Plastics

8    Corp.  That was a case that talked about cost sharing where a

9    party is not -- where a producer of information is not a party

10   to the litigation and whether cost sharing is appropriate and

11   how it can be resolved.

12           THE COURT:  My initial question, maybe I posed it

13   wrong, is whether you were seeking to quash the subpoena with

14   respect to the second category, and I thought you answered no.

15           MS. HUSBAND:  Correct.

16           THE COURT:  All right.  If that's the case, then

17   Rule 45 requires the producing party to bear costs unless you

18   seek a protective order under Rule 45, which you just told me

19   you weren't doing.

20           MS. HUSBAND:  That's correct, your Honor.

21           THE COURT:  So produce the items.

22           MS. HUSBAND:  Yes, your Honor.

23           THE COURT:  All right.  Now, with respect to the

24   others, have you been in touch with the plaintiffs' lawyer in

25   this case?

**EXHIBIT F, Pg. 7**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4897 Filed 07/11/19 Page 9 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4749 Page 8 of 33

8

Motion to Quash - February 6, 2019

1     MS. HUSBAND:  The plaintiffs' lawyer, no.  I have not

2     heard from them.

3         THE COURT:  All right.  There was a discussion -- the

4     reason I ask is because you weren't present, your colleagues

5     in the office were present, but I think you're not talking to

6     each other; right?

7         MS. HUSBAND:  We're not supposed to be, right.

8     Correct.

9         THE COURT:  There was a discussion at a status

10    conference that indicated that the plaintiff was going to

11    consent to the production of these documents on behalf of the

12    individuals named in the subpoena, which would basically

13    trigger one of the exceptions in the regulation.  Has that

14    conversation not taken place?

15        MS. HUSBAND:  Your Honor, I have not heard from

16    plaintiffs' counsel myself.  I can't speak to the other State

17    defendants.  I haven't heard from plaintiffs' counsel with

18    respect to whether or not they will consent to the release of

19    the documents.

20        THE COURT:  Is that -- wouldn't that take care of

21    everything except for the cost issue?

22        MS. HUSBAND:  I don't think it would take care of

23    everything, because I don't think that the CFR requires that

24    they consent.  There is no language in the CFR that says that

25    we can produce the records if they are willing to consent to

Case 2:17-cv-10657-DML-RSW ECF No. 212-7, PageID.4898 Filed 07/11/19 Page 10 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208, filed 06/25/19 PageID.4750 Page 9 of 33

Motion to Quash - February 6, 2019

9

1     the records.

2           THE COURT:  All right.  Go ahead and make your

3     argument, then.

4           MS. HUSBAND:  Well, your Honor, as we -- as I

5     previously indicated, the agency was required under 20 CFR

6     630.7 to file this motion to quash because the other

7     defendants are seeking information related to the claimant

8     files.  Those are five parties and six individuals who are

9     not parties to the litigation.

10          Specifically, they are seeking all communication

11    and documents related to the plaintiffs that the agency has

12    related to unemployment claims, adjudications, appeals, and

13    readjudications.

14          We indicated in the beginning of our argument that

15    State law precludes the release of that information, but more

16    specifically, Federal regulations require the agency to file a

17    motion to quash to disclose -- to avoid disclosure of the

18    information.

19          THE COURT:  Well, State law would not be an obstacle

20    to an order from this Court; is that correct?

21          MS. HUSBAND:  I understand that's the Court's

22    position.  Yes, your Honor.  That's correct.

23          THE COURT:  Okay.  Well, do you agree?

24          MS. HUSBAND:  I -- I agree with that.

25          THE COURT:  Okay.  Fine.  So we're basically dealing

Case 2:17-cv-10657-DML-RSW ECF No. 213-7 PageID.4899 Filed 07/11/19 Page 11 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4751 Page 11 of 34

10

Motion to Quash - February 6, 2019

```
 1   with the Federal regulation; right?

 2          MS. HUSBAND:  Yes, your Honor, we are dealing with

 3   the Federal regulation.  There two exceptions that allow the

 4   agency to avoid filing a motion to quash.  That is whether

 5   there has been previously issued a binding precedential

 6   decision that requires disclosure or whether there is a

 7   well-established pattern of court decisions regarding

 8   disclosure.

 9          As we have indicated, we have not heard from the

10   plaintiffs.  They have not consented to the disclosure of the

11   information.  And it's also our position that there is no

12   well-established pattern of prior court decisions in the

13   Eastern District or in the State of Michigan at all in the

14   Federal Courts with respect to the disclosure of unemployment

15   information.

16          THE COURT:  Well, the rule doesn't limit the view of

17   precedential decisions or establishing a pattern to a single

18   district, does it?

19          MS. HUSBAND:  It doesn't.  But I don't know that it

20   is wide enough that it would apply to any court.  For example,

21   if Hawaii Federal Courts found that the information would be

22   -- could be disclosed, I don't know if that would apply to the

23   Eastern District of Michigan or that would be considered

24   prior -- a prior decision.

25          THE COURT:  Well, if there is an array of decisions
```

**EXHIBIT F, Pg. 10**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4900 Filed 07/11/19 Page 12 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4752 Page 12 of 34

11

Motion to Quash - February 6, 2019

1    from Federal District Courts across the nation that pretty

2    much favor disclosure, that's something that I need to pay

3    attention to, isn't it?

