UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

        Plaintiffs,

v.

Case Number 17-10657
Honorable David M. Lawson

SAS INSTITUTE INC., FAST
ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, JULIE A.
McMURTRY, and SHARON
MOFFET-MASSEY,

        Defendants.

_____/

## ORDER GRANTING DEFENDANT FAST'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Defendant FAST Enterprises, LLC served a subpoena on November 19, 2018 on the State of Michigan for eight categories of documents that are relevant to the plaintiffs' claims in this case. Having received very little in response, FAST filed the present motion to compel production of the documents. The Court heard oral argument on August 29, 2019 and ruled from the bench that prompt production of documents is required.

The subpoena was directed to "the State of Michigan," although the focus of many of the requests is on the Michigan Unemployment Insurance Agency (UIA), a department of the State whose employees are defendants in this case. The subpoena sought production of documents responsive to the following eight categories:

> 1. All Communications and Documents from the Microsoft Outlook/Exchange accounts of any FAST, CSG, or SAS employee who was given a Michigan.gov email address;

2. All files (including Communications and Documents) from the local hard drives (or images thereof) of any State of Michigan computers given to any FAST, CSG, or SAS employee to use for purposes of the Project;

3. All files (including Communications and Documents) located on the Project Sharepoint sites;

4. All files (including Communications and Documents) located in the SQR, SQT, SQD and FCR databases for the Project;

5. All Communications and Documents related to the Project which are located on any Agency shared drives (this request specifically excludes all data within the MiDAS system);

6. All Communications and Documents from Microsoft Outlook/Exchange, the local hard drives, and the personal records and files of any State of Michigan employee which are related to the Project, including:

    a. All Communications and Documents related to the Agency's Request for Proposals for the Project, including all responses received;

    b. All Communications and Documents related to the Agency's decision to implement auto-adjudication;

    c. All Communications and Documents related to the Agency's development of requirements and parameters for the Project, including the non-monetary determinations aspects of the Project;

    d. All Communications and Documents related to the Agency's hiring of Defendants SAS Institute Inc., FAST Enterprises, LLC, and CSG Government Solutions (the "Corporate Defendants");

    e. All Communications and Documents related to the respective roles of each of the Corporate Defendants and the Agency for the Project;

    f. All Communications and Documents related to the Agency's communications with the Department of Labor and/or Employment and Training Administration regarding the Project and auto-adjudications;

    g. All Communications and Documents related to the customizations or changes made to the MiDAS software throughout the Project, including all customizations and changes made to the non-monetary determinations decision trees, and where, why, and with whom those changes originated;

    h. All Communications and Documents related to procedures for adjudication of claims;

> 7. All Communications and Documents produced by the Policies and Procedures Group at the Agency related to, relevant to, or used during the Project; and
>
> 8. Documents evidencing the fraud detection and adjudication system and decision tree used by the Agency prior to the Project.

FAST Subpoena, ECF No. 212-2, PageID.4830-31. The subpoena, commanding the State of Michigan to produce the requested documents on December 13, 2018 at 9:00 a.m., was directed to the care of assistant attorney general Debbie Taylor, who represents defendant Sharon Moffet-Massey in this case, and non-party UIA in the *Bauserman* litigation, a related lawsuit brought against the State and its agency. Taylor accepted service of the subpoena but purported to limit her acceptance to the UIA, even though it was directed to the State of Michigan. More on that later.

To date, FAST has not received emails responsive to the subpoena, except for 11 emails produced on June 25, 2019 that were responsive to only two categories of documents sought. Neither the UIA nor any other state agency objected to the subpoena or filed a motion to quash or for a protective order.

Counsel for FAST, the other parties, and the UIA apparently have been negotiating for eight months regarding form of production, search terms, and privilege for emails responsive to the subpoena. The UIA has represented that only one mailbox for a FAST employee still existed, and that all other FAST mailboxes have been deleted.

On May 31, 2019, the parties and counsel for the UIA discussed over telephone issues related to the location of emails as well as privilege concerns and cost-sharing. FAST agreed to issue courtesy subpoenas to three State agencies — the Department of Technology, Management, and Budget (DTMB), Department of Licensing and Regulatory Affairs (LARA), and Department of Talent and Economic Development (TED) — in order to satisfy the UIA's procedural concerns.

During the conference, counsel for the UIA represented that she had no indication that the other agencies would object to the subpoenas. FAST served copies of the subpoena on those three agencies on June 4, 2019.

On June 12, 2019, LARA responded to FAST's subpoena certifying that after conducting a "thorough search of its electronic databases and other records . . . it has no records responsive to the request."

TED apparently responded to the subpoena via email indicating that it had gathered responsive emails and intended to produce them following review. Berry Aff., ECF No. 212, PageID.4818.

