# Exhibit 3

**Exhibit 3: Summary of Subset of Evidence of EFDS functionality.**

1) **8/8/2012 SAS's RFP ("holistically assess risk" "produce a single risk score" "rank[] . . . so that State investigators can maximize their time, energy, and ROI") (SAS001444)**

**SAS' Fraud Framework Solution**

The SAS Fraud Framework solution offers the State advanced analytical techniques including rules and anomaly detection, predictive modeling, text mining, and social network analysis to holistically assess risk. To further assist the State in detecting fraud, waste, and abuse, SAS combines these techniques to produce a single risk score for each entity and then ranks the entities so that State investigators can maximize their time, energy, and ROI.

2) **12/12/12 SAS's Contract with DTMB ("analyzes data patterns"; interfaces with MIDAS workflow functionality) (Dkt 61-2 at 1566)**

### 1.100   Scope of Work and Deliverables

**1.101   IN SCOPE**
This contract is for the installation and configuration of a COTS software data analytics product which analyzes data for patterns that might reveal an organized attempt to defraud the Michigan Unemployment Insurance Agency (UIA) and the DHS Food Assistance Program (FAP). The State requires a data analytics product which allows staff to query an aggregate dataset populated from multiple disparate agency data sources stored in the DTMB Data Warehouse to conduct real-time ad hoc analysis. The tools must utilize techniques that allow information to be filtered and sorted in varying levels of detail. The technology must allow end-users to conduct analysis without programming and with no advanced knowledge of the underlying data sources and structures.

As this is a Statewide Contract, it is anticipated that additional State agencies and program areas (as well as MiDEAL participants) may utilize the fraud detection software and services in the future. This

**(Dkt. 61-2 at 1616)**

| | | |
|---|---|---|
| UI | 6-49 | The system must interface with the CAMS system for Medium and Low Risk UI cases. |
| UI | 6-50 | The system must interface with the MiDAS workflow functionality to assign potential UI fraud cases to the correct queue based on priority and scoring. |
| UI | 6-51 | The system must interface with MiDAS workflow functionality to update the analysis scenario results based on the outcome of a UI fraud investigation. |
| PA | 6-52 | The system must interface with the FFF system for recipient PA fraud cases |











## 5) **Moffet Massey's Response to SAS's RFAs:**

| | | | | |
|---|---|---|---|---|
| Moffett-Massey | SAS First RFA's | 4 | Admit that the EFDS software conformed to SAS's contract with the State, including its functional requirements. | Defendant Moffett-Massey neither admits nor denies this request as she lacks personal knowledge and the technical background to determine if the EFDS software properly conformed to the contract specifications including the functional requirements. Moffett-Massey was not involved in negotiating the SAS contract and does not possess the knowledge to determine what functionality was agreed to. Moffett-Massey admits that based on her limited knowledge, the EFDS software was to interface with systems of other state departments and recognize leads of potential fraud. Those leads were then turned over to Unemployment Insurance Agency staff to determine if they were viable and warranted further investigation. But, Moffett-Massey has no knowledge whether that was the extent of the software's functional requirements. Based upon her reasonable inquiry, Moffett-Massey would direct SAS to the Unemployment Insurance Agency's technical team that worked with the EFDS software. |
| Moffett-Massey | SAS First RFA's | 8 | Admit that the State did not use the EFDS software to adjudicate fraud, terminate benefits, garnish wages, or seize tax refunds from any Plaintiff. | Based on her limited knowledge of the EFDS software, Defendant Moffett-Massey admits this request. |
| Moffett-Massey | SAS First RFA's | 9 | Admit that during the relevant time period, the State used MiDAS to automate certain tasks in the Agency's administration of unemployment benefits, including:<br><br>(a) communication with claimants;<br><br>(b) finding of facts;<br><br>(c) determinations of misrepresentation or fraud; | Defendant Moffett-Massey neither admits nor denies this request in its entirety. Based upon a reasonable inquiry Moffett-Massey responds to each subpart as follows:<br><br>(a) Deny that all communication with claimants was automated. Admit that depending on the issue involved and circumstances, MiDAS was the source of processing most communications sent to a claimant; however, MiDAS did not and does not make calls to the claimants.<br><br>(b)Moffett-Massey does not know what is meant by "findings of fact." Assuming SAS is referring to factfinding documents submitted to |

