UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN
MENDYK, KHADIJA COLE, HYON
PAK, and MICHELLE DAVISON,
Individually and on behalf of
Similarly situated persons,                                      Case No. 2:17-cv-10657

      Plaintiffs,                                          Hon David M. Lawson
                                           Hon. Mag. R. Steven Whalen

v.

SAS INSTITUTE INC.,
FAST ENTERPRISES LLC, CSG,
GOVERNMENT SOLUTIONS, INC.,
STEPHEN GESKEY, in his individual capacity,
SHEMIN BLUNDELL, in her individual capacity,
DORIS MITCHELL, in her individual capacity,
DEBRA SINGLETON, in her individual capacity,
JULIE A. McMURTRY, in her individual capacity;
and SHARON MOFFET-MASSEY, in her individual
capacity,
Jointly and severally,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT SAS INSTITUTE INC.'S RENEWED MOTION TO DEEM ADMITTED SAS'S FIRST REQUESTS FOR ADMISSION TO PLAINTIFFS

NOW COME Plaintiffs, by and through counsel, and for their *Response to Defendant SAS Institute Inc.'s Renewed Motion to Deem Admitted SAS's First Request for Admission to Plaintiffs*, submits the following:

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................ 4

II. BACKGROUND FACTS.................................................................. 5

   A.  Defendant SAS's Involvement.................................................... 6

   B.     Evidence on Which Plaintiffs Rely in Support of Their Claims Against SAS and Discovery Responses to SAS ................................................. 7

III. PLAINTIFFS HAVE NO DUTY TO SUPPLEMENT DISCOVERY RESPONSES PURSUANT TO FED. R. CIV. P. 26(e)........................................ 10

IV. DEFENDANT SAS SEEKS TO HAVE PLAINTIFFS CHANGE THEIR RESPONSES TO REQUESTS TO ADMIT TO FIT DEFENDANT'S THEORY OF DEFENSE.................................................................................. 11

   A.  There is No Dispute that Defendant SAS Implemented a Portion of the Automated Fraud Detection System, Which Was Responsible In Part for Falsely Determining Fraud, Violating Plaintiffs' Right to Due Process ........................ 12

   B.  Plaintiffs Continue to Conduct Discovery with Regard to the Scope of the EFDS System and the Extent of SAS's Involvement ......................................... 13

V.  PLAINTIFFS PROPERLY OBJECTED TO REQUESTS WHICH REQUIRED OBJECTIONS ................................................................... 14

VI. PLAINTIFFS ARE ENTITLED TO COSTS FOR DEFENDING DEFENDANT SAS'S FRIVOLOUS MOTION................................................ 14

## STATEMENT OF QUESTIONS PRESENTED

Should Defendant SAS's Renewed Motion to Deem Admitted SAS's First Request for Admission to Plaintiffs be Denied When:

    A. Plaintiffs have no duty to change or supplement their responses pursuant to Fed. R. Civ. P. 26(e); and

    B. Defendant SAS merely seeks to have this Court engage in fact-finding prior to the close of discovery and force Plaintiffs to change their responses to requests for admission to fit Defendant's theory of the case.

Plaintiffs Answer: Yes.

This Court Should Answer: Yes.

## <u>INDEX OF AUTHORITIES</u>

**Rules**

Fed. R. Civ. P. 26…………………………………………………..……......10, 11, 15

Fed. R. Civ. P. 36…………………………………………………….......12, 14

Fed. R. Civ. P. 37................................................................................................4, 15

# I.    INTRODUCTION

Defendant SAS, Inc. brought their Renewed Motion to Deem Admitted SAS's First Requests for Admission to Plaintiffs after filing an earlier version, in which it made substantially the exact same arguments, on October 22, 2019. (Doc. 222).  After Plaintiffs responded to that motion pointing out the frivolity of SAS's motion (Doc. 225), Defendant SAS, Defendant SAS voluntarily withdrew its initial motion.  In both the earlier version of Defendant SAS's motion to deem Plaintiffs' response to its requests for admission admitted, as well as the instant motion, Defendant SAS asks this Court to conduct fact-finding of material, contested facts in favor of Defendants and then force Plaintiffs to admit these facts as true.  Despite the fact that these facts are in dispute, Defendant SAS asks the Court to compel Plaintiffs to admit SAS's contested version of reality.  This unprecedented and legally baseless request should subject SAS to sanctions under Fed. R. Civ. P. 37.

