# EXHIBIT N

## DETECTING INTENTIONAL MISREPRESENTATION

**FYI:**

*There are various circumstances that determine intentional misrepresentation.*

*Intentional misrepresentation is an act of willful misrepresentation or nondisclosure of a material fact by a claimant or employer for the purpose of obtaining benefits to which the claimant is not entitled.*

**FYI:**

*The Agency must have documentation to show a reasonable attempt was made to secure the claimant's or employer's statement.*

The information in this section will provide assistance to Unemployment Insurance Agency (UIA) staff in detecting intentional misrepresentation/fraud.

There are various methods used to detect fraud. The Units within the Agency that specifically deal with fraud are Benefit Payment Control (BPC) and the Fraud Investigation Unit (FIU). Customer Service and other support units also conduct fact-finding and make decisions on intentional misrepresentation/fraud issues.

With the exception of the FIU, all fact-finding for the Agency, including the fact-finding for BPC in the New Hire Crossmatch and Wage/Benefit Crossmatch Programs, is conducted using Form UIA 1713, *Request for Information Relative to Possible Ineligibility or Disqualification*.

FIU initiates fraud investigations primarily from referrals, tips and leads. The Unit uses the following Forms exclusively:

* Form UIA 1203, *Investigation and Fraud Report* which is generated in MiDAS, and
* Form UIA 1315, *Request for Wage Information,* which is not generated in MiDAS

When a claim has been improperly paid it is imperative to determine the following in the fact-finding process:

1. **Material Facts** – Information provided by the claimant, employer or third party that relates to the overpayment and the issue of misrepresentation.

2. **Knowledge** – The claimant's experience with the UI program through the following:
    * Form UIA 1901, *Unemployment Benefits in Michigan - A Handbook for Unemployed Workers* (mailed or online)
    * Information Orientations (e.g. TRA, Rapid Response)
    * Prior Claim(s)
    * Inquiries or telephone calls and
    * Help text when filing online
    * Number of weeks claimed

# DETECTING INTENTIONAL MISREPRESENTATION (continued)

3. **Willful** – An intentional, voluntary, or deliberate act by the claimant.

The attached charts serve as a *guide* to identify those factual circumstances that might suggest intentional misrepresentation. The Agency should issue determinations of intentional misrepresentation only where there is competent, material, and substantial evidence such that a reasonable mind would find intentional misrepresentation.

**Example:**  To determine if the legal standard is met, ask yourself, "Would a reasonable person in the claimant's position, who has the same understanding as the claimant, have done the same thing under the same circumstances?" Or, does it appear in "playing out" in your mind the claimant's actions or inactions, that there really was a substantial, reliable, and credible basis to believe that the claimant actually intended to mislead the Agency so that the claimant could obtain benefits to which he/she was not entitled?

Once the fact-finding process has been completed as defined in ETA Handbook 301, to obtain the claimant's statement has been documented by the Agency, the examiner must determine the claimant's intentions based on the available information.  The Agency does not have to receive a response from the claimant in order to determine intentional misrepresentation/fraud; however, the lack of a response does not automatically mean that there is intentional misrepresentation/fraud.  It is the claimant's responsibility to provide accurate information to the Agency; therefore, make sure documentation was mailed to the address of record.  To do this, verify that the address on Form UIA 1713 for the misrepresentation case matches the current address on the Customer springboard in MiDAS.

To establish eligibility for benefits for any week or weeks, a claimant must certify that they met certain requirements during the period claimed.  If the claimant does not disclose earnings when certifying for benefits and cannot provide a reasonable explanation for failing to report the earnings, a determination of intentional misrepresentation/fraud must be issued.

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

**FYI:**

*Multiple weeks of benefits do not have to be paid to a claimant to determine that the claimant's actions were intentional.*

*If a claimant admits that they intentionally collected benefits that they were not entitled to, and only 1 week of benefits was involved, the examiner **must** conclude that the claimant's actions were intentional. Therefore, a determination of benefit overpayment due to intentional misrepresentation must be issued.*

**REFERENCE:**

*If overpayment involves special payments (e.g. vacation pay, severance pay, etc.), refer to Manual Section 6576WR, Effect of Special Payments on the Establishment of a Claim.*

**Example 1:  Benefit Year Earnings / Intentional Misrepresentation**

A claimant worked full time for Employer A until being laid off on 11/5/14.  The claimant filed his/her first claim for unemployment benefits on 11/10/14 and was called back to part-time work on 12/28/2014.  The claimant continued collecting unemployment benefits for 4 weeks without reporting any earnings.  Employer A protested the benefit charges and informed the Agency that the claimant was called back to work part-time.

Upon receipt of Employer A's protest, the Agency mailed Form UIA 1713 to the claimant on 1/26/15.  The claimant had 10 days to respond.  The claimant responded on 2/2/15, stating he did not report any earnings at all because he wanted to make sure everything worked out at Employer A.

