UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

                   Plaintiffs,                    Case Number 17-10657

v.                                          Honorable David M. Lawson

SAS INSTITUTE INC., FAST
ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, and SHARON
MOFFET-MASSEY,

                   Defendants.

_____/

## OPINION AND ORDER GRANTING MOTION BY SAS INSTITUTE TO DISMISS FOR WANT OF SUBJECT MATTER JURISDICTION

The five named plaintiffs have commenced this putative class action to recover damages allegedly caused by the State of Michigan's Unemployment Insurance Agency's (UIA) implementation of an automated system to detect and punish individuals who submitted fraudulent unemployment insurance claims. They say that they are victims of the system's many failures: it lacked human oversight, it detected fraud by certain claimants where none existed, it provided little or no notice to the accused claimants, it failed in many instances to allow administrative appeals, and it assessed penalties and forfeitures against individuals who were blameless. Their amended complaint listed twelve counts against the companies and individuals whom they believe contributed to the State's implementation of the flawed fraud-adjudication system. The case has been whittled down through motion practice and an interlocutory appeal, and now only one procedural due process claim remains. The defendants have filed a second round of motions to dismiss, raising for the first time that the Court lacks subject matter jurisdiction over the dispute

because the plaintiffs cannot establish Article III standing.  The plaintiffs apparently agree with the argument as it applies to defendant SAS Institute, as they have not responded to the motion and have filed their own motion to dismiss the case with prejudice against that defendant.  For the reasons that follow, the Court will grant SAS's motion and dismiss the case against it without prejudice for want of subject matter jurisdiction.

I.

The facts of the case are well known to the parties and have been discussed in previous opinions issued by this Court and the court of appeals.  *See Cahoo v. SAS Inst. Inc.*, 322 F. Supp. 3d 772, 785-89 (E.D. Mich. 2018), *aff'd in part, rev'd in part and remanded sub nom. Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019).  The dispute focuses on an automated fraud detection computer application that the UIA implemented sometime around 2013 known as the Michigan Integrated Data Automated System (MiDAS).  MiDAS was developed to search for discrepancies in the records of unemployment compensation recipients, automatically determine whether the claimants committed fraud, and execute collection proceedings, which included intercepting tax refunds and garnishing wages.  Auto-adjudication is a process that starts with the automated generation of a flag, then leads to the automated generation of questionnaires, then to an automated determination based on logic trees, followed by an automated generation of a notice of fraud determination, then automated collection activity.  A human could perform one or more of these stages, except for the generation of the fraud questionnaire.

The plaintiffs allege that the defendants worked together with the state to design, maintain, operate, and implement the robo-fraud-detection and adjudication system.  As a consequence of the inherent flaws built into the system, the plaintiffs contend, the defendants have taken property

from them through the automated system that labeled them fraudsters, and then assessed and collected fines and penalties, all without notice and an opportunity to be heard.

The discovery has disclosed that SAS Institute's involvement with the design and operation of MiDAS was remote. The plaintiffs alleged that around December 2012, SAS contracted with the State to design, create, implement, maintain, configure and control the Enterprise Fraud Detection Software (EFDS) used by the UIA to make unemployment insurance fraud determinations. According to the contract, SAS agreed to provide a product that utilized data from the Department of Technology, Management, and Budget (DTMB)'s Data Warehouse in the development of UIA Benefit and Tax fraud detection analysis, and the results of that analysis would be integrated with MiDAS. The contract describes the scope of the project in the following categories: requirements definition, functional design, configuration, testing, implementation, warranty, and maintenance. The contract expired in December 2017.

However, SAS's EFDS was the product of a different project, the State's Integrity Initiative Project, which was focused on licensing and configuring software to run on the State's hardware and analyzing the State's data. The Initiative and MiDAS had separate requirements, buyers, contracts, designs, user guides, development cycles, user-acceptance tests, releases, and approvals. There is no proof that the UIA delegated to SAS the task of collecting taxes from employers and disbursing unemployment insurance benefits to eligible claimants. Rather, it appears that the State used its own project managers and designated "executive subject matter experts" to provide requirements for, review, and sign-off on SAS's deliverables. Although SAS's software drew in part from data that the UIA collected using MiDAS, the State owned the project documentation and data and had the right to "use the alerts that the EFDS software produce[d] for any purpose."

The UIA used the EFDS software to prioritize resources in conducting fraud investigations. The UIA defined criteria it deemed suspicious "from a user perspective," and SAS configured its data analytics software to capture instances of that. But SAS's software had nothing to do with adjudicating, denying or terminating benefits, assessing penalties or restitution, collecting wages, intercepting taxes, or handling mail, phone calls, or appeals.

The EFDS project began on October 22, 2013 but did not go "live' until June 11, 2015. (MiDAS went live in October 2013.) The UIA then disabled the auto-adjudication protocol in the MiDAS system for all fraud issues on August 28, 2015. Thus, the UIA implemented the EDFS data for MiDAS's fraud adjudications for roughly two months in 2015.

SAS argues that the plaintiffs cannot establish that they were injured by any conduct fairly traceable to it, and therefore one of the constitutional prerequisites to standing is absent.

