UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

                         Plaintiffs,                    Case Number 17-10657
v.                                              Honorable David M. Lawson

FAST ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, and SHARON
MOFFET-MASSEY,

                          Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE EXPERT WITNESS DISCLOSURES AND BAR EXPERT WITNESS TESTIMONY

The plaintiffs have filed two batches of motions challenging the admissibility of testimony from witnesses identified by the defendants as experts. One set of motions attacks the testimony on procedural grounds under Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1). The other set of motions question the substance of the testimony as not measuring up to the strictures of Evidence Rule 702. The defendants in turn have moved to exclude the testimony of the plaintiffs' rebuttal expert witness. For reasons explained below, the reports of some of the defense witnesses are inadequate and those witnesses will not be permitted to give opinion testimony. One of the witnesses intends to give expert testimony amounting to legal opinions, which is not permissible. The plaintiffs have not furnished a proper report for their putative rebuttal witness, but that is largely inconsequential because there will be no allowable opinion testimony for him to rebut. The

remaining witnesses targeted by the motions furnished reports describing intended testimony that will be admissible.  The motions will be granted in part and denied in part.

I.

The identified witnesses all intend to give testimony on one or more aspects of the one remaining claim, which is that the plaintiffs' right to due process of law was abridged by the creation and implementation of the Michigan Integrated Data Automated System (MiDAS).  Many of the witnesses designated by the defendants are not specially retained to give testimony in the case.  They are employees of the Michigan Unemployment Insurance Agency (UIA) or the respective corporate defendants, who will describe the activities of their employers and explain what they found when they examined the plaintiffs' claim files.  The various defendants have furnished differing levels of detail in their reports under Rule 26(a)(2)(C), which requires that the party (not the witness) disclose "the subject matter," the facts," and "the opinions" to which the witness is expected to testify.

A.

All the defendants named four UIA employees who examined the claim files for one or more of the plaintiffs: Mandy Brickel (a UIA claims examiner who reviewed plaintiff Hyon Pak's claim file); Jessica Hart (plaintiff Michelle Davison's claim file); Katherine Potter (plaintiff Kristen Mendyk's claim file); and Kevin Smith (plaintiffs Patti Jo Cahoo's and Khadija Cole's claim files).  Defendant CSG's disclosure for witness Mandy Brickel mimics the disclosures for the other file examiners.  It described the subject matter of her testimony as follows:

> Ms. Brickel will testify regarding the interpretation of UIA's claimant file for Mr. Hyon Pak and UIA's processing, review, investigation, determinations, actions, communications, involvement, or collection efforts relating to any unemployment claims or communications, submittals, proceedings, appeals, or adjudications related thereto in any way involving or relating to Mr. Hyon Pak.

CSG combined the description of Brickel's facts and opinions:

> Ms. Brickel will testify that Mr. Pak's relevant claim was adjudicated in October 2012, before UIA even began using MiDAS. Ms. Brickel will further testify that human claims examiners — rather than automated business rules — used their independent judgment to adjudicate Mr. Pak as committing fraud. She will further testify that Mr. Pak chose to Go Green, frequently logged into his MiWAM account, and that Mr. Pak could not have avoided seeing the numerous notices UIA sent to him. Ms. Brickel also will testify that the UIA had exclusive authority to set the policies and procedures of the UIA that were programmed into the MiDAS system and that UIA never delegated that authority to CSG.

CSG declared that Brickel "may also render additional opinions identified in documents," but did not specify what they will be.

FAST Enterprises similarly disclosed the expected testimony of the file examiners employed by the UIA. Again, the disclosure for Mandy Brickel was typical:

> Brickel will testify that, based on her review of the UIA claim file for Pak, it is clear that Pak committed fraud in obtaining the payments from UIA at issue in this case. Brickel will testify regarding what is indicated in UIA's file for Pak relating to his unemployment claims, and what information regarding Pak's claims were initiated in the legacy system that predated MiDAS. She is expected to testify that factfinding regarding Pak's fraud claim began before MiDAS was in place. Brickel will testify that UIA personnel were involved in adjudicating the fraud claims against Pak, and that MiDAS did not auto-adjudicate the fraud determinations against Pak that is at issue here. She will testify that Pak chose the "Go Green" option and received correspondence from UIA electronically, through the MiWAM portal. She will testify that Pak's claim file indicates that notices were properly and timely placed in Pak's MiWAM account. She will testify that Pak logged onto his MiWAM account, including logging on multiple times shortly after his fraud determinations were adjudicated and notices thereof delivered to him. She will testify that Pak received notices relating to withholding of taxes and garnishment of wages. She will testify that Pak's fraud determinations were affirmed as part of the Zynda review. She will testify regarding the email and physical addresses that were in UIA's file that were provided by Pak. Brickel will testify regarding her review of Gott's claim file and her conclusion that Gott's fraud determination was not auto-adjudicated. Brickel will also testify that MiDAS is not a form of artificial intelligence, but rather just automates certain UIA rules and procedures. Brickel may also render additional opinions identified in documents — including the interpretation of Pak's and Gott's UIA claim files in general — and testimony disclosed to Plaintiffs in the instant case.

