UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATTI JO CAHOO, KRISTEN MENDYK,
KHADIJA COLE, HYON PAK, and
MICHELLE DAVISON,

          Plaintiffs,          Case Number 17-10657
v.                                      Honorable David M. Lawson

FAST ENTERPRISES LLC, CSG GOVERNMENT
SOLUTIONS, STEPHEN GESKEY,
SHEMIN BLUNDELL, DORIS MITCHELL,
DEBRA SINGLETON, and SHARON
MOFFET-MASSEY,

          Defendants.
_____/

## **OPINION AND ORDER DENYING MOTIONS TO INTERVENE**

Three individuals, Michael Bell, Carmelita Colvin, and Suzette Marie Heathcote, have moved to intervene as plaintiffs in this case. They each allege that they were victimized by the defendants' development and application of the automated fraud detection and adjudication system known as the Michigan Integrated Data Automated System, or MiDAS. These individuals believe that they can address the shortcomings that the Court identified when it denied the motion for class certification. And each intends to revive the attempt to certify a class, which they seek to represent. Because the factors courts consider under Federal Rule of Civil Procedure 24 do not favor intervention at this stage of the case, the motions will be denied.

I.

A. Background

The Court has discussed the facts of this case in several prior opinions, and the parties are familiar with them. Summarizing briefly, the plaintiffs filed a putative class action complaint for

damages on March 2, 2017. The defendants moved to dismiss the complaint, and on March 2, 2018, the Court dismissed several individual defendants and several counts of the complaint, leaving intact the plaintiffs' due process, equal protection, and Fourth Amendment claims against the remaining defendants. The State defendants appealed the decision arguing qualified immunity, and on January 3, 2019, the Sixth Circuit affirmed the Court's decision with respect to the plaintiffs' due process claim and reversed the decision as to the plaintiffs' equal protection and Fourth Amendment claims. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 907-08 (6th Cir. 2019). The parties then agreed to dismiss the equal protection and Fourth Amendment claims against all defendants and later agreed to dismiss defendant McMurtry.

The plaintiffs maintained a claim for a violation of procedural due process against defendants FAST, CSG, and State defendants Steven Geskey, Shemin Blundell, Doris Mitchell, Debra Singleton, and Sharon Moffett-Massey. The parties engaged in another round of motion practice beginning in the spring of 2020. On April 24, 2020, the plaintiffs moved for class certification. The corporate defendants then moved to dismiss the complaint, raising jurisdiction and real-party-in interest arguments, in early May 2020. In late July, all parties filed motions for summary judgment.

The Court granted defendant SAS's motion and dismissed the complaint against it without prejudice for want of subject matter jurisdiction on August 11, 2020. As the parties were exchanging their summary judgment briefs, plaintiffs' counsel filed two motions to intervene in hopes of bolstering their motion for class certification, one on behalf of Michael Bell followed by another on behalf of Carmelita Colvin. The Court later denied FAST's and CSG's motions to dismiss on December 21, 2020. The following day, the Court denied the plaintiffs' motion for class certification. And on March 25, 2021, the Court denied the motions for summary judgment

except as to individual State defendants Blundell, Mitchell, and Singleton, who were dismissed from the lawsuit. The Court also dismissed the case as to plaintiff Hyon Pak.

When the Court denied the plaintiffs' motion for class certification, it found that the plaintiffs satisfied the first two elements of Federal Rule of Civil Procedure 23(a): numerosity and commonality. The Court also identified "one group of potential plaintiffs whose claims may benefit from class treatment: those individuals adjudicated guilty of fraud solely because they did not return their questionnaires." Opinion on Class Cert., ECF No. 497, PageID.38632. However, the Court ultimately found that the class representatives failed to establish Rule 23(a)'s typicality and adequacy of representation elements and Rule 23(b)(3)'s predominance and superiority elements.