4         MS. HUSBAND:  Yes.  Yes, your Honor, it is.  But,

5    again, we're asking that this Court take an independent look

6    at the matter as well as the CFR and reach its own conclusion.

7         There is one case from the Southern District of Ohio

8    that specifically dealt with 20 CFR, and in that court, in

9    that case, the Easter versus Beacon Tri-State Staffing case,

10   that Court determined that disclosure was proper.

11        THE COURT:  That was an employment case, wasn't it?

12        MS. HUSBAND:  It was an employment case, that's

13   correct.

14        THE COURT:  I mean, not an unemployment case.

15        MS. HUSBAND:  Yes.

16        THE COURT:  It was a -- I think the plaintiff wanted

17   those records to rebut a claim by the defendant in a -- was it

18   an FLSA case or something?

19        MS. HUSBAND:  FMLA case.

20        THE COURT:  FMLA case, is what it was.  Okay.

21        MS. HUSBAND:  And the District Court in that case did

22   deny the Ohio Unemployment Insurance Agency's motion to quash.

23   First, the Court found that there were no privacy concerns

24   because the individual in that case did not object to the

25   release of the information and, again, as we discussed, that

**EXHIBIT F, Pg. 11**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4901 Filed 07/11/19 Page 13 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4753 Page 13 of 34

12

Motion to Quash - February 6, 2019

 1    has not occurred in this case.

 2            And also because there was a well-established

 3    precedent in the Southern District of Ohio for the disclosure

 4    of information.

 5            If the Court does not believe that CFR prohibits

 6    the agency -- if this Court does not believe that the

 7    CFR prohibits the disclosure of the information, in the

 8    alternative, we would argue under Rule 45(d)(3)(A)(iii) that

 9    the motion should be -- or the subpoena should be quashed or

10    should be narrowed more specifically because it's overly

11    burdensome to the Unemployment Insurance Agency.

12            With respect to --

13    THE COURT:  Well, with respect to production, sort

14    of jumping around a little bit, you filed an affidavit with

15    respect to costs and the number of hours it would take to

16    produce the items.  And may I assume that the estimate that

17    you gave is to basically fully comply with the subpoena?

18    MS. HUSBAND:  Yes.  That's for all eleven claimants

19    as well as the second portion, the Auditor General.

20    THE COURT:  All right.  And then when I evaluate the

21    undue burden argument I have to do that basically in light of

22    the new -- relatively new scope of discovery provisions in

23    Rule 26(b)(1); is that correct?

24            In other words, I have to employ the proportionality

25    analysis; right?

**EXHIBIT F, Pg. 12**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4902 Filed 07/11/19 Page 14 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4754 Page 13 of 34

13

Motion to Quash - February 6, 2019

```
 1          MS. HUSBAND:  That's correct, your Honor.

 2          THE COURT:  Okay.

 3          MS. HUSBAND:  But one of the things -- first of all,

 4    we object to the requirement that we need to disclose the

 5    files for all eleven.  We feel that it would be more

 6    reasonable to start with the five individual named plaintiffs.

 7    There has not been -- this Court has not, when I checked the

 8    docket, certified the class.  These individuals are -- they

 9    have been identified in initial disclosures, but they are not

10    parties.

11          Also, your Honor, we would like some sort of

12    fashioning, if the Court is inclined to permit disclosure, of

13    a narrowing of the issue.  For example, they are asking for

14    records going back to 2012.  Each individual claimant could

15    have filed multiple claims that are unrelated to the issues

16    that are before the Court, and that specifically is the fraud

17    adjudication.

18          Just to give an example, you could have Claimant A

19    who has filed four or five claims since 2012, and it's the

20    agency's position that having to bear the burden and the cost

21    of producing records that are not relevant to the underlying

22    matters of this case is unduly burdensome to the agency.

23          THE COURT:  Anything else?

24          MS. HUSBAND:  No.

25          THE COURT:  I do have a question for you.  The costs
```