On June 17, 2019, DTMB responded to FAST's subpoena objecting to the requests on various grounds including that they are vague, unduly burdensome, and duplicative of what was asked of the UIA. ECF No. 212-6. The response indicated that if FAST stipulated to an order that allows DTMB to be "reasonably compensated" for its costs for complying with the subpoena, DTMB would work with FAST to produce any responsive and non-privileged documents. DTMB estimated costs of compliance to be in the hundreds of thousands of dollars, perhaps even exceeding one million dollars.

Despite FAST's efforts to negotiate in good faith regarding cost-sharing of loading and producing the requested data, the UIA has not taken any steps to begin producing non-privileged responsive emails, either from FAST's employees' mailbox or from any State of Michigan employee. However, at the hearing an assistant attorney general represented that the UIA will furnish certain non-privileged emails within two weeks. A significant portion of the UIA's estimated costs is for privilege review of responsive emails. The UIA estimates that based on the search terms provided, 5.5% of the emails responsive to the subpoena contain privileged search

terms. Document review of the State of Michigan mailboxes alone will cost $1.5 million. The estimate is approximately $177,000 for the single mailbox of the FAST employee the UIA was able to uncover. It is undisputed, however, that FAST employees were considered independent contractors when they worked at the UIA.

Despite its failure to object to the original subpoena, the UIA now argues that it believes that the emails of FAST's own employees, as independent contractors, are covered communications subject to the attorney-client privilege. That is not a justification to delay production any further, however, as eight months have elapsed since the subpoena was served, the UIA never objected to it, it did not submit a privilege log, and it did not move for a protective order asserting any sort of privilege. Moreover, the production would be covered by a protective order that the Court entered months ago, which contains a claw-back provision after the fashion of Federal Rule of Evidence 502.

A valid privilege might be a legitimate basis for withholding production. *See Ross v. City of* Memphis, 423 F.3d 596, 600 (6th Cir. 2005) ("The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.") (citations omitted). And "[a] subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 685 (E.D. Mich. 2017) (citations omitted). The UIA says that there are thousands of emails that may contain privileged communications between FAST employees and attorneys for the State. Citing *Raymond James & Associates, Inc. v. 50 North Front Street, TN, LLC*, No. 18-2104, 2018 WL 6529879 (W.D. Tenn. Sept. 13, 2018), the UIA argues that contractor emails, as well as emails belonging to State employees, are covered under the attorney-client privilege. In that case, the plaintiff alleged that

the defendant breached its obligations under the parties' lease agreement by failing to maintain the elevators in the building owned by the defendant and occupied by the plaintiff. *Id.* at *1. The plaintiff served a subpoena on a third party that was the asset manager for the building and was owned, at least in part, by the same owner of the defendant entity. *Ibid.* The defendant asserted that because the third party was its "functional employee," "it retain[ed] a personal right and privilege to protect the subpoenaed information." *Ibid.* The court explained that the "[a]ttorney-client privilege can extend to a corporation's independent contractor that is the 'functional equivalent of an employee.'" *Id.* at *3 (citing *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 459 (E.D. Pa. 2012)); *see also In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994) (""[W]hen applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors.").

But that case does not help the UIA where FAST is seeking emails of its own employees. Even assuming the communications satisfy the elements of the attorney-client privilege — which is impossible to know in the absence of a privilege log — FAST would fall within the scope of the privilege and assert or waive it as it chooses. *See Upjohn Co v. United States*, 449 U.S. 383, 396 (1981). The UIA has not offered any explanation for why FAST would not be entitled to review those emails of FAST's own employees contracted to the State, which the UIA intends to withhold on the basis of privilege.

Moreover, "[a] person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information

itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A); *see also* Fed. R. Civ. P. 26(b)(5)(A). As noted, no privilege log has been produced.

The UIA has raised cost sharing as an issue, but as the Court explained at the hearing on February 6, 2019, cost-sharing disputes are not a valid basis to withhold producing documents responsive to a subpoena. *See* Tr. at 7, ECF No. 212-7. It does not appear that this is the primary reason behind the UIA's delay in production, but if it is, it is unclear why the UIA has not sought a protective order.