| | | | |
|---|---|---|---|
| | | (d) assessment of restitution and penalties;<br><br>(e) denial or termination of unemployment benefits; and<br><br>(f) collection of restitution and penalties. | a claimant to obtain information, Moffett-Massey denies that all factfinding was automated. Admit that once an issue was opened, certain factfinding inquiries were generated and mailed out of the MiDAS system. However, in some cases, supplemental factfinding was individualized and prepared by Unemployment Insurance Agency staff to fit the specific circumstance involved. MiDAS would then generate and print the documents.<br><br>(c) Deny that all determinations of misrepresentation or fraud were automated. Admit that determinations of misrepresentation or fraud were MiDAS generated after a crossmatch revealed quarterly wages and the claimant failed to respond to factfinding<br><br>(and a 48-hour call when made) or both the employer and claimant failed to respond to the factfinding inquiry. In all other instances, determinations of misrepresentation or fraud were made by Unemployment Insurance Agency staff with the MiDAS system generating and printing the final determination/redetermination to be sent to the claimant.<br><br>(d)Deny that the assessment of restitution and penalties was automated. Admit that after Unemployment Insurance Agency staff calculated the time period involved, MiDAS performed the math and then generated, printed, and mailed out the list of overpayments and penalties due and owing.<br><br>(e) Neither admit nor deny in the manner stated. If the question refers to a denial of the claim for benefits because the claimant has insufficient wages or has filed two claims in the same benefit year, then Moffett-Massey admits that a claim denial letter was generated and processed by the MiDAS system. But in other instances, Unemployment Insurance Agency staff may be involved before the claim for benefits is denied. Also, if "terminations of unemployment benefits" refers to a finding of |

| | | | | |
|---|---|---|---|---|
| | | | | ineligibility or disqualification, then depending on the issue, certain aspects of that process was generated by MiDAS, such as the initial factfinding inquiry and the issuance fraud determinations or redeterminations where a crossmatch resulted in wages and the claimant failed to respond to a factfinding request.<br><br>(f) Admit that the entire collection process is generated by MiDAS provided that the collection meets certain criteria set out by the Unemployment Insurance Agency, including a threshold dollar amount. If the collection fails to meet the necessary criteria, then Moffett-Massey denies that the process is MiDAS generated because staff may be involved to manually request certain collection action. |
| Moffett-Massey | SAS First RFA's | 10 | Admit that the State has not used the EFDS software to communicate with unemployment insurance claimants. | Based on her limited knowledge of the EFDS software, Defendant Moffett-Massey admits this request. |
| Moffett-Massey | SAS First RFA's | 12 | Admit that the State has not used the EFDS software to adjudicate misrepresentation or fraud in connection with claims for unemployment insurance benefits. | Based on her limited knowledge of the EFDS software, Defendant Moffett-Massey admits that the software was not used to adjudicate misrepresentation or fraud. However, an EFDS lead may have been a source of information that was used in the intentional misrepresentation adjudication process. |
| Moffett-Massey | SAS First RFA's | 14 | Admit that the State has not used the EFDS software to deny or terminate unemployment benefits in connection with claims for unemployment insurance benefits. | Defendant Moffett-Massey neither admits nor denies this request in the manner and form presented. Moffett-Massey admits based on her limited knowledge, that the EFDS software was not used to outright deny a claim for benefits. However, based on her limited knowledge of the EFDS software, if EFDS provided a lead that resulted in an investigation and a finding of ineligibility or disqualification, then such action could result in a termination of unemployment benefits if the claimant was still collecting benefits. |

| | | | | |
|---|---|---|---|---|
| Moffett-Massey | SAS First RFA's | 15 | Admit that the State has not used the EFDS software to collect restitution or penalties in connection with claims for unemployment insurance benefits. | Based on her limited knowledge of the EFDS software, Defendant Moffett-Massey admits this request. |
| Moffett-Massey | SAS First RFA's | 16 | Admit that the State has not used the EFDS software to intercept federal or state tax refunds of unemployment claimants. | Based on her limited knowledge of the EFDS software, Defendant Moffett-Massey admits this request. |