When Defendant SAS previously raised these arguments verbally before Judge Lawson, which it did numerous times, the Court instructed SAS to file a Rule 56 motion to address these issues.  Instead, SAS, now for the second time, attempts to couch what is in essence a Rule 56 motion as a motion to deem admitted its requests for admission, and to have Plaintiffs change their responses to requests for admission to admit SAS's theory of the case.  Defendant asks the Court, essentially, to conduct fact-finding of material disputed facts, find in favor of the Defendants,

and then force Plaintiffs to admit the Court's resolution of the disputed material facts, thus in essence waiving any right to appeal the fact finding.  SAS's de facto Rule 56 motion is a clear attempt to circumvent Local Rule 7.1(b)(2), which provides that "a party must obtain leave of court to file more than one motion for summary judgment."  (It already has one "Fed. R. Civ. P.  12(b)(1) motion to dismiss" pending, which is based on matters outside the pleadings, and will presumably be trying to file another Rule 56 motion, to harass Plaintiffs).  Deeming Plaintiffs' Responses to Defendant SAS's Request for Admission as admitted would, in essence, have the effect of granting summary judgment in favor of SAS, and waiving Plaintiffs' right to appeal the admitted matters.  There is no such procedural mechanism available and SAS's request is clearly frivolous.

## II.    BACKGROUND FACTS

Throughout the relevant time period alleged in Plaintiffs' complaint, the Michigan Unemployment Insurance Agency administered unemployment insurance through an automated system, the Michigan Integrated Data Automated System ("MiDAS") and related automated fraud detection software, which was designed, implemented, and/or maintained by Defendants including SAS Institute Inc. (SAS), Fast Enterprises LLC (FAST) and CSG Government Solutions, Inc. (CSG).

Defendants' automated fraud detection system deprived Plaintiffs, and thousands of Michigan's unemployment insurance claimants like them, of

fundamental rights under federal law. R. 43, ID 749. The automated fraud detection system made automated determinations of unemployment insurance fraud with no sufficient evidentiary basis, without weighing the evidence, without providing claimants reasonable notice or an opportunity for a hearing, and without any, or with little, human involvement.

The system was so defectively designed, implemented and maintained that, according to an audit of 22,000 fraud determinations, it had a margin of error of over 93% when making a positive fraud determinations with no human involvement. It had a margin of error of approximately 50% when making a positive fraud determination with human involvement. R. 43, ID 749.  Defendants caused serious injury, making false fraud allegations against over forty thousand (40,000) citizens, many of whom went bankrupt and became homeless as a result.

## A.    Defendant SAS's Involvement

On December 12, 2012, SAS entered a contract with the State of Michigan to design, configure, install, and implement an automated fraud detection system for the state's unemployment insurance agency.  The goal of the fraud detection system was to "reduce the percentage of UI benefits overpaid due to [BYE] fraud" and "reduce the number and amount of UI overpayments."[1]  *See* SAS Contract, p.9. The

---

[1] "Overpayments" is how the terminology used by the UIA to categorize benefit payments resulting from claimants' fraud.

State of Michigan labeled SAS's scope of the projected as the "Enterprise Fraud Detection Software Project" and this work was part of an effort by the UIA to automate much of the agency's work.

Defendant SAS's work is believed to have begun in December, 2012 and continued until December 2017. R. 43, ID 753.   The Defendant SAS's contract demonstrates in detail the responsibility of SAS in the unconstitutional fraud adjudications. See R. 61-2, ID 1615-16.   Specifically, the contract requires the Defendant SAS to develop a fraud priority/scoring framework; develop fraud score aggregation; must execute ad hoc fraud analysis in seconds or minutes, not hours; must make "batch" fraud determinations; must interface with agency systems based on a fraud priority/scoring framework, must interface with MiDAS.  R. 61-2, ¶¶6-50.