Factors to consider when making the determination:

    ∗   Did the claimant have a prior remuneration issue? **NO**
    ∗   Does the current issue involve more than one MARVIN contact? **YES**
    ∗   Did the claimant report any earnings? **NO**

**RESULT:**  The claimant's response is found to be **not reasonable.**  Based on the four weeks of benefits claimed with no reported earnings and the claimant's explanation, the finding **must** be intentional misrepresentation in this scenario.

**Example 2:  Benefit Year Earnings / Unintentional**

The claimant worked for Employer B and filed his/her first claim for unemployment benefits on 11/3/14 when his hours of work were reduced.  The claimant collected unemployment benefits until it was discovered on 11/28/14 that the claimant may have been overpaid.

The Agency mailed Form UIA 1713, to the claimant on 12/1/14.  The claimant had 10 days to respond.  The claimant responded on

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

**NOTE:**

*On occasion, a claimant will omit an employer on their claim. Proper fact-finding must be conducted to determine the claimant's intent.*

**NOTE:**

*Intentional misrepresentation is sometimes difficult to determine in terms of the allocation of earnings paid by means of commission when possible overpayment is involved. Unless the period during which services were performed can be determined, remuneration paid by commission is deemed earned in, and allocated to, the week in which it was paid.*

12/8/14 stating he had been reporting his earnings and provided the Agency with a copy of his check stubs. The claimant reported his gross earnings exactly according to the check stubs. However, the claimant had reported his earnings biweekly instead of weekly as required. Further investigation found that the claimant was overpaid on some weeks and under paid on other weeks.

Factors to consider when making the determination:

∗ Did the claimant have a prior remuneration issue? **NO**
∗ Did the issue involve more than one MARVIN contact? **YES**
∗ Did the claimant report any earnings? **YES**

**RESULT:** The claimant's explanation was **reasonable**. There was no prior remuneration issue(s) and the claimant reported gross earnings as verified by the check stub evidence. The claimant's actions are not considered a willful concealment of material information from the Agency and therefore should be determined as unintentional misrepresentation.

## MISREPORTED SEPARATION REASON

There will be cases where the Agency will find that a claimant has misreported their separation reason. In such cases, where UIA staff has already determined that restitution is due, additional fact-finding must also determine the claimant's intent when misreporting the separation. When filing a new or additional claim and a claimant has indicated anything other than a lack of work, MiDAS will automatically create a separation issue and no payment of benefits will be made to the claimant until the separation issue is adjudicated. However, if a claimant is in payment status and initially reported a lack of work when the new or additional claim was filed and it was later discovered that the claimant's separation was something other than lack of work, the following questions will help to establish the claimant's intentions:

∗ Assuming the claimant responded to fact-finding, did the claimant deny fraud/misrepresentation? **YES**
∗ Was the claimant's response unreasonable?

**4/7/2015**

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

**REFERENCE:**

*Refer to the attached Base Period Wages Chart for additional assistance.*

**FYI:**

*The attached Charts are tools to provide assistance in making a determination on a misrepresentation issue.*

**REMEMBER:**

*Fraud can be determined on claims that have not been paid.  Refer to Manual Section 6606(4)WR,* Intentional Misrepresentation – General*, for information on processing determinations of intentional misrepresentation on claims that have not been paid.*

**The following could be considered a reasonable explanation from a claimant for a misreported separation:**

∗   It was not clear to the claimant that they were fired. The employer informed the claimant that they were no longer needed.  Due to the employer's choice of words, the claimant interpreted this to mean that they were laid off for lack of work.

**Example:  Misreported Separation Reason / Intentional**

The claimant filed a new claim on 10/13/14 and reported lack of work from the separating employer.  The claimant collected a total of 2 weeks of benefits.  The employer protested the monetary determination, informing the Agency that the claimant quit due to personal reasons.

Upon receipt of the employer's protest, the Agency mailed Form UIA 1713, to the claimant on 10/28/14.  The claimant had 10 days to respond.  On 11/10/14, the Agency had not received a response from the claimant.

The following factors should be considered in determining the claimant's intentions:

∗   Did the claimant report a lack of work?  **YES**
∗   Was Form UIA 1713 returned?  **NO**

**RESULT:**  The employer timely protested the monetary determination and supplied a statement that the claimant quit for personal reasons.  The claimant did not respond to the fact finding form; therefore, the decision must be based on the best available information.  Based on the lack of response from the claimant, intentional misrepresentation of the reason for separation is found.