## II.

A defendant may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss a case "for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The issue of subject matter jurisdiction lurks in every federal case because the Constitution authorizes federal courts to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The motion under Rule 12(b)(1) may be brought as a facial attack — that is, a challenge to the sufficiency of the complaint — or a factual attack, as here — taking in evidence beyond the pleadings. *Cartwright*, 751 F.3d at 759. For the latter, courts have "wide discretion" to consider affidavits and documents "to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). The Court also may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2*);*

*United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977). The plaintiffs have the burden to prove the jurisdictional facts, *Cartwright*, 751 F.3d at 760, and all parties have had the opportunity to present evidence on that issue. The Court "has the power to weigh [that] evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*. at 759-60. Although this case has been pending for over three years, because subject matter jurisdiction goes to the power of the court to hear an action, a motion to dismiss for lack of subject matter jurisdiction may be filed at any time. Fed. R. Civ. P. 12(h)(3); Fed. R. C v. P. 12(b)(1); *S.J. v. Hamilton Cty., Ohio*, 374 F.3d 416, 418 n.1(6th Cir. 2004).

To establish standing, a plaintiff must show that he or she has suffered an "injury in fact," that was caused by the defendant's conduct, and that a favorable decision will redress that injury. *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016)). The first requirement requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid*.

The injury identified by the named plaintiffs is the deprivation of their property interests in unemployment benefits and exposure to violations and penalties without adequate pre- or post-deprivation process. But to have standing to complain about it, that injury "has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)); *see also Wittman v.*

-5-

*Personhuballah*, --- U.S. ---, 136 S. Ct. 1732, 1736 (2016).  Traceability "is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense," *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009), because "causation to support standing is not synonymous with causation sufficient to support a claim," *Parsons v. United States Dept. of Justice*, 801 F.3d 701, 715 (6th Cir. 2015).  The traceability requirement mainly serves "to eliminate those cases in which a third party and not a party before the court causes the injury."  *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004).

SAS contends that the plaintiffs cannot point a single injury traceable to it because SAS had nothing to do with the design, creation, implementation, installation, or maintenance of MiDAS.  The plaintiffs never responded to the motion.  On July 6, 2020, SAS filed a "reply," indicating that the plaintiffs "represented to SAS [over the phone] that they agree to dismiss SAS from the case and do not intend to respond."  Complicating matters, the plaintiff filed a motion to dismiss SAS from the case on August 5, 2020, which detailed the attorneys' back-and-forth on the matter.

The parties ultimately disagree about how the Court should dismiss SAS.  SAS proposed a stipulation to dismiss the case without prejudice, which included a factual narrative.  The plaintiffs rejected the stipulation because they did not agree with SAS's recitation of the facts and insisted (for reasons that remain unknown) that the case be dismissed with prejudice.  SAS insists that it cannot stipulate to a dismissal with prejudice even if it wanted to because the Court lacks subject matter jurisdiction over it.

That dustup aside, it is plain that SAS no longer should be part of this case.  *First,* the plaintiffs abandoned their claim against that defendant by failing to respond to SAS's motion to dismiss, never mentioning SAS in their class action certification motion, and informing SAS that

they have no interest in pursuing the case against SAS.  The plaintiffs' abandonment of their claim provides an independent basis for dismissal.  *See PNC Bank, Nat. Ass'n  v. Goyette Mech. Co., Inc.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) (dismissing claims that the plaintiffs failed to respond to in opposition to motion to dismiss, noting that "[a] plaintiff abandons undefended claims.").  Where a party fails to respond to an argument in a motion to dismiss "the Court assumes he concedes this point and abandons the claim."  *Ibid.*  (quoting *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010); *see also Doe v. Bredesen,* 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss).

*Second*, the named plaintiffs' injuries are not fairly traceable to SAS.  SAS did not design, implement, or operate MiDAS.  SAS's EFDS merely provided alerts for the UIA's independent investigation.  And neither SAS's employees nor its EFDS software had any involvement in the named plaintiffs' unemployment claim adjudications because the UIA adjudicated the plaintiffs' cases before it implemented SAS's EFDS software on June 11, 2015.  The UIA issued Cahoo's fraud determination in May 2015, Mendyk's in November 2013 and January 2014, Cole's in October 2014 and February 2015, Davison's in October 2014, and Pak's in December 2014.

Because the plaintiffs have not shown that any of their claimed injuries are fairly traceable to SAS's conduct, they have not established a critical element of standing.  Therefore, the Court will dismiss the remaining part of the amended complaint against SAS without prejudice for want of subject matter jurisdiction.  *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("Our cases . . . recognize that dismissals for lack of jurisdiction should generally be made without prejudice" except in "rare circumstances" such as "a sanction for misconduct.").

III.

The plaintiffs have not tendered any evidence to establish the requisite elements of Article III standing as to defendant SAS Institute Inc.  Therefore, the Court has no subject matter jurisdiction over the plaintiffs' dispute with that defendant.

Accordingly, it is **ORDERED** that the motion by SAS Institute to dismiss for want of subject matter jurisdiction (ECF No. 288) is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITHOUT PREJUDICE** as to defendant SAS Institute Inc., **only**.

It is further **ORDERED** that the plaintiffs' motion to dismiss the case against SAS Institute with prejudice (ECF No. 447) is **DISMISSED AS MOOT**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  August 11, 2020