Finally, the state defendants also served disclosures for the file examiners, but those reports were considerably more cursory. The disclosure for Mandy Brickell was typical:

> Mandy Brickell Subject matter: Information related to the policies and procedures regarding claims adjudication and Plaintiffs' claims for unemployment benefits. Facts: Please refer to Ms. Brickell's deposition testimony. Ms. Brickell will testify as to the facts and contents regarding Hyon Pak's Unemployment Insurance Agency claims file, including the procedures followed regarding same.

It is not clear, however, that the state defendants intend to elicit opinion testimony from the file examiners. They explain that they more likely will be called as fact witnesses, and that they furnished reports under Rule 26(a)(2)(C) "out of an abundance of caution" should the witnesses happen to provide opinion testimony.

The plaintiffs argue that these disclosures do not satisfy Rule 26(a)(2)'s requirements because they do not identify any opinions that these witnesses will offer. Instead, the plaintiffs fear that the file examiners will be identified as experts but offer only fact testimony.

A party seeking to rely on non-retained expert testimony must provide an expert witness disclosure that summarizes (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705," (2) "the facts" "to which the witness is expected to testify," and (3) "the opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The disclosure need not be signed by the witness; counsel's signature will do. And the disclosures for non-retained experts under Rule 26(a)(2)(C) are "considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed R. Civ. P. 26, Advisory Committee Notes on 2010 Am. to Rule 26(a)(2)(C). Courts are cautioned "against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Ibid.* But counsel still must touch all the bases listed in Rule

26(a)(2)(C) to fulfill the purpose of the disclosure requirement, which is to prevent "surprise[s] as to the scope of testimony." *Fielden v. CSX Transp., Inc*., 482 F.3d 866, 871 (6th Cir. 2007).

One of the requirements, a summary of the witness's opinions, "means a brief account of the main opinions of the expert"; "the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient." *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours and Co.*, No. 09-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015). Likewise, a summary of the facts "means a brief account of facts — only those on which the expert actually relied in forming his or her opinions — that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice." *Ibid.*

Where an expert disclosure is itself not detailed, the opinions and supporting facts of non-retained experts may be disclosed in other discovery responses. *See Owens-Hart v. Howard Univ.*, 317 F.R.D. 1, 4 (D.D.C. 2016) (123 pages of medical records produced in discovery helped satisfy Rule 26(a)(2)(C)'s disclosure requirements regarding treating physician's facts and opinions). However, the reference to other documents, or the suggestion that the opponent read the witness's deposition, will not suffice.

Measured against this standard, CSG's disclosures pertaining to the file examiners adequately describe the subject matter of the file examiners' testimony, and they give some insight into some opinions that they may offer. Those opinions appear to be that, based on the file reviews, human claims examiners — and not an auto-adjudication process — made the fraud determinations. And those opinions and their bases are described adequately enough to satisfy Rule 26(a)(2)(C). But other opinions — that the claimants could not have avoided seeing the emailed notices, and that the UIA never delegated the authority to set policy to CSG — have no

factual underpinning, and the disclosures are not adequate. CSG may elicit fact testimony from these witnesses, but it may not elicit opinions beyond those that were described as derived from an examination of the respective claim files.

FAST's disclosures about the file examiners mainly recite fact testimony based on what the examiners found when inspecting the respective claimants' files. The only opinion that can be derived from the disclosure is testimony that MiDAS is not a form of artificial intelligence, but only an automated application of the UIA's rules and procedures. But there is nothing that ties that opinion to any of the facts recited in the disclosure, and there is no indication for the basis of that opinion, or even that the respective file examiners are qualified to reach that conclusion. FAST may not elicit such an opinion from these witnesses.

The State defendants' disclosures contain no opinions at all. They will be allowed to call these witnesses to testify to what they found when examining the claim files, but they will not be permitted to offer opinion testimony within the meaning of Evidence Rule 702.