The Court also observed that the plaintiffs produced strong evidence that MiDAS's built-in procedures failed to satisfy rudimentary due process requirements and concluded that the plaintiffs met the commonality requirement because "[a] decision on the defendants' responsibility for creating and launching a fraud adjudication system that foreseeably would deny claimants notice and a proper determination of intent-based liability without an opportunity to be heard in their defense is central to the validity of each of the claims and could be decided in one stroke." *Id.* at PageID.38654-55 (internal citations omitted). However, the Court found that the plaintiffs failed to satisfy the typicality and adequacy of representation elements because Cahoo, Cole, and Mendyk each filed for bankruptcy and were susceptible to unique defenses that threatened to dominate the litigation, and the individual circumstances of Davison and Pak varied significantly (Davison moved to a different address before the UIA issued its questionnaires and the UIA did not re-issue them after she updated her address; Pak replied to initial questionnaires but failed to reply to follow-up questionnaires). Moreover, none of the plaintiffs actually alleged that they saw

the notices (although other evidence permitted the inference that they did see them), and they relied on substantially different facts to support their arguments that the UIA's manner of notice was deficient.

The Court also found that the plaintiffs failed to meet Rule 23(b)(3)'s preponderance and superiority elements. The Court observed that the "case is complex, and like MiDAS itself, involves many moving pieces and individualized considerations that are outcome determinative." *Id.* at PageID.38661. The Court also found "the management of the class impracticable" due to the "individualized outcome-determinative considerations, and [because] the plaintiffs have not identified a single course of wrongful conduct that ties every claim together." *Id.* at PageID.38662.

Alternatively, the plaintiffs proposed certifying issue classes under Rule 23(c)(4) based on the "method of notice, content of notice, failure to provide for a meaningful hearing and failure to provide an impartial process." *Ibid.* But the Court rejected that request because those proposed subclasses called for "fact-intensive inquiries that still would fail the preponderance and commonality requirements of Rule 23(a)(2) and (b)(3), as the resolution of those issues would depend on whether the individuals received actual notice." *Id.* at PageID.38663.

In January 2021, Bell and Colvin filed supplements to their motions to intervene in which they expressed an intention to file a renewed motion for class certification. Suzette Heathcote, represented by a different attorney, moved to intervene later that month.

## B. Michael Bell

Like the named plaintiffs, Michael Bell alleges that the UIA violated his right to due process by determining that he committed fraud without an adequate pre-determination opportunity to be heard. He argues that (1) the UIA's manner of mailing notices was deficient, (2) the UIA based his fraud adjudication in part on improperly prorated earnings; and (3) the UIA

based his fraud adjudication in part on his failure to respond to the deficiently mailed questionnaires.

Bell received unemployment benefits in the latter half of 2013. He says that the UIA flagged his case in April 2015 and concluded that it overpaid benefits for the weeks spanning October 5, 2013 through November 2, 2013. The UIA mailed Bell fact-finding questionnaires on April 3, 2015. However, Bell no longer lived at the address listed in the UIA's records and did not receive or respond to the questionnaire.

On April 13, 2015, the UIA determined that Bell committed fraud, apparently based on his failure to respond and its records of his prorated earnings, and it mailed a notice of determination and list of overpayments that day. The Agency sought reimbursement of $9,025, consisting of $1,805 in principal and $7,220 in penalties. However, an administrative law judge (ALJ) overturned Bell's fraud determination on May 18, 2017, and he alleges that his employer confirmed that the contested wages alleged by the UIA were incorrect.

He initially sought to intervene in this action if the Court found that Khadija Cole (the only other named plaintiff who alleged income spreading) is not an adequate class representative.

### C. Carmelita Colvin

Carmelita Colvin filed for unemployment benefits around June 2013. She alleges that "[n]early a year later, the Agency deferred to her employer without properly weighing evidence or making a credibility determination and found that Ms. Colvin defrauded the Agency when she truthfully reported that she was fired by her employer." Colvin Mot. Intervene, ECF No. 477, PageID.37533-35. In her supplemental motion, she adds only that she "was auto-adjudicated of fraud after she did not respond to the fraud questionnaire regarding a separation of work issue."