Cahoo, et al. v. SAS, et al. - 17-10657

**EXHIBIT F, Pg. 13**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4903 Filed 07/11/19 Page 15 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4755 Page 14 of 34

14

Motion to Quash - February 6, 2019

```
 1    that you estimated had to do with producing the data in

 2    encrypted format.  Why would we be doing that?

 3            MS. HUSBAND:  Well, that would just be the method of

 4    getting the information to the individuals.  So whether --

 5            THE COURT:  Well, couldn't you just put it in native

 6    format on a thumb drive and give it to them?

 7            MS. HUSBAND:  We could do that.  There wasn't a big

 8    cost difference between the two.  It's a matter of, do they

 9    want to receive it via e-mail, an encrypted e-mail, because

10    there's confidential information --

11            THE COURT:  Oh, I see.  Okay.

12            MS. HUSBAND:  -- or whether or not they want it on a

13    thumb drive.

14            But I just wanted the Court to understand that the

15    way that the MiDAS system is set up, the agency has to do a

16    screen print of each page, then they have to print it, and

17    then they have to scan it into a PDF format.  So that's --

18            THE COURT:  Oh, I suppose you could skip a step and

19    just give them the printouts; right?

20            MS. HUSBAND:  I mean, we could skip a step and give

21    them the printouts, but that goes into how long it takes to

22    produce the files, because they have to go into -- as it

23    stands now, if they are allowed to have all information on all

24    claims, they have to find each individual, whether it's five

25    or six, go through each of their claims, and there's tabs for
```

Case 2:17-cv-10657-DML-RSW ECF No. 213-7 PageID.4904 Filed 07/11/19 Page 16 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4756 Page 15 of 34

Motion to Quash - February 6, 2019

15

 1    every single claim.  Then they have to go to each tab, print

 2    every single piece of paper.  So, yes, we can produce it, but

 3    it is voluminous.  It does take a significant amount of time,

 4    and that is where the significant amount of cost is.

 5           THE COURT:  I hear you on that.  I'm just thinking to

 6    reduce the cost and reduce the labor, once you have it in

 7    printed form you could produce that without having to scan it

 8    and then redigitize it, if you will.  Could you do that?

 9           MS. HUSBAND:  That would cut down on the cost, your

10    Honor.  There would also be -- I know that I did read the

11    protective order that the Court issued and the provision that

12    said that the agency's records would be confidential.  I guess

13    my question would be whether or not the information such as

14    Social Security numbers or Federal ID numbers would have to be

15    redacted or if that information would be produced unredacted.

16           THE COURT:  Well, I'm sure it could be produced

17    unredacted.  If it had to be filed, it would have to be

18    redacted under the e-Government Act.

19           MS. HUSBAND:  So that would also -- if the agency

20    doesn't have to go back and redact personal information, then

21    that would also cut down on the costs.

22           THE COURT:  Yeah.  Okay.  All right.  Any further

23    argument, Ms. Husband?

24           MS. HUSBAND:  No.

25           THE COURT:  All right.  Thank you.

Case 2:17-cv-10657-DML-RSW   ECF No. 212-7 PageID.4905   Filed 07/11/19   Page 17 of 34
Case 2:17-cv-10657-DML-RSW   ECF No. 208   filed 06/25/19   PageID.4757   Page 16 of 34