Both the UIA and its sister agency, the DTMB, have projected cost estimates of hundreds of thousands of dollars to produce the documents, most of which would consist of privilege review expenses. Seeking reimbursement for wildly expensive production costs certainly could discourage a party from seeking potentially damaging information. But it has been well recognized that a subpoenaed party cannot seek reimbursement for costs of privilege review. *See e.g.*, *Steward Health Care System LLC v. Blue Cross & Blue Shield of Rhode Island*, No. 15-272, 2016 WL 8716426, at *4 (E.D. Pa. Nov. 4, 2016) (explaining that fees that were "incurred as a result of [a] desire to check for privileged and confidential documents . . . are not subject to reimbursement under Rule 45"); *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-6811, 2012 WL 5395249, at *3 (S.D. N.Y. Nov. 5, 2012) (awarding search, collection, and production costs associated with compliance, but holding that the "non-parties shall bear their own costs of reviewing the documents for privilege," and noting that "[g]enerally, it is not appropriate to shift such costs because the producing party has the exclusive ability to control the cost of reviewing the documents") (internal citation and quotation omitted). Neither agency has pointed to any authority to the contrary, and as noted above, the Court already admonished the UIA that cost-shifting disputes are not a valid basis for withholding production.

The UIA also asserts that it cannot produce deleted mailboxes, explaining that when the *Bauserman* litigation began, a litigation hold was issued and all UIA employee accounts, manual sections, training manuals, and other documents related to MiDAS were preserved. A reminder was issued several times after that to continue to preserve documents, including after this case was filed, and the UIA says that it prepared litigation hold memoranda related to the contractor defendants as the case unfolded. The UIA apparently is unaware of whether the other State agencies issued a litigation hold regarding their employees and this litigation. Despite this, the mailboxes for many of the FAST employees that were identified in the disclosures are "unavailable." The UIA says that it advised counsel for FAST and CSG that the mailboxes for Tuvell, Platt, and Gragg had been disabled. And the mailboxes for Hayden, Atkinson, Silva, Araki, and Eads were deleted five years ago and prior to the *Bauserman* case.

Certainly, the UIA cannot produce what it no longer has. *See Roden v. Floyd*, No. 16-11208, 2019 WL 1098918, at *4 (E.D. Mich. Mar. 8, 2019) (Patti, M.J.) ("[A] a party cannot be compelled to produce what he does not have."). But as FAST points out, the UIA has failed to explain adequately why certain mailboxes were deleted in 2018, after *Bauserman*, and why other mailboxes were deleted in 2014. There is insufficient information in the record to allow a determination, and the Court will permit FAST to take discovery on this point.

Finally, the UIA responds that it cannot produce emails of persons it does not employ or that no longer exist. The UIA says that employees whose mailboxes belong to other State agencies — such as DTMB, LARA, and TED — are not within its control as those agencies are non-parties to this case. DTMB apparently informed the UIA that it would not provide the UIA with the mailboxes of any non-UIA employees. The UIA asserts that a motion to compel production should be directed to the agencies where the mailboxes are located.

But the subpoena was not directed to the UIA; it was directed to the State of Michigan. FAST explains, however, that it sent the subpoena to the UIA because assistant attorney general division chief Debbie Taylor told counsel for FAST that the UIA director authorized her assistant to accept the subpoena. The UIA's attempt to compartmentalize the State and its agencies is disingenuous here. It generally is recognized that process directed to a state agency (and its employees in their official capacity) is tantamount to proceeding against the state itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985)). The State should not be able to enjoy the benefits of consolidation, only to disavow it when it becomes inconvenient. Moreover, according to FAST, the DTMB has been intimately involved with searches and production of the documents concerning this subpoena already. Its attempt to erect artificial barriers to compliance with the Court's subpoena is not well taken. Convincing FAST to serve a "courtesy subpoena" specifically directed to DTMB, so as to reset the clock for filing objections, does not change that. FAST's November 29, 2018 subpoena, directed to the State of Michigan, was served upon an assistant attorney general involved in this litigation and was sufficient to notify the appropriate state agencies of their obligation to respond.

It appears that there are thousands of documents in the UIA's possession that it has not turned over despite the significant lapse in time since the subpoena was served, and it has not accounted for any of them in a privilege log. FAST is entitled to its discovery, and the State will not be permitted to foot-drag any longer and delay this litigation.

Accordingly, for the reasons stated here and on the record, it is **ORDERED** that the motion to compel production of the documents in compliance with the November 29, 2018 subpoena (ECF No. 212) is **GRANTED.**

It is further **ORDERED** that non-privileged emails must be produced on or before **September 19, 2019** in the mode of production identified by defendant FAST.

It is further **ORDERED** that all documents responsive to the subpoena subject to privilege review must also be produced on or before **September 19, 2019.** Privilege review may be conducted, but if it is not completed, the production will be subject to the protective order and its claw-back provisions.

It is further **ORDERED** that the defendants may conduct a deposition under Federal Rule of Civil Procedure 36(b) of a technology representative of the State focusing on the issue of deleted mailboxes, how, why, and when they were deleted, and whether there is any basis to conclude that there is technology available to recover the deleted material.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: August 30, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on August 30, 2019.

s/ Karri Sandusky  
KARRI SANDUSKY