## 6) Blundell's Response to SAS's RFAs:

| | | | | |
|---|---|---|---|---|
| Blundell | SAS First RFA's | 6 | Admit that the State used the EFDS software to flag instances of potential fraud for investigation by the Agency. | Defendant Blundell neither admits nor denies that the State used the EFDS software to "flag" instances of potential fraud. Based upon **Defendant Blundell's understanding, if EFDS discovered a crossmatch, which is a match between a claimant receiving benefits and a report that the claimant had wages during the same time period, it would create a nonmonetary case for investigation so the Agency can determine whether a claimant was eligible for benefits and whether they engaged in fraud.** Defendant Blundell is unaware of EFDS's involvement with any fraud adjudication but admits she has not seen EFDS create a fraud case. |
| Blundell | SAS First RFA's | 8 | Admit that the State did not use the EFDS software to adjudicate fraud, terminate benefits, garnish wages, or seize tax refunds from any Plaintiff. | **Defendant Blundell admits that the EFDS software did not adjudicate fraud, terminate benefits, or garnish wages regarding Plaintiffs.** Defendant Blundell neither admits nor denies whether the EFDS software was used to seize Plaintiffs' tax refunds due to lack of knowledge and directs SAS to the response set forth by Defendant Moffett-Massey. |
| Blundell | SAS First RFA's | 9 | Admit that during the relevant time period, the State used MiDAS to automate certain tasks in the Agency's administration of unemployment benefits, including: (a) communication with claimants; | Defendant Blundell neither admits nor denies this request in its entirety. Further, Defendant Blundell objects to the use of the word automated as it is vague and overlybroad. However, without waiving said objection and in the spirit of discovery, following reasonable inquiry Blundell responds to each subpart as follows: |

| | | | | |
|---|---|---|---|---|
| | | | (b) finding of facts;<br>(c) determinations of misrepresentation or fraud;<br>(d) assessment of restitution and penalties;<br>(e) denial or termination of unemployment benefits; and<br>(f) collection of restitution and penalties. | (a) **Defendant Blundell denies that all communication was automated. Any phone communication with a claimant is conducted by staff. Further, while MiDAS is the source for processing most communication to a claimant, such as fact-finding forms, letters, determinations and redeterminations, it is based upon on specific activity occurring on the file or at the direction of staff.**<br>(b) Defendant Blundell does not know what particular document or communication is being referred to as "findings of fact." Assuming Plaintiffs are referring to fact-finding forms which contain a series of questions on an issue sent to the claimants and employers as part of an investigation, Defendant Blundell admits the MiDAS system can generate and mail the initial, basic fact-finding forms. However, any supplemental fact-finding would be individualized and prepared by staff to fit the specific circumstance involved. **Even if prepared by staff, MiDAS would be used to generate and print the documentation.**<br>(c) Defendant Blundell denies that all determinations of misrepresentation or fraud were automated. **Defendant Blundell admits that determinations of misrepresentation or fraud were automated in some limited circumstances**. However, in all other instances, determinations of misrepresentation or fraud were made by Unemployment Insurance Agency staff with the MiDAS system generating the final determination/ redetermination to be sent to the claimant.<br>(d) Defendant Blundell denies that the assessment of restitution and penalties was automated. Defendant Blundell admits that after Unemployment Insurance Agency staff calculated the time period involved, MiDAS performed the math and generated and mailed out the list of overpayments and penalties due and owing.<br>(e) Defendant Blundell neither admits nor denies in the manner stated. Blundell admits that if a claim is denied after application because the claimant has insufficient wages or has filed two claims in the same benefit year, MiDAS would generate and mail a claim denial |

|  |  |  |  | letter. If a claimant is already receiving benefits, to terminate receipt the Agency would have to issue a determination or redetermination regarding a claimant's ineligibility or disqualification subsequent to investigation. Please refer to answer to subparagraphs (b) and (c).<br>(f) Defendant Blundell neither admits nor denies this subparagraph due to lack of knowledge. Upon reasonable inquiry, Defendant Blundell refers SAS to the response set forth by Defendant Moffett-Massey. |
|---|---|---|---|---|
| Blundell | SAS First RFA's | 12 | Admit that the State has not used the EFDS software to adjudicate misrepresentation or fraud in connection with claims for unemployment insurance benefits. | Defendant Blundell admits that the EFDS software did not adjudicate misrepresentation or fraud. However, EFDS may have been an information source that was used in the Agency's adjudication of fraud. |





8) **John Henige Deposition**

- SAS's programmers "delivered" and had control over the EFDS code. (Henige 23:21-24:15).  EFDS did not "adjudicate fraud."  (Tierney 128:12-21).

- The Agency (perhaps with CSG) developed the requirements for the EFDS project, which were included in a request for proposal for work that was awarded to SAS.   (Henige 12:1-18).