Plaintiffs have adequately pled that Defendant SAS's fraud detection software was constitutionally defective, depriving Plaintiffs of the most basic of due process guarantees. See R. 43, ID 749-53, ¶¶ 4-9, and ID 763-69, ¶¶ 48-89.  Defendant SAS previously brought a motion to dismiss based, in substantial part, on the same allegations that Defendant SAS brings in the present motion, as well as those brought in the earlier version of this motion. (Doc. 222).  Defendant SAS's motion to dismiss was denied on March 2, 2018.  (Doc. 124).

### B.    Evidence on Which Plaintiffs Rely in Support of Their Claims Against SAS and Discovery Responses to SAS

In addition to the Defendant SAS contract with the State, Defendant SAS's press release; the sworn testimony of Unemployment Insurance Agency Tech and Data Control manager, John Henige; and other documents provide support for Plaintiffs claims against Defendant SAS and their answers to discovery.

In Defendant SAS's own press release, dated March 4, 2013, it publicly announced its contract with the State of Michigan to design the Electronic Fraud Detection System.  **(Exhibit 1 – 2013 SAS Press Release).**

During the deposition of Unemployment Insurance Agency Tech and Data Control manager John Henige, he stated that SAS's work on the automated fraud detection project began in 2012 **(Exhibit 2 - John Henige Deposition 11:18-25).** Counsel for Defendant SAS, attended that deposition, made objections, and did not seek to clarify or rebut the testimony of Mr. Henige.  Plaintiffs responded to Defendant's requests to admit, consistent with the Defendant's contract and Mr. Henige's testimony, that Defendant SAS's involvement began prior to June 2015.

Likewise, documents produced by the State of Michigan in response to a subpoena in this case note as follows:

- "A new Fraud Project with SAS has been planned." From MiDAS Investigations, Implementation Specification, 1/18/2013.
- In December 2012, The State Administration Board … awarded a contract to SAS." "The implementation of the UIA fraud detection components is scheduled to start in late October 2013.

The project is on schedule at this time." UIA Integrated System Quarterly Reports, October, 2013.

- The EFDS project is "ongoing" and that "SAS wants to be able to grab data from MiDAS." Powerpoint from MiDAS Production Support meeting on 1/28/2014.

- "[A]pproval of contract funding by the State Administrative Board was received in December, 2012. SAS, Inc. was selected as the vendor to provide fraud analytics and alerts for this project." "The implementation of the UIA fraud detection components started in December 2013." UIA Integrated System Quarterly Reports, January, 2014.

- "SAS, Inc. … selected as the vendor to provide fraud analytics and alters for the project." "The implementation of the Unemployment Insurance agency (UIA) fraud detection components started in December 2013, with the project team working on data requirements and staging. Implementation is scheduled for the end of 2014." UIA Integrated System Quarterly Reports, July, 2014.

- "SAS, Inc. was then selected as the vendor to provide fraud analytics and alerts for the project." "The implementation of the Unemployment Insurance Agency (UIA) fraud detection components started in December, 2013, with the project team currently working on data requirements and staging. In the past quarter, a complete review with SAS, Inc. on data functionality to support the contract requirements was completed. In addition, SAS completed exploratory data analysis on both UI tax and benefit claims data and began developing the GUI interface to be utilized by the state staff. UIA Integrated System Quarterly Reports, January, 2015. (Doc. 225-4).

Finally, Plaintiffs gave Defendant Moffett-Massey's responses to her request for admissions significant weight in responding to Defendant SAS's requests for admission. In her responses, Defendant Moffett-Massey suggested that Defendant SAS is liable, at least in part, for the auto adjudication of which Plaintiffs complain. She admits that the EFDS software interfaced with other state agency systems and

provided leads for potential claimant fraud (**Exhibit 3, Moffett-Massey RFAs, #6**). Further, she could not admit or deny that the EFDS software release was moved from the test to production on June 11, 2015, as she had no first-hand knowledge. (Exhibit 3, #5).