## BASE PERIOD WAGES

Base period wages are the wages used to establish the monetary determination for the claimant.   In some instances the employer has not provided the wage information, but the claimant has provided a wage affidavit.  There are cases where the Agency will

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

discover that the claimant provided incorrect wage information on their statement of wages.   When this occurs the Agency must determine the following:

∗   Did the claimant add an employer to their claim?
∗   Did the claimant work for the added employer?
∗   Was the employer added by the claimant a duplicate employer (e.g. doing business as (d/b/a) vs. employer registered with the UIA)?
∗   Did the claimant report they worked for the duplicate and the added employer?
∗   Did the claimant report they worked for an employer who mistakenly reported wages for their social security number?
∗   Was Form UIA 1713 returned?

Fact-finding must be conducted to determine why the claimant added the employer or wages to the claim.  If a reasonable attempt to obtain the claimant's statement has been made, whether by mail, fax, or telephone, and there is no response from the claimant by the deadline, a determination can be issued based on the available information.

**A reasonable explanation regarding base period wages would be:**

∗   The claimant adds a duplicate employer to the claim.  For example, the claimant worked for McDonald's, however the particular location where the claimant worked is registered with the UIA as Swanson Enterprises.  The claimant recognized both employer names unaware that Stanton Enterprises is doing business as McDonald's.

**Example 1:  Base Period Wages / Intentional**

The claimant filed a new claim on 11/3/2014 and reported working for employers A, B and C in the base period.  The claimant collected a total of 4 weeks of unemployment benefits when Employer C protested the charges because an error was made in the quarterly report.  The claimant had never worked there.  Removing the Employer C wages creates a monetary redetermination which results in an overpayment.

*UIA MANUAL, PART V*

| 7900-7999 | **OVERPAYMENT** | 7930(7) |
|---|---|---|

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

The Agency mailed Form UIA 1713 to the claimant on 12/1/14. The claimant had 10 days to respond.  As of 12/12/14, the claimant had not responded.

The following factors should be considered in determining the claimant's intentions:

* Did the claimant report s/he worked for an employer s/he never worked for?  **YES**
* Did the claimant work for the employer?  **NO**
* Was Form UIA 1713 returned?  **NO**

The Agency made a reasonable attempt, which was documented on the case and in FileNET, to contact the claimant for a statement about adding Employer C to the claim.

**RESULT:**  The claimant has not supplied an explanation for adding Employer C to the claim.  The monetary determination was incorrect and the claimant was overpaid as a result.  Based on the employer's statement and the lack of information from the claimant, the claimant's actions are found to be intentional.

**Example 2:  Base Period Wages / Unintentional**

The scenario is the same as example 1, however the claimant responded to Form UIA 1713, stating that Employer C's business name was similar to a previous employer he had worked with in the base period and he got the names mixed up.  Employer C's business name was Johnson Incorporated, but the employer he actually worked for was Johnson Enterprises, Employer B.  Employer C had mistakenly reported wages under the claimant's SSN.

The following factors should be considered in determining the claimant's intentions:

* Did the claimant add an employer to their claim?  **YES**
* Did the claimant work for the added employer?  **NO**
* Was Form UIA 1713 returned?  **YES**
* Was the claimant's explanation reasonable? **YES**

*UIA MANUAL, PART V*

| 7900-7999 | OVERPAYMENT | 7930(8) |
|---|---|---|

**4/7/2015**

## DETECTING INTENTIONAL MISREPRESENTATION (continued)

**RESULT:**  The claimant has given a reasonable explanation for adding Employer C to the claim.  The claimant's actions are found to be not intentional.

It is very important to understand that if a claimant does not respond to the Agency's fact-finding attempts regarding overpayment, it does not mean that the claimant's actions were unintentional.  Nonmonetary determinations must be based on the available information, documentation and the application of procedure.

# Fraud Finding Decision Tree

## Benefit Year Earnings Issue



# Fraud Finding Decision Tree

## Misreported Separation Reason Issue



Fraud Finding Decision Tree
Base Period Wages Issue
Did the claimant add an employer to their claim?
yes
no
Did the claimant work for the added employer?
Did the claimant report they worked for an employer who mistakenly reported wages for their ssn?
yes
no
Was the added employer a duplicate of one who had reported wages?
Find Fraud
yes
no
Find Fraud
Were the claimants self-reported wages more than 40% greater than their actual wages?
yes
no
Did the claimant report they worked for the duplicate and added employer?
Were the claimants self-reported wages more than 40% greater than their actual wages?
yes
no
Find Fraud
Was the 1070 returned?
yes
no
Was the 1070 returned?
Were the claimants self-reported wages more than 40% greater than their actual wages?
yes
no
Find Fraud
Find Unintentional misrepresentation
yes
no
Was the claimant's explanation reasonable?
no
no
yes
Find Fraud
Was the claimant's explanation reasonable?
Find Fraud
Was the 1070 returned?
yes
no
Find Unintentional Misrepresentation
Find Fraud
yes
no
Find Unintentional Misrepresentation
Find Fraud
no
yes
Find Fraud
Was the claimant's explanation reasonable?
yes
no
Find Unintentional Misrepresentation
Find Fraud