## B.

The other non-retained experts CSG named are Clayton Tierney, a UIA employee, and John Walsworth CSG's chief executive officer. It disclosed that Tierney was expected to testify "about the roles and responsibilities of CSG as a project manager, the implementation of MiDAS, how that system functioned in the claims adjudication process, and the review process under *Zynda*. The disclosure contains a "Facts and Opinions" section that recites a fulsome list of the information Tierney is expected to impart, such as that "at no time did CSG ever establish the policies or procedures of the UIA that were programmed into the MiDAS system"; and "that CSG never had any responsibility at all in determining the algorithms or decision trees that the UIA intended the MiDAS software to use in connection with potential claimant fraud." None of that

expected testimony, nor the similar statements ascribed to Tierney, amount to opinions within the meaning of Evidence Rule 702.  There is one statement, however, that may amount to an opinion: that the responsibility to adjudicate or otherwise deal with claims "was the exclusive statutory province of the UIA."  That opinion amounts to a legal conclusion, which is not a proper subject for expert testimony.  *See Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (holding that the Sixth Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion") (citing *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992)).  Beyond that, the disclosure reveals no purported opinion testimony.  As with the file examiners, Tierney may testify as a fact witness only.

CSG stated that Walsworth "will testify regarding the function of a project management office and its roles and responsibilities."  Much like the description of Tierney's anticipated testimony, the disclosure identifies information that amounts to fact testimony.  One statement borders on opinion — that "a project management office like CSG's project management office for the UIA software implementation has no power to set government agency policy, establish any particular algorithms in the software that others are implementing, configure the software in any way, program the software in any way, or operate the software at any time (including after it goes live)" — and likely requires some special knowledge as a foundation.  In other motions, the plaintiffs do not challenge Walsworth's qualifications to give such an opinion, and the disclosure satisfies Rule 26(a)(2)(C)'s requirements.

FAST identified Tierney as a non-retained expert as well.  Its disclosure mirrored CSG's, and most of Tierney's expected testimony will not encompass opinion evidence.  However, one disclosure, that in light of "the different rules and criteria employed in the *Zynda* [settlement] process, Tierney will testify that it is incorrect to conclude that the process resulted in a reversal

-7-

rate of more than 90%; different rules and criteria were applied, so to refer to 'reversal rate' is misleading and incorrect," amounts to an opinion that was disclosed adequately.

FAST also disclosed non-retained experts Jennifer Tuvell and Jon Eads. Tuvell is expected to "testify about the software produced and services provided by FAST, as well as FAST's role in coding MiDAS for the UIA." The description of the substance of her testimony focuses on how MiDAS worked, which appears to be factual descriptions with no opinions. However, the information she intends to offer no doubt requires special knowledge, and expert testimony is not limited to opinions alone. *See* Fed. R Evid. 702 (stating that a qualified expert "may testify in the form of an opinion *or otherwise*") (emphasis added). FAST acknowledged in its disclosure that "Tuvell's testimony will be primarily factual but may have some elements of expert testimony." As so limited, the disclosure is adequate to prevent "surprise[s] as to the scope of testimony." *Fielden*, 482 F.3d at 871.

FAST disclosed that the expected testimony of Jon Eads, another FAST employee, will be "about the software produced and services provided by FAST." It says that Eads "will explain how users input data into MiDAS, how the system functions based on the UIA's 'logic trees,' and when, how, and where communications were sent to claimants or employers." Like Tuvell, "Eads'[s] testimony will primarily be factual but may have some elements of expert testimony." And the description of that testimony follows along the same lines, with the same result here. The disclosure is adequate.

The state defendants identified Tierney and also Debra Patterson, another UIA employee disclosing that they "will testify about the implementation and functionality of MiDAS." They identified other UIA employees as well: Kristrina Kratz (a "UIA claims examiner who will testify about the policies and procedures regarding claims adjudication and plaintiffs' claims for

unemployment benefits"), Susan Easton (a "UIA employee who will testify about the policies and procedures regarding claims adjudication and plaintiffs' claims for unemployment benefits"), and Teresa Burns (another "UIA employee who will testify about the federal requirements for claims adjudication, the state procedures enacted to meet federal requirements, and audit and investigation results"). The disclosures as to those witnesses fail to do anything but vaguely identify the overarching subject matter of the expert testimony — they neither provide a summary of the facts nor the opinions sought to be elicited. Not only did the defendants fail to provide "a brief account of facts . . . that states the main points derived from a larger body of information" upon which they relied, but some, like Tierney's and Patterson's, did not even "stat[e] the topic matters of facts relied upon" — they merely pointed to the depositions of their respective witnesses. *Little Hocking Water*, 2015 WL 1105840, at *9. The testimony of these witnesses will be limited to their fact-based statements.