On March 6, 2014, the UIA issued a fraud determination notice and charged Colvin with $2,664 in principal and $10,656 in penalties, totaling $13,320. However, on January 8, 2020, an ALJ reversed the determination, finding that "Colvin denied that she quit and there was no credible evidence contradicting her testimony."

Colvin initially sought to intervene in this action if the Court found that Patti Jo Cahoo and Kristen Mendyk (who also have claims related to separation issues) are inadequate class representatives.

### D. Suzette Heathcote

Suzette Heathcote also alleges that she was falsely accused of fraud based on MiDAS's faulty income spreading function and her failure to respond to questionnaires. Heathcote received unemployment benefits for four weeks in January 2014 but got a job shortly after. She earned wages in February and March 2014. However, she alleges that as MiDAS "datamined" the UIA's database for discrepancies, it prorated her earnings throughout the first quarter of 2014 and wrongfully assumed that she received earnings in January 2014. The UIA issued fact finding questionnaires on September 30, 2014. After she failed to respond, the UIA determined that she committed fraud on October 14.

Heathcote contends that she was unaware of the fraud determination or questionnaires until she lost her job again and filed for benefits later in 2014. However, the UIA records that she attached indicate that the UIA issued her determination notice on October 14, 2014, and that the Agency had received an appeal from her one week later, on October 21.

Heathcote alleges that she hired an attorney to represent her at a hearing before an ALJ on June 8, 2015, at which no UIA representatives appeared. On July 8, 2015, an ALJ reversed the

decision because the employer appeared with payroll records showing that it had not paid Heathcote until February 2014.

II.

Federal Rule of Civil Procedure 24, which governs intervention, sets the standards for "intervention of right," Fed. R. Civ. P. 24(a), and "permissive intervention," Fed. R. Civ. P. 24(b). According to the Sixth Circuit, "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). But "this does not mean that Rule 24 poses no barrier to intervention at all." *Ibid*.

Timing is an important consideration for both types of intervention. *Id.* at 479. "To intervene as a matter of right in a lawsuit under Federal Rule of Civil Procedure 24(a), a proposed party must establish that: '(1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest.'" *Kirsch v. Dean*, 733 F. App'x 268, 274 (6th Cir. 2018) (quoting *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005)).

Permissive intervention also requires a "timely motion." *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 577 (6th Cir. 2018). If the timing is right, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *Ibid*. Considerations include "'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Ibid*. (quoting Fed. R. Civ. P. 24(b)(3)).

As most proposed intervenors do, the movants here invoke both parts of the rule. The defendants predictably oppose the motions as coming too late in this thoroughly litigated case, which, one hopes, is closer to the end than the beginning.

A.

One aspect of the defendants' untimeliness argument invokes the statute of limitations as it applies to the remaining due process claim brought under 42 U.S.C. § 1983. Even if the movants satisfy all the requisites of Rule 24, if their claims are time-barred, intervention is not appropriate. *Stotts v. Memphis Fire Dep't.*, 679 F.2d 579, 582 (6th Cir. 1982) (affirming trial court's denial of intervention which rested in part on the unavailability of the substantive relief sought by movant).

The parties agree that the statute of limitations for these claims is three years. *See Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005). The relevant injuries occurred on April 13, 2015 (Bell), March 6, 2014 (Colvin), and October 14, 2014 (Heathcote). The parties also agree, therefore, that the intervenors' claims are time-barred unless subject to equitable tolling.

In *American Pipe and Construction Company v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that the filing of a class action "tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 553. The Supreme Court later expanded *American Pipe* tolling to apply to separate actions by members of a putative class. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). However, the Sixth Circuit has held that the limitations period is not tolled for putative class members who choose to file individual actions *before* the district court rules on class certification. *Wyser-Pratte Mgmt. Co. v. Telxon Corp.,* 413 F.3d 553, 568-69 (6th Cir. 2005). That rule has little effect on the proposed intervenors here, however, because class certification was not denied until December 22, 2020, and they still have

plenty of time to file an independent action against all of the defendants before the three-year period of limitations expires. It certainly would not bar intervention to pursue their individual claims against the defendants.