16

Motion to Quash - February 6, 2019

```
 1            Mr. Rosenfeld, are you leading off with this?
 2            MR. ROSENFELD:  I am, your Honor.  Then Mr. Stidham
 3   is also going to make a few comments, if necessary.
 4            THE COURT:  Address the consent issue, if you would.
 5            MR. ROSENFELD:  Yeah.  Your Honor, as you may recall,
 6   at the last status conference plaintiffs indicated that they
 7   would consent, that they had no issue.
 8            THE COURT:  Not only do I recall, but I think I just
 9   mentioned that.
10            MR. ROSENFELD:  Right.  Right.  Right.  Yes.  I
11   apologize, your Honor.
12            THE COURT:  All right.
13            MR. ROSENFELD:  So I believe that goes to exactly --
14   as your Honor mentioned, it reduces any privacy concern that
15   the Court would have to deal with.
16            Another thing that addresses that privacy concern is
17   the protective order in this place -- I mean, in this case.
18   We have -- we have a two-stage protective order here where we
19   can designate things confidential or we can even designate
20   things attorney's eyes only.  So we really don't see any
21   privacy concern here.
22            And under the Regulation 603 --
23            THE COURT:  Well, there would be privacy concerns if
24   documents were floating around that had Social Security
25   numbers and other personal identification information.
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4906 Filed 07/11/19 Page 18 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4758 Page 18 of 35

17

Motion to Quash - February 6, 2019

1    MR. ROSENFELD:  Well, no, there -- there are privacy

2    concerns, but there are not privacy concerns if those

3    documents are produced pursuant to a protective order that has

4    been signed on by the parties in this case and it's been

5    signed on by anyone who would receive such information.

6    And under 603.7, I think one piece of the puzzle that

7    the State missed is that if there are methods of avoiding the

8    disclosure of confidential information like there are in this

9    case, they are not even required to file a motion to quash.

10    603.7(a) says that the State or State agency must file and

11    diligently pursue a motion to quash if other means of avoiding

12    the disclosure of confidential UC information are not

13    successful or if the Court has not already ruled on the

14    disclosure.

15    Here, we have a method for protecting that

16    information; as I mentioned, the protective order.

17    THE COURT:  Well, all right.  I appreciate your

18    argument, and that you have dwelled on that a little bit in

19    the briefs as to whether the State was required to do that.

20    The fact is that they have.

21    MR. ROSENFELD:  Sure.

22    THE COURT:  So we have got the motion.  Now we have

23    to deal with it.

24    MR. ROSENFELD:  Right.

25    THE COURT:  So whether they had to or maybe even if

Case 2:17-cv-10657-DML-RSW  ECF No. 212-7  PageID.4907  Filed 07/11/19  Page 19 of 34
Case 2:17-cv-10657-DML-RSW  ECF No. 208-7 filed 06/25/19  PageID.4759  Page 19 of 34

18

1   they didn't but chose to do so out of an abundance of caution,

2   here we are.

3          MR. ROSENFELD:  I understand, your Honor.

4          THE COURT:  All right.

5          MR. ROSENFELD:  So if you look at the exceptions

6   that 603.7 have, the one exception is if there is a

7   well-established pattern of prior court decisions, as the

8   Court mentioned a few minutes ago.

9          The Easter case which we have cited in our brief

10  and which was mentioned in the initial argument of counsel

11  recognizes that there is a well-established pattern.

12         Now, while that decision is certainly not binding on

13  this Court, as it is an Ohio decision, the plaintiffs have not

14  set -- or excuse me -- the movant here, the State, has not set

15  forth any case that says the opposite.

16         The Easter case goes through and recognizes various

17  other courts that have allowed production in cases like this.

18  And I'm not aware of, and the movant hasn't set forth, any

19  case in the Sixth Circuit which says differently, which

20  says that in this type of a situation there are -- it is

21  inappropriate under 603.7 to order the production of such

22  documents.  And here --

23         THE COURT:  Well, we agree that there is no Circuit

24  law on this; right?

25         MR. ROSENFELD:  Right.

**EXHIBIT F, Pg. 18**

Case 2:17-cv-10657-DML-RSW ECF No. 213-7 PageID.4908 Filed 07/11/19 Page 20 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208 filed 06/25/19 PageID.4760 Page 19 of 34

19

Motion to Quash - February 6, 2019

```
 1            THE COURT:  Either published or unpublished?

 2            MR. ROSENFELD:  That's correct, your Honor.

 3            THE COURT:  We do agree that there are various

 4   District Courts around the country which have ruled with

 5   respect to this regulation; correct?

 6            MR. ROSENFELD:  That is correct.

 7            THE COURT:  Some which the parties cited and some

 8   that you haven't.

 9            MR. ROSENFELD:  That's correct.

10            THE COURT:  And do you -- are you able to represent

11   what you believe to be the general trend or thrust of those

12   decisions, if a pattern can be discerned?

13            MR. ROSENFELD:  Your Honor, the ones that we have

14   reviewed, and I can't say I have read every single case around

15   the country on this, but I have read a lot of them, and we

16   believe -- it is our position that the trend and that the

17   pattern there is as the Easter case sets forth.  The pattern

18   is towards production, particularly in cases like this, where,

19   if you look at the -- as you mentioned, the standard for

20   production or proportionality standard, where the information

21   here is so highly relevant.  We are seeking information of the

22   plaintiffs that is at the crux of their due process claims and

23   of their other constitutional claims.  They are -- they are

24   stating that they were robo adjudicated and that those robo

25   adjudications were improper.
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4909 Filed 07/11/19 Page 21 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4761 Page 21 of 35

20

Motion to Quash - February 6, 2019

1    Well, for us to be able to defend that and, frankly,

2    for them to be able to assert that in the first place, we

3    need the information that they provided to the State agency.

4    We need to evaluate whether or not those alleged robo

5    adjudications were proper or improper.  You -- there is no way

6    to prosecute this case without that information.  That's how

7    relevant --

8            THE COURT:  This is -- as you're saying, these are

9    basically the corpus delicti?