In light of the evidence available, Plaintiffs contend they have no duty to change their responses or supplement.  Since those answers were provided, the parties have engaged in discovery during which facts have surfaced that place material facts at issue in this case.

## III.  PLAINTIFFS HAVE NO DUTY TO SUPPLEMENT DISCOVERY RESPONSES PURSUANT TO FED. R. CIV. P. 26(e)

Defendant SAS contends that Plaintiffs must supplement their discovery responses based on its counsel's representations that the evidence available absolves SAS of liability.  However, this contention is based on information which Defendant SAS allegedly possesses.  Pursuant to Fed. R. Civ. P. 26(e)(1)(A),

> A party who has […] responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response […]if the party learns that in some material respect the disclosure or response is incomplete or incorrect, ***and*** if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Plaintiffs are under no duty to supplement their responses based on information in possession of Defendant SAS.  Not only do Plaintiffs rely on evidence which

supports their responses to Defendant SAS's requests for admission, but there is only a duty to supplement their requests for admission if the other party seeking admission does not know of the information and has not been otherwise made known of the information during discovery.

In this case, Defendant SAS possesses the information upon which it bases its position that Plaintiffs should change their responses. It claims that the information became known during discovery. By definition, Plaintiffs are under no duty to supplement their answers based on this information. Therefore, Plaintiffs have no duty to supplement or change their responses because the party seeking a change in answers already is privy to the information.

IV.   **DEFENDANT SAS SEEKS TO HAVE PLAINTIFFS CHANGE THEIR RESPONSES TO REQUESTS TO ADMIT TO FIT DEFENDANT'S THEORY OF DEFENSE**

Defendant SAS seeks to have Plaintiffs change their responses to requests for admission to agree that SAS is not responsible for any of Plaintiffs' damages to fit Defendant SAS's theory of defense. Plaintiffs have no such duty under the FRCP, or any other law. SAS's request is also counter to the competing evidence that has been produced by SAS and other parties in this case.

In addition, the parties have not yet completed discovery, which is scheduled to close on June 12, 2020. Written discovery is not yet complete and thus far, Plaintiffs have not completed taking depositions of State and SAS employee

witnesses.  Even suggesting Plaintiffs amend their responses to please Defendants, with no Court rule imposing a duty on Plaintiffs to do so, where there are competing factual scenarios, is ludicrous.

### V.   PLAINTIFFS HAVE PROVIDED SUFFICIENT RESPONSES TO DEFENDANT SAS'S REQUEST FOR ADMISSIONS PURSUANT TO THE COURT RULES

Federal Rule of Civil Procedure, Rule 36, provides in relevant part:

> (4) *Answer.* If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

In each of their answers to Defendant SAS's Request for Admission, Plaintiffs admit, deny, or allege that they lack sufficient information to admit or deny, consistent with that which is required pursuant to Fed. R. Civ. P. 36(a)(4).  Defendant SAS only seeks to have Plaintiffs change their responses to these requests to fit the narrative that Defendant itself has contrived.

### A.   There is No Dispute that Defendant SAS Implemented a Portion of the Automated Fraud Detection System, Which Was Responsible In Part for Falsely Determining Fraud, Violating Plaintiffs' Right to Due Process

It is undisputed that Defendant SAS designed the Electronic Fraud Detection Software ("EFDS").  The crux of Plaintiffs' due process violation allegations falls on problems with the fact that claimants were falsely determined to have committed fraud, based in part on information produced by the very software Defendant SAS created and implemented.  Defendants' involvement, the extent to which is still subject to discovery, could not be disputed.  Defendant SAS was unsuccessful in its motion to dismiss on these issues (Doc. 61, Doc. 124).