### III.

In separate motions, the plaintiffs also move to exclude the expert testimony of each of the proposed non-retained experts discussed above, and also challenge CSG's retained expert, J. Todd Trivett. Trivett is expected to testify about CSG's role in developing and managing MiDAS and the functions, roles, and responsibilities of project management offices. According to his report, Trivett holds an MBA from Duke University and serves as a professional consultant with DisputeSoft, an independent IT consulting firm in Maryland specializing in computer forensics and litigation support. Over the past 14 years, he regularly served as an expert witness for intellectual property, contract, business torts, and insurance coverage issues.

Trivett's report primarily focuses on the various forms of project management offices (supportive, controlling, and directive) as described by the Project Management Institute; it also details CSG's involvement with MiDAS as a supportive project manager.  His opinion — that "at no time did CSG have the responsibility or authority to have committed the 'wrongful practices' alleged by the plaintiffs" — is based on his "review and analysis  . . . of contract documents, testimony, and exhibits presented at the deposition of the State's Project Manager, Clayton Tierney."  Trivett writes in his report:

> With respect to system functionality, CSG's role was limited to the elicitation and documentation of the business rules, process flows, and decision trees dictated by the State's representatives.  In the limited instances where CSG was asked to analyze and investigate "best practices" and provide recommendations, the State had the ultimate responsibility and authority to heed - or choose not to heed - CSG's recommendations.  Furthermore, at no time did CSG recommend that the State adopt the "auto-adjudication" procedures at the heart of the Plaintiffs' Amended Complaint.

The plaintiffs argue that the defendants' non-retained expert witnesses should not be allowed to testify as experts because (1) the proposed testimony from those witnesses are improper subjects of expert treatment because they concern factual matters about which knowledgeable fact witnesses may testify; and (2) the witnesses are unqualified to provide expert testimony.  The plaintiffs also argue that Todd Trivet should not be able to testify because his testimony (1) is irrelevant; (2) mirrors the fact testimony of UIA employee Clayton Tierney, and (3) contains impermissible legal conclusions (CSG lacked the responsibility or authority to have committed the "wrongful practices" alleged by the plaintiffs).

A.

According to the disclosures discussed above, with few exceptions, the non-retained expert witnesses are not expected to give any opinion testimony that falls within the ambit of Evidence

-10-

Rule 702.  Their testimony may touch on areas requiring special knowledge, such as describing the functionality of MiDAS and the claims processing protocols.  That special knowledge appears to be based on their experience, and by that measure the plaintiffs' challenge to their qualifications falls short.

"Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."  Fed. R. Evid. 702, advisory committee's note, 2000 amend. The Sixth Circuit has explained that the traditional *Daubert* factors "cannot readily be applied to measure the reliability of such testimony."  *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 296 (6th Cir. 2007).  Rather, experiential expert testimony is appropriate where the expert "explain[s] how th[eir] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Ibid.* (quoting Fed. R. Evid. 702, advisory committee's note, 2000 amend.).  "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, advisory committee's note, 2000 amend.; *see, e.g., Wood v. Wal-Mart Stores E., LP*, 576 F. App'x. 470, 472 (6th Cir. 2014) (holding that there was "ample reason" to conclude that a non-scientific expert's testimony was reliable and would assist the jury where witness had professional experience dealing with building codes as a commercial architect); *Surles ex rel. Johnson*, 474 F.3d at 296 (holding that district court properly admitted testimony from expert regarding experience designing driver's enclosures for transit buses).

Insofar as these witnesses will describe how MiDAS worked, and how it was used (or not) in the fraud adjudications of these plaintiffs, their testimony fits within the permissible bounds of Rule 702.  *United States v. Garner* provides a helpful guide.  In that case, the Sixth Circuit found that the particular forensic software used by an IRS special agent to determine whether the

defendant altered or destroyed documents exceeded the knowledge of laypersons and upheld the district court's decision that the testimony could be offered under Rule 702.  468 F.3d 920, 923, 926 (6th Cir. 2006).  The Court concluded that "[t]he average layperson today may be able to interpret the outputs of popular software programs [like Microsoft Word and Outlook] as easily as he or she interprets everyday vernacular, but the interpretation [the expert witness] needed to apply to make sense of the software reports is more similar to the specialized knowledge police officers use to interpret slang and code words used by drug dealers." *Id.* at 926 (citing *United States v. Garcia*, 72 F.3d 130 (6th Cir. Dec. 4, 1995) (unpublished) (affirming a decision to allow a police officer to give expert testimony as to the meaning of certain code words)).