The defendants take issue with the proposed intervenors' stated intentions to attempt to revive class certification. They cite *China Agritech v. Resh*, in which the Supreme Court limited the applicability of *American Pipe* tolling to individual, not class-wide, claims. *China Agritech v. Resh*, ---U.S.---, 138 S. Ct. 1800, 1085 (2018). The Supreme Court held that when a court denies class certification, a putative class member may join the existing suit or promptly file an individual action, but she may not start a "successive class action" beyond the time allowed by the statute of limitations. *Id.* at 1806.

It is apparent that *China Agritech*'s gloss on the tolling rules would bar a stand-alone class action by the intervenors if filed now. However, their intention is to ask the Court to revisit the class certification ruling, not to start a new class action. The order denying the motion to certify the class remains an interlocutory ruling at this stage of the case. And it is well established that "[d]istrict courts have authority both under common law and [Federal] Rule [of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health and Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citations omitted). To obtain that relief, a motion must be supported by "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Ibid.* It is not apparent that the proposed intervenors would be able to make the required showing, but the statute of limitations would not bar their attempt.

Intervention cannot be denied in this case based on any considerations related to the statute of limitations. The policy discussion in *China Agritech* animating the tolling rules, however, is

relevant to the timeliness question under Rule 24, as explained further below. *See Lindblom v. Santander Consumer USA, Inc*, No. 1:15-CV-00990-BAM, 2019 WL 4640684, at *7 (E.D. Cal. Sept. 24, 2019).

B.

For both permission intervention and intervention by right, courts evaluate the timeliness of a motion to intervene "in the context of all relevant circumstances [by consideration of] the following five factors: '(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.'" *Kirsch*, 733 F. App'x at 274-75 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

1.

This case has been pending since March 2, 2017. By the time the proposed intervenors moved to intervene over three years later, the Court had already resolved a round of dispositive motions that had been appealed, discovery had concluded on June 22, 2020 after several extensions, the plaintiffs had moved for class certification, the defendants filed another batch of motions to dismiss, and the parties all had moved for summary judgment. Heathcote's motion came even later — arriving after the Court denied the corporate defendants' motions to dismiss and the plaintiffs' motion for class certification. There is still more to do: resolution of another interlocutory appeal by the State defendants, trial motions, final pretrial, trial. But the intervenors are trying to jump the freight train just before it reaches its destination. This factor does not favor

-10-

the intervenors. *See Clarke v. Baptist Mem'l Healthcare Corp.*, 427 F. App'x 431, 436 n. 2 (6th Cir. 2011) (denying intervention where three years had elapsed since the plaintiffs filed their complaint and the trial court "denied defendant's motion to dismiss . . . and denied plaintiffs' request for class certification.").

Heathcote cites *Beach v. Healthways, Inc.*, 264 F.R.D. 360, 364-66 (M.D. Tenn. 2010) to support her timeliness argument. In that case, the court granted a motion to intervene after denying a class certification motion because the intervenor sought to file a renewed motion for class certification. However, that case is distinguishable. The case had not progressed as far as this action has — the parties in *Beach* had not filed any dispositive motions, and six months remained for the parties to complete merits discovery. *Id.* at 363. Also, the district court, finding that this factor "dovetail[ed] into the factor of prejudice to the defendants," concluded that the defendants would not suffer undue prejudice because "much of the work addressing a class certification has been done" and remained applicable to the points raised by the proposed intervenor. *Id.* at 365. By contrast, this action "is complex, and like MiDAS itself, involve[s] many moving pieces and individualized considerations that are outcome determinative." Opinion Denying Mot. Class Cert, ECF No. 497, PageID38661. As discussed below, the addition of new parties necessarily involves an intensively fact-specific analysis that would require a significant amount of new work.

2.

The purpose for which the intervention is sought must be considered in terms of the "importance of the legal interests asserted." *Clarke*, 427 F. App'x at 436. The proposed intervenors here identify twin purposes: renewing the class certification motion and pursuing their individual claims against these defendants.