10           MR. ROSENFELD:  That's exactly right.

11           THE COURT:  To borrow a phrase.

12           MR. ROSENFELD:  Yes.

13           THE COURT:  All right.

14           MR. ROSENFELD:  So I would like to move for a moment,

15   unless the Court has any questions on that part, into the

16   burden and cost issue that the State raised.

17           And it's interesting that the State is raising undue

18   burden.  They put forth a declaration that says that the total

19   production is going to be 8,800 pages for all of the -- this

20   is the subpoena and response that's in paragraph 23 of their

21   declaration.  This case, as I'm sure the Court can appreciate,

22   is going to involve probably millions of pages of documents.

23   A production of 8,800 pages by a State agency where a number

24   of those were -- a number of individuals who worked for those

25   State agencies are employed -- are parties here, I think --

**EXHIBIT F, Pg. 20**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4910 Filed 07/11/19 Page 22 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4762 Page 22 of 34

21

Motion to Quash - February 6, 2019

1          THE COURT:  Well, we don't even have to talk about

2   page length.  They have estimated, at the outside, I would

3   presume, giving themselves the benefit of the doubt, that the

4   total production cost is going to be about $16,000 or $17,000.

5   Isn't that how you read that?

6          MR. ROSENFELD:  I think -- I thought it was going to

7   be about $8,000.  I didn't know --

8          THE COURT:  Well, I thought there were two batches.

9          Can you clarify?

10         MS. HUSBAND:  Yes, your Honor.  It's basically

11  $8,000.  We just gave them two avenues of getting them the

12  documents, if they wanted an e-mail or a thumb drive.

13         THE COURT:  I get it.  Okay.  Thank you.

14         MR. ROSENFELD:  So -- and even that, your Honor --

15         THE COURT:  I was adding them up.

16         MR. ROSENFELD:  Right.  I appreciate that.

17         So the method of production that the State talked

18  about and that would cost this $8,000 was taking screenshots

19  of pages of the terminal.

20         First of all, we don't think that that's how it

21  should be produced.  We think it should be produced, as the

22  Court mentioned, in native format.  These are documents and

23  this is information within a database.  This information can

24  be extracted from that database with a query.  And you

25  could -- you could take all of this information, extract it

Case 2:17-cv-10657-DML-RSW ECF No. 213-7 PageID.4911 Filed 07/11/19 Page 23 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4763 Page 23 of 34

22

1    with a simple query and import it to an electronic file.

2    There is no need to print it out.  There is -- there is no

3    need to then print it and scan it.  All you need is one query

4    to get it to a -- from one database to another database file.

5             And that way, frankly, it's not only cheaper for the

6    State, but it's more useful for the parties, because with the

7    electronic discovery software like a Relativity, we would then

8    have a lot more meta data about that, about that information.

9             So we --

10            THE COURT:  What good would the meta data do you in

11   this particular situation?

12            MR. ROSENFELD:  Well, the -- the meta data here would

13   be -- instead of having to print it out and scanned in OCR, we

14   would then have the full text.  So there wouldn't be meta data

15   like there is on an e-mail where you would have, you know, all

16   received dates, but we would have the full text and the

17   section from which that full text came from without having to

18   then do, you know, an OCR of any printed-out screenshot, which

19   we would have to do if -- you know, if we got it in that

20   format.

21            THE COURT:  All right.

22            MR. ROSENFELD:  So --

23            THE COURT:  I can hear the can opener peeling off the

24   top of that can of worms here.

25            MR. ROSENFELD:  How so, your Honor?

Motion to Quash - February 6, 2019

1    THE COURT:  Well, Ms. Husband, do you mind if I ask

2    if you are an IT person?

3    MS. HUSBAND:  I don't mind if you ask, your Honor.

4    And I am not an IT person.

5    THE COURT:  All right.  So would you feel

6    uncomfortable having a discussion about mode of production

7    without consulting with your IT person?

8    MS. HUSBAND:  Yes, I would.

9    THE COURT:  All right.  So that's not going to be

10   resolved today.

11   MR. ROSENFELD:  Okay.

12   THE COURT:  Thank you.

13   MR. ROSENFELD:  Well, so we can talk about the mode

14   of production, but at the very most, even if they had to

15   produce it in paper format, as they have suggested, and even

16   if it will take them, you know, 13 hours to review each 800

17   pages, which, you know, frankly, I don't know why they would

18   need to review it, because as the Court mentioned, there is a

19   protective order, they don't need to redact Social Security

20   numbers, all they need to do is get the information off their

21   system and produce it.