Because discovery is still ongoing, Plaintiffs have not yet learned the specific role Defendant SAS played in implementing the EFDS part of the MiDAS system and answered Defendant SAS's Request for Admissions as such.  Plaintiffs did not admit that Defendant SAS did not "design, create, implement, configure, or control MiDAS" because it is well-known that Defendant SAS created the EFDS software, a portion of the MiDAS system.  With regard to the extent of Defendant SAS's further involvement with the MiDAS system, Plaintiffs appropriately responded that discovery is ongoing because discovery does not close for another five weeks and Plaintiffs anticipate scheduling depositions to determine SAS's further involvement.

**B.    Plaintiffs Continue to Conduct Discovery with Regard to the Scope of the EFDS System and the Extent of SAS's Involvement**

With regard to Defendant SAS's Requests to Admit numbered 8-26 and 29-30, Defendant SAS contends that Plaintiffs response, which neither admitted or denied the requests, and reasoned that Plaintiffs lacked sufficient knowledge to do

13

so because "the scope of the EFDS system and its role in determining fraud is the subject of discovery," is not an acceptable answer.  However, as explained above, pursuant to Fed. R. Civ. P. 36(a)(4), Plaintiffs are clearly permitted under the Court Rules to respond in such a manner.  The discovery that has been produced to Plaintiffs, including Defendant SAS's own contract with the State of Michigan, confirms SAS's involvement in the MiDAS system through its EFDS software. The extent of its involvement however, remains subject to discovery.  Defendant SAS presents conflicting evidence.  Conflicting evidence is not a reason to suggest Plaintiffs forfeit their well-founded claims and responses to requests for admission.

## V.  PLAINTIFFS PROPERLY OBJECTED TO REQUESTS WHICH REQUIRED OBJECTIONS

Pursuant to Fed. R. Civ. P. 36(a)(5), parties are permitted to object to requests for admission:

> (5) *Objections.* The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

As discussed further above, Plaintiffs objected to Defendant's vague use of undefined terms, and state that Plaintiffs lack the requisite information to fully respond because discovery continues to proceed.  Defendant SAS cannot compel information from Plaintiffs which Defendants possess.

## VI.  PLAINTIFFS ARE ENTITLED TO COSTS FOR DEFENDING DEFENDANT SAS'S FRIVOLOUS MOTION

14

Pursuant to Fed. R. Civ. P. 37(a)(5)(B), Plaintiffs are entitled to costs and attorney's fees for defending Defendant SAS's motion, which is not justified. Fed. R. Civ. P. 37(a)(5)(B) provides:

> (B) *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) **and must**, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees […].

Defendant SAS's frivolous motion should be denied, as have all other motions and arguments brought by Defendant SAS in a similar vein. Plaintiffs provided full responses to Defendants' requests for admission in light of the evidence produced at the time of responding to those requests. Further, under Fed. R. Civ. P. 26(e), Plaintiffs have no duty to supplement under these circumstances, as Defendant SAS is in possession of the information it suggests Plaintiff supplement or change their responses to include. This is in direct conflict with what is required pursuant to Rule 26(e).

Plaintiffs should be awarded costs and attorney's fees for having to re-brief and re-litigate Defendant SAS's First Motion Deem Admitted Plaintiffs' Response, as well as SAS's prior Motion to Dismiss and Rule 11 Motions, both of which were already denied by this Court months ago.

Plaintiffs further request that Defendant SAS be sanctioned, which will be addressed in a separate motion, to preclude Defendant SAS from withdrawing its motion again, preventing the Court from hearing a motion for sanctions.

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendant SAS's Motion to Compel and award Plaintiffs costs and Attorney fees pursuant to Fed. R. Civ. P. 37(a)(5)(B).

Respectfully submitted,

Date:   May 5, 2020

/s/ Kevin S. Ernst
KEVIN S. ERNST (P 44223)
ERNST CHARARA & LOVELL, PLC
645 Griswold, Suite 4100
Detroit, MI 48226
(313) 965-5555 / (313) 965-5556
kevin@ecllawfirm.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I presented the foregoing paper to this Court which will send notification of such filing to the above listed attorneys of record.

/s/ Hannah R. Fielstra