MiDAS is a complicated software-based system, the explanation of which requires special knowledge beyond that of a layperson, as demonstrated by the hundreds — if not thousands — of pages of deposition testimony on the matter.  Here, the UIA file examiners have been disclosed as expert witnesses to testify about how each of the plaintiff's claims was adjudicated and the role MiDAS played in the process.  No opinions of these witnesses were disclosed, but they are qualified by experience to describe the UIA's processing, review, investigations, and adjudications of the five named plaintiffs in the case.  This testimony may well "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Although most of the expected testimony amounts to factual descriptions, the subject matter that the defendants' witnesses will relate is relevant to the plaintiffs' allegations and are necessary topics that the defendants must present to defend themselves.  The witnesses are presented as individuals with special knowledge, based on their experience with the Agency's claim adjudication process and MiDAS.  Although most of the testimony is factual, these witnesses may need to rely on their special knowledge to develop those facts, and to that extent it will exceed the knowledge base of

-12-

the average juror and enter the realm of Rule 702.  Because the witnesses' experience qualifies them to give that evidence, Rule 702 erects no barrier to such testimony.  *See Garcia*, 72 F.3d 130.

Similarly, the other UIA employees Clayton Tierney and Debra Patterson will testify about the implementation of MiDAS, how that system functioned in the claims adjudication process, and the review process under *Zynda*.  Susan Easton will testify about the policies and procedures regarding claims adjudication in general and the plaintiffs' claims for unemployment benefits. Teresa Burns will testify about the federal requirements for claims adjudication, the state procedures enacted to meet federal requirements, and audit and investigation results.  And Kristina Kratz may help define what some of the jargon in the claim files mean.  *See, e.g.,* Kratz Dep., ECF No. 399-28, PageID.17628 (explaining the stages of MiDAS adjudication, clarifying how to read claim files, and defining jargon, like "batch," which indicates that MiDAS changed the status of a fraud case automatically).

FAST's and CSG's employees identified as non-retained experts similarly will testify about the operational and management functions of their respective employers as they interacted with the State in the rollout of MiDAS.  As with the file examiners, these witnesses will not offer opinions, but they may use their special knowledge to elucidate their explanations.  That sort of testimony traditionally has been allowed, even when it does not include "opinions."  *See*, *e.g.*, *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) ("There are innumerable trades and practices that employ their unique devices, feints, and codes that may mean nothing to the untrained observer but may speak volumes to a maven qualified by experience or training.").

This testimony is allowable.

B.

As a retained expert, J. Todd Trivett stands on a slightly different footing.  He does intend to give opinion testimony, which falls fully within the scope of Evidence Rule 702.  Therefore, his testimony must be grounded in the actual facts of the case, must be valid according to the discipline that furnished the base of special knowledge, and must appropriately "fit" the facts of the case into the theories and methods he espouses.  Fed. R. Evid. 702(a)-(d); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-93(1993).

The plaintiffs contend that Trivett's testimony about the role of project managers and CSG's compliance with the State's contract is irrelevant because it has nothing to do with "the constitutional requirements at issue" in this case.  However, Trivett does not intend to opine on whether CSG performed its contractual obligations adequately or met industry standards; his testimony addresses CSG's role under the contract and the services it provided to the State.

The testimony is relevant to the issue of causation and whether CSG can be considered a state actor.  Both issues are front and center in the parties' pending cross-motions for summary judgment.  *See Martin v. Warren Cnty., Kentucky*, 799 F. App'x 329, 337 (6th Cir. 2020) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) (plaintiffs must show that defendants' conduct was both a cause in fact and a proximate cause of the alleged due process violation); *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982) (for liability to attach under section 1983, "the party charged with the deprivation must be a person who may fairly be said to be a state actor.").  Trivett's report addresses those issues and will aid the factfinder in understanding what CSG did in its role as a project manager; i.e., the extent of its technical oversight, administration of the system, and development of the policies and logic trees.  *See* Trivett Report, ECF No. 380-1, PageID.16677-83, ¶¶ 17-25.

The plaintiffs argue that the Court should exclude portions of Trivett's testimony that merely mirror Tierney's anticipated testimony, referencing parts of Trivett's report where he quotes Tierney's deposition testimony to support his position. Trivett Report, ECF No. 380-1, PageID.16683-85, ¶¶ 26, 29 (quoting seven questions and seven answers). Relying on *United States v. Whyte*, the plaintiffs contend that "a district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses . . . ." 795 F. A'ppx 353, 360 (6th Cir. 2019) (quotation marks omitted).