Bell and Colvin sought to shore up the class certification efforts that might have suffered from the inadequacies of Cahoo, Mendyk, and Cole as class representatives because of their bankruptcy filings. They seem to suggest that those deficiencies were the sole reasons that class certification was denied. However, although the Court found that those named plaintiffs' claims were subject to unique defenses, there were other reasons class certification was denied beyond the failure to establish typicality and adequacy of representation. The Court found that "the plaintiffs . . . ha[d] not demonstrated that common questions presented predominate over the panoply of individualized considerations," that the "case is fraught with individualized outcome-determinative considerations, and the plaintiffs have not identified a single course of wrongful conduct that ties every claim together," rendering "the management of the class impracticable." Opinion on Class Cert. at 30-32, ECF No. 497, PageID.38660-62. Although the proposed intervenors argue at length that their claims are typical and they are adequate class representatives, they have not addressed how they will overcome the Court's findings on the predominance and superiority elements. Even if the intervenors' motions are granted, it is highly unlikely that they will succeed on a renewed motion for class certification.

Intervention is not necessary for the proposed intervenors to pursue their individual claims. They "do not explain how, if at all, resolution of [the current plaintiff's] claims will affect them or how their interests are related to the individual claims at issue." *Lindblom*, 2019 WL 4640684, at *7 (E.D. Cal. Sept. 24, 2019). They have their separate, stand-alone claim for damages arising from their individual wrongful fraud adjudications, which they can pursue regardless of the ultimate disposition of the claims of the named parties.

This factor also weighs against intervention.

3.

Bell and Colvin should have known of their interest in this case well before they moved to intervene, and this factor cuts against intervention. Heathcote stands on firmer footing, however.

Bell and Colvin argue that any delay in the filing of their motion is "directly attributable to [the] defendants' delay in attempting to disqualify plaintiffs Cahoo and Mendyk." That argument is disingenuous. These proposed intervenors are represented by the same attorneys as the named plaintiffs, who should have known that three of five of their potential class representatives filed for bankruptcy (opening them to real-party-in-interest defenses), and two of those three entered into consent judgments with the State (raising judicial estoppel defenses). The failure to catch these issues early on in litigation is not the defendants' fault. In fact, the defendants listed these affirmative defenses in their respective answers, which were filed as early as March 2018, putting plaintiffs' counsel was on notice of these defenses. Yet the intervention motions were not filed until August and September 2020. That delay is their responsibility. *See New York v. Hill*, 528 U.S. 110, 115 (2000) (attorney's knowledge is imputed to client); *Cruz-Gomez v. Lynch*, 801 F.3d 695, 700 (6th Cir. 2015) (same).

Heathcote, on the other hand, maintains that she had no reason to take any action to protect her interests until the Court denied the class certification motion, since she had no reason to know that the plaintiffs were inadequate class representatives. Once she discovered this defect, she moved to intervene within one month of the Court's order.

The defendants cite *Lindblom*, 2019 WL 4640684, at *7, for the idea that this factor favors denial of intervention, which is sensible as to Bell's and Colvin's motions. But that case actually supports Heathcote's argument. In *Lindblom*, the court denied several motions to intervene filed about nine months after the court denied class certification because the named plaintiff was

atypical (subject to a statute of limitations defense). The intervenors argued that their motion was timely, but the court disagreed in part because the intervenors were represented by the same counsel as the atypical named plaintiff and were aware of the defendants' statute of limitations defense for years because the defendant listed it in its answer. *Id.* at *5. "Rather than seeking to intervene as soon as they learned that [the atypical plaintiff] may be an inadequate representative, the intervenors waited until after discovery closed, class certification was denied, and the Court denied [] prior intervenors' motions for permissive intervention." *Ibid.*

Heathcote is not represented by plaintiffs' counsel. Although the defendants raised the real-party-in-interest and estoppel defenses in their answers, Heathcote had no reason to know that the named plaintiffs were actually susceptible to those defenses until well into 2020, when the parties began disputing that issue. By that time, Heathcote's individual claim had expired under the statute of limitations. And she could not intervene or file a separate action until after the Court denied class certification. *Wyser–Pratte*, 413 F.3d at 569; *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016) (recognizing that *Wyser-Pratte* "represents the minority rule" and expressing "doubts about its holding" but affirming the decision as binding). Thus, once the Court denied class certification, Heathcote promptly sought "to intervene as soon as [she] learned that" her interests were no longer represented by the class action and she was permitted to take action herself. *Lindblom*, 2019 WL 4640684, at *5.