22   If they want to review it for their internal

23   purposes, you know, that should be at their cost.  The parties

24   should not have to bear that cost, because I don't think that

25   there is any reason, any privacy reason for them to review it

**EXHIBIT F, Pg. 23**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4913 Filed 07/11/19 Page 25 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4765 Page 24 of 34

24

Motion to Quash - February 6, 2019

```
1   because of the protective order in place in this case.

2           And one other thing I would mention.  Maybe this is

3   more apt during the status conference portion of this, but

4   even if the parties would have to bear some costs, and even

5   if, say, that the Court ruled that the $8,000 was an

6   appropriate cost, which, again, we don't agree with, I think

7   that that cost would have to be borne equally by the

8   plaintiffs and the defendants in this case, not just by the

9   party that issued the subpoena, of course, should the

10  plaintiffs want the information.  So that's -- that's another

11  issue that --

12          THE COURT:  All right.  No, you made that clear in

13  your papers.

14          MR. ROSENFELD:  Right.

15          THE COURT:  Anything else then?

16          MR. ROSENFELD:  That's -- that's it.  Do you have

17  anything?

18          THE COURT:  Well, Mr. Stidham, are you presenting an

19  argument?  You didn't check off your --

20          MR. STIDHAM:  If I failed to, your Honor, I'm sorry,

21  that's a mistake by me.  And I only have a few comments I

22  might add.

23          THE COURT:  Fire away.

24          I'm sorry.  Mr. Rosenfeld, were you finished?

25          MR. ROSENFELD:  I am, your Honor.
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4914 Filed 07/11/19 Page 26 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4766 Page 25 of 34

25

Motion to Quash - February 6, 2019

```
 1          THE COURT:  Okay.  Great.

 2          MR. STIDHAM:  And, your Honor, I will be brief.

 3   We -- Fast is aligned with CSG's arguments and the arguments

 4   that Mr. Rosenfeld has made today.

 5          I do want to raise just a couple of other issues,

 6   some of which, to be candid, your Honor, might bleed into what

 7   we discuss in the status conference, but I think they should

 8   be raised while the State is here.

 9          Fast is very concerned about the ambiguity that has

10   arisen relating to the plaintiffs' position on this.  To be

11   candid, Fast --

12          THE COURT:  About whether they consent or not?

13          MR. STIDHAM:  Yes.  Because Fast understands why the

14   State felt it was necessary to make this motion and we would

15   hope that the -- any ambiguity regarding who the plaintiffs

16   represent, including the folks who are not necessarily

17   named as plaintiffs in this case yet but were in initial

18   disclosures, any ambiguity regarding the waiver be addressed

19   in a very clear manner by the plaintiffs in order to address

20   the State's legitimate concerns.

21          And also, your Honor, because I think it lends itself

22   to another aspect of the relief we asked in this brief, which

23   was an order, if the Court could consider how it might be able

24   to craft an order in this case that could generally be useful

25   for subsequent requests that might arise to the State.
```

Motion to Quash - February 6, 2019

```
1   Perhaps they might go to a different agency, but if the Court
2   could give some consideration to addressing this so that that
3   exception that the State had concerns about, about prior court
4   orders, might be practical.
5           THE COURT:  I looked at that.  I thought that was
6   probably an efficient request.
7           On the other hand, we're dealing with a regulation,
8   and I don't know that I am able to anticipate what other
9   regulations there might be, or give advisory opinions, so I'm
10  not sure that I'm going to be able to accommodate that.
11          MR. STIDHAM:  Thank you, your Honor.
12          And again, just stand by, again, addressing any
13  ambiguity, because -- about the plaintiffs' consent here,
14  because as we noted in our opposition papers, it is not CSG
15  or Fast's objective in any way to just assert that all the
16  information regarding any potential members of the putative
17  class should be subject to discovery requests without more
18  thought and care being given to it.
19          And if these individuals who are identified in the
20  initial disclosure are not currently represented by Sugar Law
21  or the Ernst & Marko firm, we need to have that clarified so
22  that we're not continuing down an area that could create more
23  concerns for the State down the road.
24          And then with regard to the meta data, your Honor, we
25  do understand that we could need some additional clarification
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4916 Filed 07/11/19 Page 28 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4768 Page 28 of 35