*Whyte* does not support that argument. In that case, the court of appeals approved the district court's admission of a police officer's testimony about the meaning of street language and rejected the argument that the testimony impermissibly mirrored that of fact witnesses. *Ibid.* The court emphasized that it generally will "affirm the admission of expert testimony . . . so long as the district court does not allow the expert law enforcement witness either to relay the government's theory of the case to the jury under the guise of jargon interpretation or to interpret plain English statements that a reasonable juror could understand on their own." *Ibid.*

Here, it appears that Trivett will use Tierney's testimony to substantiate his opinion based on his interpretation of the contract and knowledge of project management standards. For example, in paragraph 25 of his report, Trivett opines that CSG's contract language did not grant CSG the authority to "determin[e] the State's business requirements for MiDAS," "the functionality of and workflows related to MiDAS," nor the policies "that drove those requirements and workflows." Trivett Report, ECF No. 380-1, PageID.16683, ¶ 25. In the following paragraph, Trivett cites Tierney's deposition testimony, which affirmed that the "UIA was responsible to use its own independent judgment in making the decisions relating to which business rules, processes, and functionality was going to be required in the system modernization project." *Id.* at

-15-

PageID.16684, ¶ 26.  That reference verified Trivett's reliance on the underlying facts.  It did not parrot them.

Trivett also opined, based on CSG's contract language, that CSG's "Technical Writing" services in developing the request for proposal (RFP) focused on "communicating the State's requirements which reflect the State's policies," not "creating those requirements or policies."  *Id.* ¶ 29.  For support, he cited Tierney's testimony that "the [S]tate relied on [the UIA] to further business aspects of [the RFP], [including the] business rules or requirements" and that the UIA vetted all of the RFP documents.  *Id.* at PageID.16684-85, ¶ 29.  Trivett's reliance on Tierney's deposition testimony to supplement his opinions based on CSG's contract language does not "impermissibly mirror[] the testimony offered by fact witnesses."  *Whyte*, 795 F. A'ppx at 360.

The plaintiffs also argue that in the passages that cite Tierney's testimony, "Trivett offers no opinion based on scientific, technical, or specialized knowledge.  Instead, he simply states that he agrees with" Tierney's testimony.  That is not entirely accurate.   In addition to interpreting CSG's contract and referencing Tierney's testimony, Trivett relied on the project management industry standards provided by the Project Management Institute for his categorization of PMOs into "supportive," "controlling," and "directive" project management offices.  ECF No. 380-1, PageID.16676-77, 16679-80 ¶¶ 17, 18, 22 (citing *A Guide to the Project Mgmt. Body of Knowledge*, Project Mgmt. Inst. § 1.4.4 (5th ed. 2013)).

Trivett's testimony does not repeat impermissibly Tierney's testimony, and he will not be permitted to do simply that at trial.  His reliance on that testimony is not improper.

Finally, the plaintiffs argue that Trivett's testimony amounts to a legal conclusion when he states that "at no time did CSG have the responsibility or authority to have committed the 'wrongful practice' alleged by the plaintiffs."

-16-

The Federal Rules of Evidence make clear that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, an expert witness may not offer testimony "that expresses a legal conclusion." *Berry*, 25 F.3d at 1354 (6th Cir. 1994). The court of appeals has explained that "there is a 'subtle,' but 'nonetheless important' distinction between 'opin[ing] on the ultimate question of liability' (impermissible), and 'stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue' (permissible)." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (quoting *Berry*, 25 F.3d at 1353). For example, a court may not "'allow a fingerprint expert in a criminal case to opine that the defendant was guilty (a legal conclusion)'" but can "'allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact).'" *Ibid.* (quoting *Berry*, 25 F.3d at 1353).

Here, Trivett's testimony that "CSG's role was limited to the elicitation and documentation of the business rules, process flows, and decisions trees dictated by the State's representatives" and that the "State had the ultimate responsibility and authority to heed — or choose not to heed — CSG's recommendations" is proper, as it merely suggests the conclusion that the fact finder should reach. But his opinion that "at no time did CSG have the responsibility or authority to have committed the 'wrongful practices' alleged by the plaintiffs" (i.e., due process violations) is an impermissible legal conclusion, drawing not only on the contract documents but also an interpretation of the parties' rights and responsibilities under the law of contracts. Trivett will not be allowed to give that testimony.

IV.

FAST and CSG move to bar the testimony if Christian Sandvig, a witness not identified by the plaintiffs as a rebuttal witness because no timely disclosure was given. The plaintiffs

-17-

acknowledge problems with their disclosures, but they blame the defendants for their inability to meet the deadlines.  A discussion of the scheduling order and its amendments is necessary to put that argument in context.

On October 31, 2019, the Court entered a third amended scheduling order requiring the plaintiffs to furnish disclosures for non-class expert witnesses by January 10, 2020, and the defendants to furnish disclosures for non-class expert witnesses by February 7, 2020.   ECF No. 232.  The parties failed to meet that deadline, and on February 12, 2020, the Court granted a joint motion to extend the plaintiffs' non-class expert disclosure deadline to March 10, 2020, and the defendants' deadline to April 7, 2020.  ECF No. 248.