This factor favors Heathcote, but not Bell or Colvin.

4.

The prejudice factor strongly weighs against intervention. Relying on *Beach v. Healthways, Inc.*, the proposed intervenors discount the defendants' concerns about replowing the same ground — at considerable expense — arguing that most of the work has already been

-14-

completed, the claims have not changed, and additional discovery would not be substantial. That argument, however, substantially underestimates the time and effort necessary to revisit class certification with new proposed class representatives presenting new claims.

The problem with the plaintiffs' class certification motion was not simply the named plaintiffs as class representatives. There were inadequate showings on the predominance and superiority elements as well. To revisit class certification, the parties would have to re-brief four of six relevant elements (typicality, adequacy of representation, predominance, and superiority), which represents the lion's share of the work. Moreover, the defendants have the right to conduct full discovery on the intervenors' claims, considering the fact-intensive nature of the case. That would entail obtaining and analyzing the benefit files from the UIA, propounding interrogatories, requesting document production, obtaining employer records, and conducting depositions. In essence, the "timing of the motion would force defendants to start from scratch on class certification, while [the] plaintiffs would gain the benefit of hindsight, having already seen the arguments in opposition . . . ." *Clarke*, 427 F. App'x at 437 n.3. Allowing that attempt also would sanction a daisy-chain of certification attempts, which contravenes the policy considerations the Supreme Court discussed in *China Agritech*. *Lindblom*, 2019 WL 4640684, at *("The same policy reasons discussed in *China Agritech* warrant prohibiting the Intervenors here to 'piggyback' on an earlier, timely filed class action. Allowing them to do so does not serve the purposes of Rule 23. Accordingly, in light of the holding and reasoning of *China Agritech*, the Court finds that the Intervenors' reasons for and length of delay weigh against intervention.") (citing *China Agritech*, 138 S. Ct. at 1811).

The same prejudice issue is true for the individual claims. The parties have engaged in substantial discovery and motion practice, including two rounds of motions to dismiss (two of

which involve an interlocutory appeal), and cross-motions for summary judgment. Thus, "allowing intervention would derail this case and would require significant and costly discovery to essentially relitigate the case after four years of contentious litigation." *Lindblom*, 2019 WL 4640684, at *4.

Heathcote argues that adding additional plaintiffs to this case could "create less delay and prejudice" compared to the prospect of other proposed intervenors filing "multiple separate, new cases against the same defendants." That may be true, but that consideration is irrelevant. The relevant inquiry is the prejudice to the original parties, not proposed intervenors. *Stupak-Thrall*, 226 F.3d at 478. Here, forcing the defendants to conduct more discovery and relitigate dispositive motions would cause substantial prejudice. Heathcote also argues that if the intervenors filed new cases, those cases would require pleadings, scheduling conferences, additional discovery, and motions. Although true as well, that consideration also is irrelevant. The "relevant inquiry in determining prejudice is the 'harm arising from the late intervention as opposed to early intervention' and not whether Defendant may someday be forced to litigate the Intervenors' or other individual's claim in some other forum." *Lindblom*, 2019 WL 4640684, at *4 (quoting *Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-05064, 2016 WL 324015, at *6 (N.D. Cal. Jan. 27, 2016) (citing *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)).

The prejudice imposed by adding new parties this late in the case is a heavy counterweight to the intervenors' motions.

5.

The parties have not identified any "unusual circumstances militating against or in favor of intervention.'" *Kirsch*, 733 F. App'x at 274-75.

Considering all the factors, however, leads to the ineluctable conclusion that the intervention motions are not timely.

C.

Beyond timeliness, the other factors do not favor the proposed intervenors. "The proposed intervenors must show that they have a substantial interest in the subject matter of this litigation." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990)). "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Although the Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right," *ibid.*, "this does not mean that any articulated interest will do." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007); *see Stupak-Thrall*, 226 F.3d at 472.