27

Motion to Quash - February 6, 2019

```
 1    because, just like Ms. Husband, I'm not an IT professional.
 2    But to add to what Mr. Rosenfeld raised that I think should be
 3    a consideration given here is the meta data we're talking
 4    about, based on the information that we think the State would
 5    pursue here is, again, not just a question of OCR.
 6         We do anticipate that there will be e-mail
 7    communications, for example, your Honor, relating to internal
 8    discussions about how some of these individuals were dealt
 9    with, including some e-mails that might have been sent from
10    the plaintiff.  And so I just want to make it clear that we
11    think that that meta data might be relevant, understanding
12    that we may not be able to get that all finished here today.
13         That's all I wanted to add, your Honor, unless you
14    have any questions.
15         THE COURT:  No, I don't have any additional
16    questions.
17         Mr. Paris, you have your box checked off here.  You
18    didn't file any papers with respect to this motion, but I do
19    have some questions for you.
20         MR. PARIS:  Yes, your Honor.
21         THE COURT:  Do you have a presentation you'd like to
22    make first?
23         MR. PARIS:  Only to briefly address the issues here.
24    I only wanted to reserve in case you had any questions on
25    behalf of the plaintiffs.
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4917 Filed 07/11/19 Page 29 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4769 Page 29 of 35

28

Motion to Quash - February 6, 2019

```
 1              And to address what Mr. Stidham said, I don't -- we
 2    didn't mean to be ambiguous in any way.  Just as we did last
 3    time in your chambers, we are not only consenting to this, but
 4    we hadn't been contacted by anybody.  Had we --
 5              THE COURT:  Well, first of all, do you represent all
 6    of the people disclosed in your initial disclosure?
 7              MR. PARIS:  Yes, your Honor.  And --
 8              THE COURT:  Do you have a formal attorney-client
 9    relationship?
10              MR. PARIS:  With the named plaintiffs.  With all of
11    the initial disclosure folks, some of which I have represented
12    at underlying unemployment insurance agencies, I have
13    represented probably close to 500 of those folks at the
14    underlying level, and not all of them, obviously, are listed
15    in the initial disclosures, but I or my co-counsel have some
16    type of ongoing contact with them.  And specifically with the
17    named plaintiffs, two of which I represented all the way
18    through, and all of which we have some type of formal
19    understanding of what --
20              THE COURT:  You have seen the request for production.
21              MR. PARIS:  Yes, your Honor.
22              THE COURT:  Do you represent everybody that's
23    identified in the request for production?
24              MR. PARIS:  Yes, your Honor.  Yes, your Honor.
25              THE COURT:  In other words, do you have the authority
```

**EXHIBIT F, Pg. 28**

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4918 Filed 07/11/19 Page 30 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4770 Page 29 of 33

29

Motion to Quash - February 6, 2019

```
 1   to consent, if that's what you choose to do?
 2             MR. PARIS:   We do have the authority to consent.
 3             THE COURT:  And do you intend to do that?
 4             MR. PARIS:   I do.
 5             THE COURT:  All right.  Can you do that in a formal
 6   way by filing some sort of document so that the State at least
 7   has that to work with?
 8             MR. PARIS:  Yes, we can do that.
 9             THE COURT:  All right.  Then I'll direct you to do
10   that.
11             MR. PARIS:  Thank you.
12             THE COURT:  Anything further, then?
13             MR. PARIS:   Nothing, your Honor.
14             THE COURT:  Ms. Husband, do you have any rebuttal?
15             MS. HUSBAND:  No, your Honor.
16             THE COURT:  Okay.  I'm not going to rule from the
17   bench.  I think a written decision probably would be useful.
18   It will be my intention, however, I will tell you, to grant
19   the -- or to deny the motion to compel production, except I'm
20   not at all clear about how to address the cost issue and how
21   to address mode of production.
22             So I am going to direct the defendants and counsel
23   for the moving party to confer with your IT people, if
24   necessary, to talk about perhaps a more economical way of
25   production, and that would also include a feasible way of
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4919 Filed 07/17/19 Page 31 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4771 Page 31 of 34

30

Motion to Quash - February 6, 2019

1    production.  Maybe there is some proprietary software that the

2    State is using to store this data that makes it impossible to

3    produce it in native format that's useful in any way.  I don't

4    know that.  If there is, then maybe the only practical way of

5    doing it is how Ms. Husband suggested, and that is, printing

6    it off.  I think you can probably avoid the second step of

7    rescanning it and redigitizing the documents.  You can do that

8    yourself, if you want to do that for your own litigation

9    purposes.

10           As far as costs -- well, first of all, I also intend

11    to make an observation and a finding that the production is

12    not unduly burdensome.  Frankly, the cost estimate, which

13    turns out to be half of what I thought it was, is really

14    rather modest in the case.  And in terms of proportionality,

15    these are core documents and are necessary for the lawsuit

16    to be defended and most likely prosecuted.

17           Now, as far as payment in advance, I think at the

18    end of the day it's probably going to be the most sensible

19    approach to produce the documents and identify how much it

20    costs to do so.  Now, I can -- if there is a real concern

21    about that, I can make an order to have the defendants escrow

22    some money so that that fund is available to pay those costs,

23    but you can have those discussions.