The plaintiffs submitted an expert disclosure on their deadline, March 10, 2020, which listed Christian Sandvig, among others.  The disclosure was incomplete, however, because the plaintiffs said that they lacked the "critical information" their experts needed from the defendants to complete their expert reports.  On the same day, they filed a motion to extend the deadline to disclose their expert reports, which the defendants opposed.  About two weeks later, the Court granted the motion in part, extending the plaintiffs' deadline to serve their non-class expert reports to April 7, 2020, and the defendants' deadline to May 5, 2020.  ECF No. 262.

After the deadline had passed, FAST's counsel contacted plaintiffs' counsel, who replied that they "will not be using the previously identified persons as experts under either of the cited rules [Fed. R. Civ. P. 26(a)(2)(B) and (C)]. At this point, they are solely retained as consulting experts for which no[] further report or disclosure is required."  *Id.* at PageID.16599.

FAST contends that it relied on the plaintiffs' representation in deciding not to retain an expert to testify in this litigation, and CSG also relied on the plaintiffs' representation not to retain

an expert on MiDAS's system design and function (although they did retain Trivett to discuss project management offices).

One month later, on June 5, 2020, when the plaintiffs filed their motions to strike the defendants' expert witness disclosures, they served a second expert disclosure on the defendants that listed Christian Sandvig as a rebuttal witness under Rule 26(a)(2)(D)(ii).  The disclosure states that Sandvig will rebut the proposed opinions offered by non-claims examiners Tuvell, Eads, Tierney, Walsworth, Patterson, and Easton.

In the disclosure, Sandvig describes himself as holding a Ph.D. in communication from Stanford and teaching information and communication studies at the University of Michigan.  His research focuses on internet algorithms and racial bias.  He states that "Defendants Fast Enterprises and the State of Michigan have not specifically identified opinions to be offered by their named experts, thereby prohibiting Plaintiff's expert from identifying certain opinions that will be offered in rebuttal.  Nonetheless, Plaintiffs' expert will offer opinions . . . [which] may include, but are not limited to the following:

- The MiDAS system adjudicates claims of potential claimant fraud through its programming rules and logic.
- The MiDAS system's rules and logic in matters of potential claimant fraud fail to incorporate and implement impartial decision-making processes in its adjudication process.
- Inherent biases exist in the MiDAS system's rules and logic during the adjudication of potential claimant fraud.
- The MiDAS System's rules and logic in matters of potential claimant fraud contain predetermines outcomes at various decision points based on inputs and/or the absence of inputs received.
- The MiDAS system is incapable of making discretionary decisions within the programming rules and logic in matters of potential claimant fraud and does not weigh evidence or evaluate credibility during adjudication."

*Id.* at PageID.16605-06.  The plaintiffs did not provide any other expert report.

-19-

Under Rule 26, the report of a rebuttal expert, that is, by one whose "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," must be disclosed within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). By that measure, the disclosure, if incomplete, was nearly timely (one day late). But generally, "rebuttal experts may not testify as to issues on which [the disclosing party] bears the burden of proof." *UHS of Delaware, Inc. v. United Health Servs., Inc.*, 2017 WL 1945490, at *1 (M.D. Pa. May 10, 2017); *see Taylor v. Brandon*, 2018 WL 3581142, at *2 (W.D. Ky. Jan. 30, 2018) ("'[R]eal' rebuttal appears to be evidence or expert opinion offered by a [p]laintiff in response to a defense theory or proof that ordinarily would not be offered by the [p]laintiff in its case-in-chief to establish an element of one or more of its causes of action."). Where a party attempts to introduce evidence establishing an element of their claim through a rebuttal expert, preclusion of the testimony is the proper remedy "absent a showing of substantial justification or harmlessness." *Expeditors Int'l of Wash. v. Vastera, Inc.*, No. 01-71000, 2004 WL 6047123, at *2 (E.D. Mich. May 24, 2004) (citing Fed. R. Civ. P. 37(c)(1)).

One of CSG's and FAST's main criticisms of the plaintiffs' disclosure of Sandvig is that they believe it constitutes a backdoor attempt at adding an expert to prove their case-in-chief. The disclosure also failed to include a report in the form required by Rule 26(a)(2)(B). The plaintiffs respond that the report requirement should be excused in this case because Sandvig had nothing to work with due to the inadequate substance in the defendants' expert disclosures, which failed to summarize any opinions.