Of the two interests the intervenors identified, the purported class interests are far from compelling. *See Stampley v. Altom Transp., Inc.*, No. 14-3747, 2019 WL 10891859, at *2–3 (N.D. Ill. Sept. 11, 2019) (denying motion to intervene as class representative after denial of class certification because Court was "not persuaded that an interest in pursuing a class action in the district court after a class has been decertified is a legally protectable interest justifying intervention"), *aff'd*, 958 F.3d 580 (7th Cir. 2020); *Lindblom*, 2019 WL 4640684, at *7 ("the Intervenors have not established that their interest in pursuing a particular class action procedure, as opposed to protecting a substantive right, is protectible under Rule 24(a)(2)"). Moreover, Heathcote's argument that she and many others "will be left without recourse" is not accurate. As she conceded, no one contests the intervenors' right to file individual cases. The same is true for the absent class members.

For the individual claims, the proposed intervenors do not explain how they have a protectable interest in "the property or transaction" which is the subject of the action because the case proceeds on the four remaining plaintiffs' individual claims. Fed. R. Civ. P. 24(a)(2). They do not seek to challenge any universally applicable principles or laws. *See Miller*, 103 F.3d at 1247 (holding that the Michigan Chamber of Commerce had a substantial legal interest where it was regulated by several challenged statutory provisions). And they do not suggest that they have an interest in any of the plaintiffs' fraud adjudications.

The proposed intervenors bear a "minimal" burden of demonstrating that absent intervention, "that impairment of its substantial legal interest is possible." *Grutter*, 188 F.3d at 399 (quoting *Miller*, 103 F.3d at 1247). The Sixth Circuit has "acknowledged that potential stare decisis effects can be a sufficient basis for finding an impairment of interest." *Ibid.* (citing *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992). But that danger does not exist here. Because, as explained earlier, the intervenors do not have a substantial interest in the subject matter of this litigation, "it necessarily follows that such an interest would not be impaired by resolution." *Lindblom*, 2019 WL 4640684, at *8; *see also Lee,* 2016 WL 324015, at *4 ("The Court is unaware of any case holding that . . . potential impairment to absent putative class members satisfies the 'impairment of protectable interest' requirement for purposes of mandatory intervention."). The intervenors concede that they are not without recourse because they may file individual actions to vindicate their rights. *See Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) ("[m]ere inconvenience . . . caused by requiring [the intervenors] to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2).") (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972)). And the intervenors need not worry about any "potential stare decisis effects," *Grutter*, 188 F.3d at 399, because the resolution of the plaintiffs'

individual claims will have little impact on the resolution of the intervenors' claims, particularly in light of the intensively fact-sensitive inquiries at play.

Finally, "applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." *Michigan*, 424 F.3d at 443-44. This, too, however, is a "minimal" burden; "it is sufficient to prove that representation *may* be inadequate." *NE. Ohio Coal for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) (emphasis in original) (citing *Linton*, 973 F.2d at 1319). "One is not required to show that the representation will in fact be inadequate." *Miller*, 103 F.3d at 1247. "[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Ibid.*

This factor is focused on the individual claims, as the action was "stripped of its character as a class action" when the Court denied the plaintiffs' motion for class certification. *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 393 (1977); Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. Thus, the ability of the named plaintiffs to represent the absent class members' interests is no longer a consideration.

Of course, the named plaintiffs will be unable to represent the interests of the intervenors on their individual claims. But they would not be expected to look out for the separate claims of individuals who are capable of filing their own actions. In that context, there is no possibility that the proposed intervenors' interests in their individual claims would be impaired absent intervention.

D.

These factors do not favor intervention by right. As noted above, the more lenient requirements for permissive intervention still require a timely motion. The proposed intervenors have not met that requisite.

III.

On balance, the relevant factors weigh against allowing the moving parties to intervene in this pending case.

Accordingly, it is **ORDERED** that the motions to intervene (ECF No. 454, 477, 502) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date: May 4, 2021