24           And if, Ms. Husband, you think that the State should

25    deem itself insecure, then I can address that in that fashion.

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4920 Filed 07/17/19 Page 32 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4471 Page 32 of 34

31

Motion to Quash - February 6, 2019

1    But once the costs are determined, then I'll address the

2    payment.

3            And as far as spreading the costs among all the

4    parties, including the plaintiff, I haven't heard from the

5    plaintiff on that.  I'm a little bit reluctant to require the

6    plaintiffs to pay for copies of their own documents.  On the

7    other hand, there might be an argument that says that it

8    justifies that.

9            So I suppose that means that I'm working my way

10   towards suggesting a supplemental brief on the cost issue.  I

11   think you asked for that opportunity anyway because you hadn't

12   had that affidavit by the time you answered the motion itself,

13   but I think a further conversation probably will -- it might

14   obviate the need for that supplementation and clarify where

15   you stand on how much and the manner of payment and so forth.

16           Mode of production, though, is a live issue and we

17   need to get that resolved before anybody makes any effort at

18   turning documents over at this point.

19           I'll ask if there are any questions, but I would

20   remind you that I intend to address this in a written order,

21   so -- a written memorandum and opinion, so you might want to

22   wait on that.

23           But are there any questions at the moment,

24   Ms. Husband?

25           MS. HUSBAND:  I just want to be clear, your Honor.

Case 2:17-cv-10657-DML-RSW   ECF No. 212-7  PageID.4921   Filed 07/17/19   Page 32 of 34
Case 2:17-cv-10657-DML-RSW   ECF No. 208-7 filed 06/25/19   PageID.4773   Page 33 of 34

32

Motion to Quash - February 6, 2019

```
 1    So the motion is denied as to all eleven at this time, is that
 2    correct, not just --
 3            THE COURT:  Correct.  Yeah.
 4            MS. HUSBAND:  Okay.  Thank you.
 5            THE COURT:  We're not going to take it in phases.  I
 6    think as long as you're looking, you might as well look for
 7    all.
 8            MS. HUSBAND:  I just wanted to be clear.  Thank you.
 9            MR. STIDHAM:  I have a question, your Honor, if I
10    could, for Ms. Husband, understanding she may not be able to
11    answer it.
12            But I was hoping, Ms. Husband, do you think that
13    we could commit to having the discussions regarding mode of
14    production within the next week or so, so we can get back to
15    the Court --
16            MS. HUSBAND:  Of course.
17            MR. STIDHAM:  -- on whether or not we have an
18    agreement, so within a week of today?
19            THE COURT:  Yeah, that's a good observation.
20            MR. STIDHAM:  Thank you, your Honor.
21            THE COURT:  If it's feasible, I'll direct that it
22    occur.  If you need additional time, tell me how much and why.
23            Anything else?
24            MR. STIDHAM:  Not from Fast, your Honor.
25            THE COURT:  All right.  Thank you.  This matter,
```

Case 2:17-cv-10657-DML-RSW ECF No. 212-7 PageID.4922 Filed 07/17/19 Page 34 of 34
Case 2:17-cv-10657-DML-RSW ECF No. 208-7 filed 06/25/19 PageID.4474 Page 33 of 33

33

Motion to Quash - February 6, 2019

```
 1    then, Court is in recess now.

 2            We do have a status conference, and you know, I think

 3    we will just see if we can use Judge Cohn's jury room to do

 4    that.  If you want to just sit -- do you want to stay for that

 5    or do you want to be excused?  You may, if you wish.

 6            MS. HUSBAND:  Would you like me to stay for that?

 7            THE COURT:  It's up to you.

 8            MS. HUSBAND:  Then I'll probably just be excused.

 9    Thank you.

10            THE COURT:  Okay.  All right.  Actually, I'm going to

11    take a few minutes before we start the status conference, so

12    if you want to just have a discussion about logistics right

13    now, it might be a good idea.  Okay?

14            MS. HUSBAND:  Okay.

15            MR. ROSENFELD:  Thank you, your Honor.

16            (Proceedings adjourned at 2:54 p.m.)

17                     *       *       *

18

19            CERTIFICATE OF COURT REPORTER

20

21        I certify that the foregoing is a correct transcript

22    from the record of proceedings in the above-entitled matter.

23

24    _____     June 24, 2019
           s/ Rene L. Twedt
      RENE L. TWEDT, CSR-2907, RDR, CRR, CRC    Date
25        Federal Official Court Reporter
```

Cahoo, et al. v. SAS, et al. - 17-10657

**EXHIBIT F, Pg. 33**