The plaintiffs' argument quite accurately describes the state of the record in this case. The non-retained experts intend to offer few, if any, opinions. The defendants will rely on their special knowledge instead to allow them to explain the procedures and processes employed in applying

MiDAS to the fraud adjudications. The plaintiffs' primary complaint about those processes is that they were deprived of notice, an opportunity to be heard, and a fair hearing. The non-retained experts will offer no opinions on those points as such. That subject matter, however, appears to be Sandvig's intended area of testimony.

The defendants made clear that they disclosed their non-retained experts in an abundance of caution, that they intend to use them primarily as fact witnesses, and that they only disclosed them as non-retained experts if the Court were to find that their testimony included expert opinions. As discussed above, the non-retained witnesses will not provide any expert opinions, with one or two minor exceptions, as they appear to only relay the facts about which they had personal knowledge. As discussed above, the only allowable opinions will come from the file examiners, who will state that human claims examiners —not an auto-adjudication process — made the fraud determinations for the respective plaintiffs. However, Sandvig's disclosure does not mention any of those proposed opinions. Nor does Sandvig intend to comment on anything J. Todd Trivett, CSG's retained expert, intends to discuss.

It does not appear, therefore, that the plaintiffs intend to call Sandvig to rebut any opinions that will be given by defense witnesses designated as experts. Instead, it appears that Sandvig intends to provide opinions that ultimately support the plaintiffs' case-in-chief. For instance, he will opine that MiDAS fails to incorporate impartial decision-making processes, that inherent biases exist in MiDAS, MiDAS's rules include predetermined outcomes, and that MiDAS does not weigh evidence. *Id.* at PageID.16605-06. These generalized opinions are not responsive to any offered opinions and improperly bolster the plaintiffs' arguments for which they carry the burden of proof, which is beyond the scope of permissible rebuttal testimony.

The only potentially responsive opinion Sandvig offers is that MiDAS "adjudicates claims of potential claimant fraud through its programming rules and logic." That testimony may rebut the file examiners' opinions that humans adjudicated the plaintiffs' claims. However, that opinion is not supported by the report required by Rule 26(a)(2)(B), which must include the expert's opinions, supporting facts and data, and other requirements. The plaintiffs argue that they were stymied by the defendants' failure to describe their witnesses' intended opinion testimony in any detail, but the opinions of those file examiners were described clearly enough in the disclosures.

When a party does not comply with the disclosure requirements, the party "'is not allowed to use' the information or person that was not disclosed 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 567 (6th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)). According to the Sixth Circuit, "Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified." *Sexton v. Uniroyal Chemi. Co.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003). "'Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Ibid.* (quoting *Ames v. Van Dyne*, 100 F.3d 956, 1996 WL 662899, at *4 (6th Cir. Nov. 13, 1996) (Table)).

The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless": "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (quoting *Russell v. Abs.*

*Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).  None of those factors favor the plaintiffs.  The plaintiffs' excuse for not furnishing a report that rebuts the narrow scope of the opinion testimony disclosed by the defendants does not meet the substantial justification requirement.  And the plaintiffs have not shown how their decision to revive the participation of their expert after the defendants made their disclosures is harmless.

Moreover, judging from the subject matter of the testimony that Sandvig disclosed, he is not a true rebuttal witness.  His testimony instead would focus on one or more elements of the plaintiffs' claims, more properly offered in their case-in-chief.  *Taylor*, 2018 WL 3581142, at *2.  That makes the failure to serve a disclosure complete with a report more problematic.

"'The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'"  *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)).  "The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'"  *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 666 F. Supp. 2d 820, 826 (N.D. Ohio 2009); *see also Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)).

The plaintiffs will not be permitted to call Christian Sandvig as an expert witness.

V.

FAST urges the Court to sanction the plaintiffs because they filed two sets of motions challenging the expert testimony.  However, the motions serve different purposes, one set

-23-

addressing procedural issues and the other challenging the substance of the proposed expert testimony.  Sanctions are not appropriate.

The defendants' disclosures for the non-retained experts do not identify any admissible opinion testimony except CSG's disclosures that the file examiners will opine that human claims examiners, not an auto-adjudication process, made the fraud determinations.  Beyond that, the non-retained experts will not be permitted to give opinion testimony.  They will be able to describe their interaction with MiDAS and how it was involved in the determination of the plaintiffs' claims, and the interaction of FAST and CSG with the State in the development and application of MiDAS.  CSG's retained expert may testify to his opinions except that which amounts to a legal conclusion.

Accordingly, it is **ORDERED** that the plaintiffs' motions to strike expert witness disclosures (ECF No 345, 346, 348), and their motions to bar expert witness testimony (ECF No. 380, 381, 382) are **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the motion by CSG and FAST to preclude the plaintiffs' expert witness testimony (ECF No. 378) is **GRANTED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  March 18, 2021

-24-