```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3      Patti Jo Cahoo, et al.,

4                    Plaintiffs,
                                             Case No. 17-10657
5        -v-

6      Fast Enterprises, et al.,

7                    Defendants.
       _____/
8

9                        MOTION TO INTERVENE
                           March 9, 2021
10
              BEFORE THE HONORABLE DAVID M. LAWSON
11                 United States District Judge

12            HEARING CONDUCTED VIA VIDEO CONFERENCE
                 ALL PARTIES APPEARING REMOTELY
13

14     APPEARANCES:

15     FOR PLAINTIFFS AND      Kevin S. Ernst
       PROPOSED INTERVENORS    Ernst, Charara & Lovell
16     BELL AND COLVIN:        645 Griswold, Suite 4100
                               Detroit, Michigan  48226
17
       FOR PROPOSED            David M. Blanchard
18     INTERVENOR              Blanchard & Walker, PLLC
       HEATHCOTE:              221 North Main Street, Suite 300
19                             Ann Arbor, Michigan  48104

20     FOR DEFENDANTS          Erik F. Stidham
       FAST ENTERPRISES:       Holland & Hart LLP
21                             800 W. Main Street, Suite 1750
                               Boise, Idaho  83702
22

23     (APPEARANCES CONTINUED TO FOLLOWING PAGE)

24            To Obtain a Certified Transcript Contact:
              Rene L. Twedt, CSR-2907, RDR, CRR, CRC
25                      www.transcriptorders.com
```

```
 1    APPEARANCES (Continued):

 2     FOR DEFENDANTS          Stephen J. Rosenfeld
       CSG GOVERNMENT          McDonald Hopkins PLC
 3     SOLUTIONS:              39533 Woodward Avenue, Suite 318
                               Bloomfield Hills, Michigan  48304
 4

 5     FOR DEFENDANTS          Kimberly Pendrick
       BLUDELL, GESKEY,        Department of Attorney General
 6     MITCHELL, SINGLETON:    525 W Ottawa Street
                               PO Box 30736
 7                             Lansing, Michigan  48909

 8

       FOR DEFENDANT          Debbie K. Taylor
 9     MOFFET-MASSEY:          Department of Attorney General
                               3030 W. Grand Boulevard, Suite 9-600
10                             Detroit, Michigan  48202

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        <u>TABLE OF CONTENTS</u>

2       <u>MATTER</u>                                                   <u>PAGE</u>

3       MOTIONS TO INTERVENE
        Argument by Mr. Ernst.....................................    7
4       Argument by Mr. Blanchard.................................   13
        Argument by Mr. Stidham...................................   23
5       Argument by Mr. Rosenfeld.................................   32
        Argument by Ms. Taylor....................................   41
6       Further Argument by Mr. Blanchard.........................   45
        Further Argument by Mr. Ernst.............................   52
7       Ruling by the Court Taken Under Advisement................   57

8       CERTIFICATE OF COURT REPORTER.............................   58

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  March 9th, 2021

2  2:54 p.m.

3                              *       *       *

4        THE COURT:  Mr. Ernst, are you representing two of the

5  three proposed intervenors?

6        MR. ERNST:  Yes, your Honor.  I'm representing

7  Mr. Bell and Ms. Colvin.

8        THE COURT:  On the docket Hannah Fieldstra is the only

9  person that has appeared for those two individuals.

10        MR. ERNST:  All right.  Well, your Honor, she is in my

11  firm, so generally speaking an appearance on behalf of one of

12  the lawyers is an appearance by the firm, but I can file an

13  appearance.

14        THE COURT:  That is not correct with respect to the

15  local rules of our court, so would you remedy that later on

16  today?

17        MR. ERNST:  I certainly will, your Honor.

18        THE COURT:  Okay.  Thank you.

19        And Mr. Blanchard, you have the other proposed

20  intervenor?

21        MR. BLANCHARD:  That's right, your Honor.  I'm

22  representing Ms. Heathcote.

23        THE COURT:  All right.  Well then, let's begin.

24        This is a session of the United States District Court

25  for the Eastern District of Michigan being conducted via video

1    teleconferencing because the proceedings cannot be conducted

2    in person without serious harm to public health and safety.

3              This is a motion hearing in the case of Cahoo versus

4    Fast Enterprises, Case Number 17-10657.

5              Let's go through appearances first for the plaintiffs,

6    please.

7              MR. ERNST:  Good afternoon, your Honor.  May it please

8    the Court, Kevin Ernst appearing on behalf of the plaintiffs

9    and on behalf of intervenors, Bell and Colvin.

10             THE COURT:  All right.  And for proposed intervenor,

11   Heathcote?

12             MR. BLANCHARD:  Good afternoon, your Honor.  David

13   Blanchard representing proposed intervenor, Heathcote.

14             THE COURT:  And for Fast Enterprises?

15             MR. STIDHAM:  Good morning, your Honor.  Erik Stidham

16   on behalf of Fast Enterprises.

17             THE COURT:  Mr. Stidham, are you in your office?

18             MR. STIDHAM:  I am, your Honor.

19             THE COURT:  Well, it's afternoon here.  So good

20   afternoon.

21             MR. STIDHAM:  Good afternoon, your Honor.

22             THE COURT:  And for CSG?

23             MR. ROSENFELD:  Good afternoon, your Honor.  Stephen

24   Rosenfeld on behalf of CSG.

25             THE COURT:  And for defendant, Moffet-Massey?

1          MS. TAYLOR:  Good afternoon.  May it please the

2     Court, Assistant Attorney General Debbie Taylor representing

3     defendant, Moffet-Massey.

4          THE COURT:  And for the other State defendants?

5          You're muted, Ms. Pendrick.

6          Ms. Pendrick, you're muted.  Would you put your

7     appearance on the record, please?

8          MS. PENDRICK:  Sorry, your Honor.

9          Assistant Attorney General Kim Pendrick appearing on

10    behalf of State defendants, Geskey, Mitchell, Bludell, and

11    Singleton.

12         THE COURT:  All right.  We have three motions to

13    intervene.  Bell and Colvin we can take as one, and then I'll

14    take the argument from Mr. Blanchard with respect to Heathcote,

15    and then I'll let everyone respond who wants to respond, and

16    then I'll entertain rebuttal arguments.

17         So Mr. Ernst, I understand that you have filed this

18    motion to intervene on behalf of both of the individuals, I

19    think one in August and one in September, which was before I

20    made the determination on the class certification motion.

21         I think you have argued that under both the

22    intervention by right and intervention by permission or

23    permissive intervention prongs of the rule that you qualify.

24         The defendants have resisted the motion on a

25    timeliness basis, but there also is another question, and that

1    is whether intervention would be futile because of the statute

2    of limitations problem.

3            So I'll expect you to address all of that, if you

4    please, so you may begin.

5            MR. ERNST:  Yes, your Honor.  If I may, I would like

6    to start with the American Pipe argument first, the statute of

7    limitations argument.

8            This case presents a narrow context in which, as the

9    Court mentioned, that the intervenors filed their motions to

10   intervene previous -- or prior to, I should say -- the Court

11   determining the issue of class certification.

12           THE COURT:  Well, what difference does that make now?

13           MR. ERNST:  Well, there is -- okay.  There is a case

14   out of -- there is a case out of New Jersey which collects

15   several district court cases.  It's California Public Employees

16   Retirement Systems versus Chubb Corp, and it's an unpublished

17   case found at 2002 U.S. District Lexis 27189, and the

18   propositions occurred mostly at pages 89 through 91.

19           THE COURT:  Do you have a Westlaw cite for that?

20           MR. ERNST:  I can get it shortly, your Honor, but I

21   would have to go off screen to get it.

22           THE COURT:  All right.  Well, maybe you could get that

23   when the others are arguing.

24           MR. ERNST:  Oh, certainly.

25           THE COURT:  But in any event, the -- and this is a

1     direct quote from the Court.  And just before I begin the

2     quote, they cite a case from Judge -- a published case from

3     Judge Cleland from the Eastern District, Bromley versus

4     Michigan Education Association, which is found at 178 FRD 148,

5     Eastern District of Michigan 1998.

6              But anyway, the quote is as follows:  "Several courts

7     have held that American Pipe is appropriately applied to

8     motions to intervene or amend complaints filed to substitute a

9     proper class representative with standing prior to a decision

10    on class certification."  And then it goes on to cite several

11    different cases that had agreed with that proposition.

12             THE COURT:  Well, I don't think that's so much in

13    dispute.  In fact, the Seventh Circuit case, the Allstate case,

14    basically says the same thing.

15             But I observe that the case you cited was from 2002,

16    which was before the China Agritech case was decided by the

17    Supreme Court, which sort of changes the landscape on this,

18    doesn't it?  Once the class cert motion has been denied, then

19    this case is stripped of all its character as a class action,

20    and now we have basically intervenors with the alternative

21    of -- I guess it's not an alternative -- with the only remedy

22    to be able to file the action on their own because of American

23    Pipe tolling, but that's about it, isn't it?

24             MR. ERNST:  Well, your Honor, China Ag did not deal

25    with the situation of persons who filed motions to intervene

1    before the class cert motion was decided.  So I think that it

2    does not cover this particular context.  And, in fact, they --

3    the purpose -- one of the decisions, or holdings, I should say,

4    in China Ag was that it dealt with successive actions and

5    not -- not with intervenors who sought to intervene and file

6    a renewed motion within the same action.

7         So I don't see China Ag as covering this particular

8    context in this -- the particular facts of this case, and there

9    is really not anything in China Ag that's similar to that.

10        And although I know that China Ag said something to

11   the effect that additional class filings should be made early

12   on, soon after the commencement of the first action seeking

13   class certification, but then the Court went on to explain what

14   it meant by that.  And it said, "With class claims, on the

15   other hand, efficiency favors early assertion of competing

16   class representative claims.  If class treatment is appropriate

17   and all would-be representatives have come forward, the

18   District Court can select the best plaintiff with knowledge of

19   the full array of potential class representatives and class

20   counsel."

21        While that concept might bar Mr. Blanchard's client

22   because he's -- he would have a competing class representative,

23   it doesn't bar our class -- our potential intervenors because

24   they are not competing.  In fact, the plaintiffs concur in

25   their motions and they are represented by the same class

1    counsel.

2          So I just don't see China Ag as barring this

3    particular circumstance.  It didn't deal with intervenors

4    and it didn't say anything about intervenors.  So I don't

5    see how that particular case essentially overrules sub silentio

6    the line of cases that I cited in California Public Employees.

7          THE COURT:  Well, other than the real party in

8    interest issue, which was not the only reason that class

9    certification was denied, how does -- how are your proposed

10   intervenors on a different footing than the current class

11   representatives?

12         And if they are not on any different footing, why

13   would this not simply be another effort by different people

14   to obtain class certification where the first one failed?

15         MR. ERNST:  Well, they are on a different footing to

16   the extent that they don't have the bankruptcy filings that

17   potentially makes them not real parties in interest.

18         THE COURT:  No, I understand that.  But my question

19   was, other than that.  I mean, the class certification motion

20   was denied not just on that basis, but there was a superiority

21   issue and a management issue and other reasons why class

22   certification was denied, and how would they propose to

23   overcome that?

24         MR. ERNST:  Well, because they were going to rely on

25   the narrow class that the Court defined as potentially viable,

1    which is all the persons that never responded and that had an

2    auto adjudication.

3           So they -- they would represent a different and more

4    narrow class of the potential class -- putative class members.

5           THE COURT:  All right.  Go on, then.

6           MR. ERNST:  All right.  So with regard to the delay

7    issue, the timeliness issue, if I could just give a brief

8    timeline here, the motions to dismiss for lack of standing were

9    filed in May of 2020, over three years after the case was

10   filed.  Discovery ended in June of 2020.  Mr. Bell filed his

11   motion to intervene in August of 2020 and Ms. Colvin in

12   September 2020.

13          These potential intervenors did not know of their

14   potential claims until Tony Paris, who represented them in

15   their administrative proceedings before the UIA, contacted them

16   and told them that they have potential claims and that the

17   current class members may not be able to protect their claims

18   because of the bankruptcy filings.

19          So within weeks after learning of their potential

20   claims they filed their motions to intervene.  And even had

21   they -- but I should -- I'm sorry.

22          By the time they filed their motions to intervene, by

23   the time they learned of their potential claims, discovery was

24   already over.  So I don't see how the -- there is any prejudice

25   to the defendants.

1      And they have the same types of claims. There is

2  no -- there is no additional litigation of the substantive

3  issues that would be necessary in this case. We already

4  litigated the issues of the auto adjudication and the failure

5  to respond to questionnaires and/or notices of fraud

6  determinations. We already litigated all those substantive

7  issues.

8      So the length of time preceding the application for

9  intervention from the time that they became aware of their

10  potential claims was very short, and the prejudice to the

11  original parties is very limited. This would not require much,

12  if any, additional paper discovery, just maybe turn over the

13  claims files of each one of these intervenors, and there might

14  be one or two depositions that are required. So I don't see

15  how there would be any substantial prejudice to any of the

16  parties involved.

17      THE COURT: Mr. Ernst, anything further?

18      MR. ERNST: Your Honor, I would just like to point out

19  one additional type of preemptive argument, and that concerns

20  the case of McCune -- or McClune cited by Mr. Rosenfeld, which

21  deals with an inability or the proscription against hearing

22  deficient pleadings with a motion to intervene.

23      That whole case was premised on the fact that the

24  plaintiffs' claims were dismissed based on standing. But in

25  this case, the defendants' motion to dismiss plaintiffs' claims

1  based on standing was denied.  Although it was denied without

2  prejudice, it's nevertheless denied.  So there is an existing

3  case to which plaintiffs can intervene.

4           THE COURT:  All right.  Thank you, Mr. Ernst.

5           MR. ERNST:  Thank you, your Honor.

6           THE COURT:  Mr. Blanchard?

7           MR. BLANCHARD:  Thank you, your Honor.

8           Intervenor Heathcote makes similar claims, has a

9  similar position here, except that she is not related to

10  counsel and shouldn't be imputed with any knowledge that the

11  class representatives were inadequate unless and until the time

12  in December when your Honor issued the class representation

13  denial of class certification.

14           THE COURT:  Well, the critical difference,

15  Mr. Blanchard, isn't it that you didn't file your motion

16  until after class cert was denied; right?

17           MR. BLANCHARD:  Which we believe is the timely -- if

18  we were -- I have the quote here.  I can quote from our case,

19  but really, "The commencement of the original class suit tolls

20  the running of the statute of limitations for all purported

21  members of the class who make timely motions to intervene after

22  the Court has found the suit inappropriate for class action

23  status."

24           So it is timely now, and it's not a time where she

25  could protect her rights by sitting on her hands further, based

1    on representations that there are other adequate class members

2    that might be able to intervene and other -- and would

3    adequately represent the class.

4         THE COURT:  Right.  But this is no longer a class

5    action.

6         THE COURT:  That's right, your Honor.

7         THE COURT:  So how do you deal with the situation

8    that China Agritech basically removes from your quiver the

9    class-action arrow so that the only thing you have left,

10   really, is an individual action that you can file separately?

11        MR. BLANCHARD:  Well, I don't agree -- I agree with

12   Mr. Ernst, I don't agree with that proposition, your Honor.

13   I believe China Agritech clearly dealt with successive actions,

14   and there is nothing in a pending action that would prevent

15   your Honor's discretion to reopen or renew or allow a renewed

16   motion for class certification.

17        Really, that's the only way that we can proceed, given

18   the nature of these claims.  If you look at the three years

19   of litigation that have gone on and the amount of time and

20   resources that have put into it, could you imagine somebody

21   that has $10,000 or $20,000 at issue doing this kind of work

22   to uncover what was clearly a fraudulent, mismanaged, and

23   unconstitutional adjudication process here?  There's -- so that

24   addresses your Honor's other question as to superiority, which

25   was an issue in --

1      THE COURT:  Well, let me go back a minute.  You said

2   that I have the discretion to reopen and revisit the class

3   certification question.

4      What is the procedural device that you would rely on

5   for that?

6      MR. BLANCHARD:  Your Honor, we would file a motion for

7   leave.

8      THE COURT:  You can't ask for reconsideration.  The

9   time has expired for that type of a motion.

10      MR. BLANCHARD:  Well, we don't believe those timelines

11   apply to intervenors that have not intervened yet.  Timelines,

12   of course, and the case management orders are a matter of the

13   Court's discretion.  Once again, I think the vehicle would be a

14   motion for leave to file a renewed motion for class

15   certification.

16      THE COURT:  Under what rule?

17      MR. BLANCHARD:  I'd have to get back to you on that,

18   your Honor, but the motion for leave --

19      THE COURT:  The reason I'm asking, I'm not trying to

20   fence with you, Mr. Blanchard, I'm trying to envision the

21   procedural vehicle that would be at your disposal to allow a

22   renewed motion for class certification at this stage of the

23   case.

24      MR. BLANCHARD:  I don't have anything further for you

25   on that right now, except to say a motion for leave would be

1   within the discretion of the Court to grant, and particularly

2   in a case where class certification was denied for adequacy

3   reasons, and as your Honor mentioned, superiority reasons,

4   which I want to talk about a bit.  The only reasonable way to

5   proceed would be to do that.

6            Now, if the Court -- we're talking about hypotheticals

7   a bit here; right?  We're thinking ahead to whether they are

8   adequate class representatives, whether that's established in

9   evidence, whether the Court wishes to entertain a motion for

10  leave to file a renewed class certification.  Even if not,

11  Ms. Heathcote is entitled to intervene, especially given all

12  the work that's gone in here.  Her individual claim could not

13  be feasibly pursued as an individual action.  That's not a

14  viable alternative.

15           THE COURT:  Why not?  Why not?

16           MR. BLANCHARD:  The finances just don't work

17  whatsoever.

18           THE COURT:  Well, I mean, if all that's left to her

19  is --

20           MR. BLANCHARD:  It wouldn't even --

21           THE COURT:  If all that's left to her is an individual

22  action because class certification has been denied, then what

23  difference if she files it as a separate action or intervenes

24  as a separate plaintiff in this action?

25           MR. BLANCHARD:  It would -- it would not be feasible

1    for counsel to recreate the work that's been done here for an

2    individual claimant, and that's why Rule 23 was created and

3    that's why the question of superiority is embedded within

4    23(b).

5          THE COURT:  Oh, I'm sorry, I think we're talking past

6    each other here, Mr. Blanchard.  You're still on the class

7    issue and I'm thinking that the only alternative is for an

8    individual action.

9          Once -- I mean, that work has been done.  The

10   discovery is there.  That ground has been plowed.  So I imagine

11   she can take advantage of that in her own individual action

12   just by taking a look at the materials that have been on file

13   with this court.

14         But anyway, you may proceed.

15         MR. BLANCHARD:  For reasons that I discussed, I don't

16   think an individual action is viable, and I'm sorry if we're

17   talking past each other a little bit.

18         THE COURT:  That's all right.

19         MR. BLANCHARD:  But I don't think -- I don't think

20   that we are so much, because the point that I'm trying to make

21   is the only feasible way to proceed is under the Rule 23

22   mechanism.  If these types -- these are exactly the types of

23   claims that should be treated under that mechanism, for people

24   that have been oppressed by the State, that are low income,

25   that have lost their jobs, and then have been subject to a

1    systematic procedure that would deprive them of due process,

2    and yet the value of those claims is low or in question.

3            I think that's the policy reason why Rule 23 exists,

4    for those cases where the class mechanism is superior.  And

5    that's why I'm saying I do believe it is superior in this case,

6    especially for the narrower class that Ms. Heathcote could and

7    would represent, and that's the only way to proceed with this.

8            She was subject to income spreading.  I know there has

9    been a lot of talk in the briefs and your Honor is aware of

10   income spreading and how it happened.  It essentially involves

11   the agency's MiDAS system being programmed --

12           THE COURT:  No, I'm familiar.

13           MR. BLANCHARD:   -- to take that truthful information

14   from the employer of a quarterly report and turn it into false

15   information of weekly reports, and then to adjudicate somebody

16   guilty of fraud because it doesn't match up with false

17   information.

18           And so I think that's something that doesn't appear so

19   much in the briefing, and the present case, that it's not clear

20   that this actually is a system to create false evidence and

21   then find people guilty of that, not merely of faulty mismatch,

22   but they create a mismatch between apples and oranges because

23   the computer turned an apple into an orange.

24           Otherwise, there is no evidence of fraud in which to

25   adjudicate or find somebody guilty of fraud absent -- absent

1    the questionnaire.  If they don't answer the questionnaire,

2    the questionnaire says we will make an adjudication based on

3    available information.  There is no conflict between the

4    truthful quarterly report from an employer and a truthful

5    weekly report that employees/claimants are reporting when

6    they are getting benefits.  There is no conflict in that

7    information.

8            That's the only existing information the agency has,

9    but they programmed the computer to create false information as

10   if the employer reported those weekly earnings.  And I'm sorry

11   to repeat ground that's already been plowed, as your Honor

12   mentioned, but I do believe it's important to keep that in

13   mind.

14           And Ms. Heathcote -- although I'm not aware of the

15   other intervenors' position, Ms. Colvin was not part of the

16   income spreading, I don't believe, and Mr. Bell was or may

17   have been -- but Ms. Heathcote uniquely comes to you with the

18   direct evidence of a batch adjudication from start to finish

19   based solely on an income spreading.  And that's -- it can

20   be verified from the records, and it can be put into a

21   spreadsheet, and those people can be identified, and the

22   violation exists as a matter of policy and practice, and

23   that's why the class mechanism would be superior.

24           Or if the case were to proceed and it's only for a

25   few plaintiffs, she might as well be part of this case rather

1     than some other -- trying to recreate the wheel.

2          I have personally got a stake in this because, you

3     know, like Tony Paris apparently reached out to a client that

4     he represented before, I reached out to a client that I

5     represented before, as of December when the class certification

6     was denied, because I represented her during these robo-fraud

7     years and I worked to reverse that determination, but also

8     because I litigated the Zynda case and I worked to reverse

9     those determinations of 20,000, 40 -- 20,000-plus people who

10    were robo adjudicated in that system.

11         And in the meanwhile, other counsel have filed

12    additional cases to recover what -- the damage that was done,

13    aside from the equitable relief that was gained in Zynda for

14    the actual monetary damage that was done to the people out

15    here.  And I applaud that and I have been willing to sit back

16    and grateful for all the people that are willing to come

17    forward and pursue this on behalf of the tens of thousands of

18    people that were defrauded by an intentional robotic system.

19         THE COURT:  Mr. Blanchard, in Zynda, weren't all of

20    the claimants and class members made whole with respect to what

21    the State took from them as opposed to any other consequential

22    damages?

23         MR. BLANCHARD:  They were not made whole.  They

24    were -- under the Zynda settlement and review, they were --

25    most all of them have, at this point, been -- had their money

1      returned that was unlawfully seized from them, but that -- I

2      would not argue that that made them whole at all.

3              And just to talk a little bit more about that, the

4      Zynda action was on behalf of representative plaintiffs and

5      institutional plaintiffs.  It wasn't a putative class as we're

6      talking about here.  So the settlement was between those six or

7      seven individual plaintiffs and a couple of institutions and

8      the State, the agency.

9              THE COURT:  All right.  I guess I used the term

10     "class" carelessly --

11             MR. BLANCHARD:  It was class relief, we can say that.

12             THE COURT:  -- with that group.  But, for example, if

13     an individual was wrongfully adjudicated as having committed

14     fraud and an income tax refund was intercepted by the State,

15     wasn't all of that returned as a result of the Zynda

16     settlement?

17             MR. BLANCHARD:  For the class that we're talking

18     about, yes, predominantly, yes, there were.  What wasn't

19     included in the Zynda settlement were people that were -- who

20     filed bankruptcy and had already been adjudicated in that

21     system.

22             THE COURT:  Yeah.

23             MR. BLANCHARD:  Or people who had appealed their

24     unemployment claims and been found later guilty of fraud.  But

25     for those that were robo adjudicated, it was reviewed and, as I

1  understand it at this point, there is some money that has

2  still not been returned because people could not be found, but

3  upwards of $20,000,000 that was returned.

4          THE COURT:  So what's the nature of your client's

5  claim, or the nature of your client's damages, let me put it

6  that way?

7          MR. BLANCHARD:  Well, I mean, to be blunt with you, I

8  think they are pedestrian in nature, and that's why they are

9  common.  They share a commonality with a lot of the people that

10 were victims of this kind of fraud.

11         THE COURT:  Well, describe them for me, please.

12         MR. BLANCHARD:  Well, she didn't find out about this

13 fraud determination until she became unemployed again.  And

14 she went into the office, which coincidentally had to be --

15 it occurred around the same time that the fraud adjudication

16 occurred, and she was denied benefits at that time or delayed

17 benefits at that time because there was a fraud adjudication

18 in that benefit year.  So once somebody is found guilty of

19 fraud, they are unable to access the system when they need it

20 most for unemployment benefits.

21         THE COURT:  Did she ultimately get her benefits?

22         MR. BLANCHARD:  She did ultimately get her benefits.

23         THE COURT:  And so what's her pecuniary loss here?  I

24 mean, characterize it any way you'd like.  I'm just trying to

25 get a handle on it.

1          MR. BLANCHARD:  Well, there's certainly emotional

2     distress.  There's legal fees that she invested in getting this

3     reversed, which took six months or more to get to a hearing.

4     Not six months of work, but six months to get to a hearing and

5     get that fraud determination reversed.  There is the time value

6     of money and the delay in receiving benefits that affected a

7     lot of people and affected her, and really, at the crux of what

8     unemployment benefits are for.

9          And so I think that that loss of time is -- should be

10    looked at differently than somebody that loses a percentage of

11    money out of their bank account or something else.  We are

12    talking about social safety net money that people -- that is

13    supposed to be there on that first week or second week after

14    you suddenly lose employment, and that's for a good public

15    policy concern there.  It's not supposed to be something that's

16    recovered later on.

17          THE COURT:  Yeah, okay.  I understand.  You have

18    answered my question.  I appreciate the explanation.

19          Any further argument, Mr. Blanchard?

20          MR. BLANCHARD:  Unless -- I'll save -- I'll save my

21    time for rebuttal.  Thank you.

22          THE COURT:  Okay.  Mr. Stidham, please.

23          MR. STIDHAM:  Thank you, your Honor.

24          First, if I could, I would like to address China

25    Agritech, because I do think it cuts against both group of

1  intervenors.  And then my intent, your Honor, would be also

2  to touch on futility and timeliness in that.

3        First --

4        THE COURT:  Well, first of all, would you address,

5  Mr. Ernst's argument that he is on a little bit of a different

6  footing, and because he filed his motions before the class

7  certification ruling he is in a different position than a

8  newcomer, for example, that wants to start a new class action

9  altogether?

10        MR. STIDHAM:  Yes, your Honor.

11        I don't think he is on this -- he is on different

12  footing for this reason:  The citation from China Agritech that

13  I understand Mr. Ernst to be relying on, I think, is conflating

14  tolling and timeliness.

15        China Agritech stands for the proposition that once a

16  decision is made on certification and there is no carveout

17  indicated for folks who filed their motion either before or

18  after that certification ruling in that case, but once the

19  ruling is made on certification then the class claims, as

20  opposed to the individual claims, are untimely, but the

21  individual claims have, in effect, been tolled.

22        And that then, I think, your Honor, that distinction

23  is reflected in the language that I believe Mr. Ernst cited and

24  I believe that Mr. Blanchard also relies upon which talks in

25  terms of timely moving to file a case or to intervene.

1          Both -- that language is talking about moving after

2    the certification decision to file your claim in an individual

3    capacity either in a new claim or seeking intervention.

4    And when one seeks intervention, not, again -- again, not

5    intervening to assert a class claim but an individual claim,

6    then they need to meet all the standard requirements for

7    intervention.

8          And I will admit that the case that Mr. Ernst was

9    reading out of Westlaw, we did not have a chance to review or

10   analyze, but based on how he has characterized it and based

11   on --

12         THE COURT:  I think it was Lexis, actually, and

13   Mr. Ernst is supposed to be looking up the Westlaw cite for

14   me now.

15         MR. STIDHAM:  But your Honor, I hadn't seen that case

16   before or looked at it, and so all I am going on, your Honor,

17   is based off of how it was characterized by Mr. Ernst.

18         It sounds to me that the characterization is again

19   focused on that difference that I just pointed out about

20   individual claims versus class claims, and there is no

21   distinction, again, in China Agritech that makes that

22   distinction.

23         And it simply, you know, wouldn't make sense, your

24   Honor, because what China Agritech was getting at by making a

25   distinction between class claims and individual claims was

1   getting over this endless cycle of -- excuse me -- to both

2   address the issue of individuals who relied upon the class

3   claim but also the competing need to move forward with regard

4   to the class action and avoiding this endless cycle of class

5   actions being filed one after another based on the tolling.

6          And what Mr. Ernst has talked about here is not --

7   there is no distinction that advances the concept behind China

8   Agritech that would be advanced by recognizing this distinction

9   that Mr. Ernst is moving forward on.

10          And, your Honor, I am happy to continue to try and

11   address that if there are some more questions on that, but

12   I think that segues also into the fact that Mr. Ernst's

13   clients, even if they did file before this Court's ruling

14   on certification, they still need to meet the timeliness

15   requirements to intervene.  There is no out or free pass for

16   meeting that hurdle.

17          THE COURT:  Oh, are you referring to timeliness from

18   a statute of limitations standpoint or from an intervention

19   standpoint?

20          MR. STIDHAM:  Intervention, your Honor.  I think there

21   is -- in the intervention.  So even if -- even if this was

22   filed before the certification, if we move away from China

23   Agritech --

24          THE COURT:  I get it.

25          MR. STIDHAM:  -- he has still got to meet his

1    obligations, which here, you know, we have got -- and it's

2    laid out in the briefing, your Honor, I won't belabor it too

3    much -- but we have got the same lawyers, the same individuals,

4    they are charged with knowledge, and they just sat on this for

5    years.

6              And this assertion that Mr. Ernst is making about

7    the timing or the filing of the motions to dismiss based on

8    standing, he was on notice through the affirmative defenses

9    asserted by CSG.  He was on notice by the depositions.  All of

10   this is set out, your Honor -- and again, I hesitate to belabor

11   it -- in a number of briefs, and the Court is aware of how

12   longstanding that issue was there.

13             And, your Honor, in addition to simply that timeliness

14   issue, futility is a factor for both Mr. Ernst's clients and

15   Mr. Blanchard's clients, because they are not seeking to

16   intervene in this case just to assert individual claims.  They

17   are seeking to intervene to assert class claims.

18             They've both made it very clear in their briefing, and

19   I think they have made it clear in oral argument here, that

20   what we're talking about are efforts by this group -- but these

21   group of individuals to try and take another shot at class

22   certification.

23             And despite Mr. Blanchard's characterization of

24   this Court's ruling as being one based on adequacy, that is

25   certainly not our reading.  There was a very broad rejection of

1    certification under these individual facts for a broad variety

2    of reasons, and neither Mr. Ernst's characterization of these

3    clients or Mr. Blanchard's characterizations of his clients do

4    anything to address the certification issue here.

5           This Court denied -- well, let me take it in

6    categories.  Mr. Ernst seems to assert that because he is

7    bringing forth these clients that do not have bankruptcy issues

8    that they are somehow going to help the certification cause if

9    this Court were somehow to revisit it.  That's not the case.

10          This Court went through the analysis, found and

11   characterized what potentially was a commonality question, and

12   then found typicality, adequacy, superiority, and predominance

13   issues for the defendants for whom there were no bankruptcy

14   issues because of the individualized facts inherent regarding

15   notice and the other components that this Court and all the

16   attorneys on this have gone through in great detail.

17          THE COURT:  You mean to say for the plaintiffs for

18   whom they have no bankruptcy issues?

19          MR. STIDHAM:  Yes.  That the Court found that even for

20   those plaintiffs for whom there were no bankruptcy issues, the

21   problems with certification persisted; therefore, your Honor,

22   Mr. Ernst's representation that these two proposed intervenors

23   that he is presenting don't have bankruptcy issues, that does

24   not advance the ball at all.  It does not address the issues

25   that existed and caused there to be a denial for certification.

1           Nor does Mr. Blanchard's proposed intervenor do

2    anything to address the issues that resulted in a denial of

3    certification.  Mr. Blanchard characterizes his client as

4    having had an adjudication based on income spreading, while

5    we already had a plaintiff who raised that issue, and that

6    didn't get across the line for certification.

7           And then also, your Honor, and I apologize for

8    diverting a little bit to this quickly, but neither of the --

9    none of the proposed intervenors in here provides -- provided

10   proposed pleadings in any detail.  And that really puts the

11   defense at a disadvantage.

12          But what we do see and what Mr. Blanchard has

13   characterized is that his client not only had this income

14   spreading issue that he was talking about, but was denied based

15   on a failure to provide a responsive form, which was the issue

16   that ran across all of the other plaintiffs, your Honor, at the

17   time you made the certification issue.

18          This plaintiff changes nothing about that, and that

19   all of those individuals, your Honor, that you addressed

20   who had failed to provide the forms, that's what led, to our

21   understanding, this Court into its analysis of the typicality

22   issues, the superiority issues, and the other issues that

23   resulted in a denial of certification.

24          So the proposed intervenor that Mr. Blanchard is

25   bringing forward does not advance the ball at all.  It's just

1    another issue of futility.  And Mr. Blanchard, I know he raised

2    the word "superiority," but he did not go through the analysis

3    or match that up with the type of findings that this Court's

4    reached on the superiority and predominance issues.

5              And there is no indication that if -- even if the

6    China Agritech was ignored, from our perspective, if there was

7    some justification for his clients to come in here, it would be

8    futile to achieve the only objective that is really being

9    sought here, your Honor, which is to revisit the class

10   certification.

11             And finally, your Honor --

12             THE COURT:  Well, what's your position, Mr. Stidham,

13   on whether they should be allowed to intervene to assert

14   individual claims?

15             MR. STIDHAM:  I think it's untimely, your Honor.  You

16   know, we do -- as the Court rightly --

17             THE COURT:  So same arguments with respect to the

18   other factors?

19             MR. STIDHAM:  Same arguments.  And, your Honor, I

20   would touch upon this one, which I don't think I have

21   addressed, which would be prejudice.  We heard both counsel

22   talking in terms of no prejudice to the defendants because, you

23   know, there would need to be work on these claims even if they

24   were brought in separate actions.  That's not the appropriate

25   analysis under intervention as to whether or not there is

1    prejudice or delay.  You look within this case.

2           It would always be the case that a party would be able

3    to meet that standard if they said, "Hey, if I file a separate

4    case it's going to create work."

5           And I would point the Court to the Lindholm case from

6    the Ninth Circuit that we cited which goes into, I think, some

7    detail on that.  And the reason I highlight that Court -- that

8    case, your Honor, even though it's in the Ninth Circuit, in

9    addition to addressing this and rejecting this argument that

10   because another case could be filed there is no basis to assert

11   either delay or prejudice in this case, in an addition to doing

12   that, that case looked in particular at this argument that's

13   being raised that somehow intervention is different for

14   purposes of tolling of a statute of limitations than it would

15   be in filing a separate case.

16          And that's the one case, your Honor -- again, in the

17   Ninth Circuit -- but that's the one case which we believe is on

18   four -- on all fours with the argument that Mr. Blanchard is

19   asserting with regard to intervention somehow being different

20   for purposes of the statute of limitations when it comes to

21   China Agritech.

22          And the Ninth Circuit is simply following the logic

23   that it would make no sense to set out the principle that

24   is driving China Agritech and create this loophole for

25   intervention.

1          And so, your Honor, I would just direct the Court's

2   attention to that one.

3          THE COURT:  I have got it here -- no, I don't.  Just

4   give me the citation so I can review it again, please.

5          MR. STIDHAM:  Certainly, your Honor.  It's the

6   Lindholm case, and it is 2019 Westlaw 4640684.  And the

7   discussion, your Honor, is at *7 that we would highlight.

8          THE COURT:  Okay.  Thank you, Mr. Stidham.

9          MR. STIDHAM:  Thank you, your Honor.

10          THE COURT:  Anything further?

11          MR. STIDHAM:  No, your Honor.  Thank you.

12          THE COURT:  Mr. Rosenfeld?

13          MR. ROSENFELD:  Thank you, your Honor.  Let me also

14   start with the China Agritech and American Pipe issue, because

15   I think that those are critical here, and I will also then

16   discuss the untimeliness.

17          First, let me back up for a second, and because I

18   think that it's important to understand that both American Pipe

19   and China Agritech were really very policy-driven decisions by

20   the Supreme Court.

21          American Pipe, in American Pipe the Supreme Court held

22   that individual statutes of limitation were tolled pending

23   the -- pending the pendency of a class certification motion

24   because they wanted to protect the Court's docket from an

25   onslaught of individual suits seeking to preserve statutes of

1    limitation while that motion was pending.

2          Likewise, China Agritech was also policy driven.  The

3    Supreme Court protected both litigants and the courts from

4    unending potentially decades of litigation that would result

5    from serial class actions if the statute of limitations were

6    tolled for class claims as well as the individual claims.

7          So the Court in China Agritech was very clear that

8    while individual claims are tolled while a class action is

9    pending, class claims were not.

10          And let me back up a second before I go further and

11    talk about the specific application.  But if you look at

12    American Pipe, it's important to understand, particularly for

13    purposes of this case, that while the Supreme Court was clear

14    that the statute of limitations was tolled, that did not affect

15    the timeliness aspect of intervention.

16          In fact, Justice Blackmun very specifically, in

17    his concurrence to the American Pipe decision, stated that

18    intervention even post class certification, when the statute

19    of limitation wasn't an issue, could still be denied if the

20    District Court, in its discretion, concluded that intervention

21    would unduly delay or prejudice the adjudication of the rights

22    of the original parties.

23          THE COURT:  Yeah, but that has nothing to do with

24    China Agritech, does it?

25          MR. ROSENFELD:  It does not.

1        THE COURT:  All right.  Well, let me ask you a

2  question about the application of that constriction that

3  China Agritech basically ushered in or clarified, however you

4  want to characterize it.

5        Would this motion or would your argument be different

6  if it were to take place before I decided the class

7  certification issue?

8        In other words, would China Agritech have any impact

9  whatsoever on this?

10       MR. ROSENFELD:  I don't believe so, your Honor.  If

11  these -- if --

12       THE COURT:  Well, I guess I asked a compound question.

13       So your answer --

14       MR. ROSENFELD:  Let me explain.

15       THE COURT:  Let me object and sustain on my question.

16       Would the argument be any different if the motion were

17  presented before I decided the class certification question?

18       MR. ROSENFELD:  I think it would be, which is why, in

19  response initially to Ms. Colvin and Mr. Bell's motions, we did

20  not raise China Agritech.  And I think if you look at --

21       THE COURT:  Well, if that's the case, Mr. Rosenfeld,

22  shouldn't Mr. Ernst's motion be looked at as if class

23  certification hasn't been decided yet, since he filed the

24  motion before I made the decision?

25       MR. ROSENFELD:  I don't believe so, your Honor.

1          THE COURT:  Tell me why.

2          MR. ROSENFELD:  Because Mr. Ernst filed his motion

3    at his own peril, and I'll tell you why.

4          Mr. Ernst, who represents the plaintiffs here, and who

5    represents both of the two intervenors, knew full well about

6    the claims in this case and the affirmative defenses that

7    the -- that the parties were making.  In fact, CSG made an

8    affirmative defense on real party in interest, which is why

9    he wanted to bring the claim at the very outset of the case.

10          Mr. Ernst -- and there is a case, and we cite it in

11   our brief, your Honor, it is Clark versus Baptist Memorial

12   Healthcare, it's 427 F. App'x 431 at 433 to 35, it's a 2011

13   Sixth Circuit case, and it said when an intervenor has the same

14   counsel as the named plaintiff whose adequacy in representing

15   the putative case is called into question, the intervenor has a

16   duty to move for intervention immediately.  He is charged with

17   the knowledge of that counsel.

18          And so what happened here?  Mr. Ernst stood on the

19   sidelines with these intervenors during years of discovery

20   until there were motions to dismiss filed, there were motions

21   for summary judgment filed, there were -- and even -- what's

22   interesting is, if Mr. Ernst was so concerned about this Court

23   taking up intervention before class certification, he should

24   have filed the intervention before he filed the motion for

25   class certification.

 1              A motion for class certification was filed in April of

 2    2020.  I believe it was on April 24, 2020.  And these motions

 3    weren't filed until August or September.  So, your Honor, I

 4    think that Mr. Ernst, in waiting for such a long time, filed

 5    the motions at his peril that the Court may or may not take up

 6    the motions for intervention until -- until after it determines

 7    the previously filed motion for class certification.

 8              THE COURT:  So you're saying that the motions were

 9    decided in the order in which they were filed, and therefore,

10    the fact that argument took place after a decision on one

11    shouldn't make any difference; is that what you're saying?

12              MR. ROSENFELD:  That's -- that's what I'm saying, in

13    effect.

14              THE COURT:  All right.

15              MR. ROSENFELD:  That he -- he filed -- if he was so

16    concerned, he should have filed it earlier.

17              Now, I think -- I think that that motion has lots of

18    issues on its own outside of China Agritech, as we have raised

19    in our opposition brief.  It has timeliness issues, it has

20    prejudice issues, you know, it has a number of issues which are

21    raised in the brief and which I can go through.  But I think

22    once the Court decides -- the important thing is, once the

23    Court decides class certification, which it has, the Court --

24    the Court is right, the case is stripped of its class action

25    status.  It is an individual case.

```
1              And what we can analyze, the effect of the
2     intervention on the individual claims and whether those
3     individual claims should be inter -- you know, should be dealt
4     with on a consolidated basis versus an individual action, but
5     under China Agritech the Court cannot then deal with a -- as
6     the -- I guess as they put it, a renewed motion or a new motion
7     for class certification, because what that would do, if the
8     Court were to permit leave for the plaintiffs to file some sort
9     of renewed motion for class certification with new plaintiffs,
10    with new class definition, with new theories, with -- maybe
11    with -- even with new counsel who alleges -- who makes a
12    different argument, that -- that basically takes that China
13    Agritech decision, which was decided for a very particular
14    policy purpose to prevent these ongoing, everlasting class
15    motions, and it creates a loophole that really swallows the --
16    swallows the rule as a whole and really contradicts the --
17    what the Supreme Court was looking for.
18             So I think that the analysis with respect to China
19    Agritech is just as valid with respect to Ms. Colvin and
20    Mr. Bell as it is with Ms. Heathcote.  All of them are
21    precluded from bringing class claims.
22             Now, they still have remedies, as the Court
23    recognized.  We don't deny that they have remedies, that they
24    have -- they can bring an individual claim.  We do seek to
25    prevent them from intervening here because we think that,
```

1    number one, it's untimely as set forth by, you know, the Sixth

2    Circuit rules.  We went through it at length in the brief.  I

3    don't -- I'm not going to repeat all that rationale, but the

4    case is four years old.  We have gone through a lot of

5    discovery.

6           But I think what's important here is that by letting

7    them intervene here it would greatly prejudice CSG, and it

8    would prejudice CSG because CSG is entitled to finality in this

9    case.  CSG is entitled to have the cloud that's been hanging

10   over its head finally adjudicated.

11          And what intervention of the individual claims in this

12   case would do is it would take those -- this case, which has

13   already been pending for nearly four years now, and it would

14   delay it a minimum of six to nine months because we would need

15   to do additional written discovery, we would need to resubpoena

16   the State with regard to the new plaintiffs, we would need to

17   take additional depositions, we would need to refile motions

18   for summary judgment, and I don't know what else would be

19   filed.  I mean, this would be a substantial, maybe nine-month

20   delay, at least, to resolve these issues.  This case --

21          THE COURT:  Mr. Rosenfeld, let me ask you to stand by

22   a minute.  I have to go silence another computer.  Just take

23   two seconds here.

24          MR. ROSENFELD:  Absolutely, your Honor.

25      (Pause in the proceedings at 3:59 p.m.)

```
 1            THE COURT:  All right.  Sorry about that.  I am, like
 2    you, dealing with the wonders of technology here.
 3            Go ahead.
 4            MR. ROSENFELD:  I understand, your Honor.  I was in
 5    the middle of an oral argument the other day and my computer
 6    froze for about five minutes and a colleague of mine had to
 7    take it on, so I understand the technology.
 8            THE COURT:  Well, you know, I would rather have these
 9    proceedings in person.  I think all of us would, except perhaps
10    Mr. Stidham, but this is -- this is sort of a distant second
11    best, I think.  But maybe for purposes of these arguments,
12    it's not so bad.
13            Anyway, go ahead and wrap it up, Mr. Rosenfeld.  I
14    understand your position.
15            MR. ROSENFELD:  Sure.  Sure.
16            So, your Honor, you know, the prejudice obviously is
17    why numerous courts have denied intervention as of right and
18    permissive intervention when parties have stood on the
19    sidelines.
20            And I -- we cite the Stupak Thrall case that the Sixth
21    Circuit decided where they denied intervention filed after the
22    close of extensive discovery on the eve of filing dispositive
23    motions.  And we cite -- we also cited in our brief your case,
24    the Coalition to Defend Affirmative Action, where this Court
25    denied a motion to intervene by a late attempted intervenor who
```

1    had been aware of the case throughout but waited until after

2    discovery and the filing of the dispositive motions.

3              And you know, as the Sixth Circuit emphasized in the

4    Michigan Association for Retarded Citizens case, which we cite

5    in our brief, untimely motions like those of the movants here

6    must be denied.

7              So I guess, your Honor, I will leave it at that.  I

8    think that our position is that China Agritech bars the only

9    claims that the plaintiffs seek to make here.

10             And I will note one other quick thing on the issue of

11   whether -- of how you should deal with the motions that were

12   filed before the argument on class certification but were filed

13   after the class cert motion.

14             It's interesting that Mr. Ernst never raised, during

15   the class certification motion, that he believed it was

16   imperative that those motions get decided beforehand.  He

17   never stated that he thought that the original representative

18   plaintiffs were inadequate and should be -- and that his motion

19   should be stayed pending resolution of this issue, nor did he

20   seek reconsideration after your Honor made the ruling on that

21   basis.

22             So I believe for all those reasons, in addition to the

23   reasons that I raised earlier, China Agritech clearly applies.

24   It applies to bar any class claims.  And to the extent that the

25   Court is looking at intervention beyond China Agritech even on

1    an individual basis, we believe for the reasons set forth in

2    our brief, the motions -- the movants' motions are untimely and

3    should be precluded on that basis and they should, if they --

4    if they deem appropriate, file individual actions.

5           Thank you.

6           THE COURT:  Thank you, Mr. Rosenfeld.

7           Ms. Taylor?

8           MS. TAYLOR:  Thank you, your Honor.

9           Much of what I was going to argue has already been

10   discussed, so I think I'm just going to limit my area of

11   discussion just to a couple of quick points, and that is, that

12   the futility issue, I think, is huge here.  If they are seeking

13   to intervene in the class, they still have the problem that the

14   Court determined that there needs to be claimant-specific

15   answers to a number of questions.

16          While Mr. Blanchard points out that he has got this

17   evidence that's attached to his motion and it establishes that

18   his client was auto adjudicated and she was reversed, there's

19   still some inherent problems in all of this, and one being, as

20   the Court pointed out in its order denying class certification,

21   that the pivotal issue in a due process claim is whether or not

22   the UI furnished adequate process through MiDAS at all of these

23   stages.  That's necessary to determine liability for class

24   members.  That's still a big issue here.

25          So no matter what's attached to these motions, there

1    still are all these questions that we have to ask specifically

2    Ms. Heathcote.  She was timely in her appeal.  So while she

3    claims she didn't receive notices, she was able to file an

4    appeal and get before an ALJ, request a hearing before an ALJ

5    within six days of the date of her determination.  So she

6    received the determination based upon her appellate process

7    taking place for her.  So defendant --

8              THE COURT:  Actually, she won the appeal, didn't she?

9              MS. TAYLOR:  She did, your Honor.  And she did.  But

10   the point in all this is, she wants to say she didn't receive

11   the factfinding, so therefore, she was adjudicated because she

12   did not respond to factfinding.

13             That's questionable when you think, well, the same

14   address is on the factfinding as is on the determination.  If

15   she received the determination one must question why she's

16   claiming that she didn't receive the factfinding.  So again,

17   the question --

18             THE COURT:  Well, that's sort of a -- that's sort of a

19   merits argument, really.  I mean, but how does that have any

20   bearing on the intervention issue?

21             MS. TAYLOR:  Because it goes to the futility issue,

22   your Honor, I believe.

23             THE COURT:  Oh, futility. Okay.  All right.

24             MS. TAYLOR:  Right?  So as you pointed out, we still

25   have a superiority issue because of all these individual

1    claimant answers that are required, no matter who is seeking to

2    intervene.

3            And number two, I do note that in the reply for

4    Heathcote, Mr. Blanchard noted that the only question here

5    was whether or not she was -- Ms. Heathcote was perfunctorily

6    accused and adjudicated of fraud without any evidence.  He

7    believes that's the only question with respect to his request

8    for intervention.

9            And again, as I pointed out, there is a number of

10   other questions, but today I heard that it seems to me that

11   he is also advocating that to intervene she would become the

12   class representative for this particular class.  But his reply

13   indicates that that's not what he is asking for.  So I'm kind

14   of uncertain as to really what the position is there for

15   Ms. Heathcote.

16           But it seems to me that in order to -- for Mr.

17   Blanchard to state what he has in his reply, she certainly is

18   seeking to become the class representative for this small class

19   of individuals that the Court indicated could possibly be

20   appropriate for class certification.

21           So -- and I think in that regard, again, we go back to

22   the superiority issue.  She just can't overcome the problems

23   that the Court pointed out.

24           Same thing for Bell and Colvin.  I think they have the

25   same issue, particularly Ms. Colvin.  She complains that she

1    didn't receive the factfinding, but it was sent five months

2    after she stopped receiving benefits.  So there again, you have

3    a question of, did she truly not receive this or is this simply

4    based upon her neglect?

5            So I think for those reasons, your Honor, and

6    everything that we have stated in our brief, I believe that

7    these requests to intervene should be denied.

8            Unless the Court has any other questions, I'm not

9    going to repeat what's already been stated.

10           THE COURT:  Thank you, Ms. Taylor.  I appreciate that.

11   No, I have no additional questions.

12           MS. TAYLOR:  Thank you, your Honor.

13           THE COURT:  Ms. Pendrick, would you like to present

14   any additional argument?  I understand both you and Ms. Taylor

15   represent State defendants, but they are different, so you have

16   a right to go ahead and present, if you would like.

17           MS. PENDRICK:  Thank you, your Honor.  We do represent

18   different clients, but given that I am the fourth in line of

19   the defendants arguing, I think everything that I was going to

20   say has been addressed.  I won't waste the Court's time with

21   any more argument unless it has questions.

22           THE COURT:  Thank you, Ms. Pendrick.

23           I will take, I guess, a point of privilege here and

24   tell you that I was in a criminal trial before Judge DeMascio

25   many, many years ago and one of my co-defendants had to present

1    his -- counsel for one of the co-defendants, co-counsel had to

2    present a closing argument after seven other defense attorneys,

3    including me, had already presented, and he started off

4    explaining to Judge DeMascio that he felt like Zsa Zsa Gabor's

5    seventh husband.  He said he knew what he had to do, he just

6    didn't know how to make it interesting.  And Judge DeMascio

7    did not take kindly to that, but times have changed.

8              In any event, I appreciate that.

9              Let's go in reverse order here.  Mr. Blanchard and

10   then Mr. Ernst.

11             MR. BLANCHARD:  Thank you, your Honor.

12             So to go in reverse order, maybe take the last

13   question raised about the policy of American Pipe first here.

14             I think what we do agree with counsel on the other

15   side is that American Pipe and China Agritech do come out of

16   policy preferences.  They are driven by policy preferences

17   and -- but yet there is a distinction in that American Pipe

18   policy preference is precisely because there are certain cases

19   where you do want potential intervenors, potential other

20   plaintiffs to sit by the sidelines, so to speak, as defendants

21   say.

22             The policy that American Pipe is indoctrinating there

23   is really that you want people to stand down while a class is

24   being adjudicated and not rush.

25             And the policy in China Agritech, I agree, is that we

1    do not want to see successive actions, one filed after another,

2    and the defendant, after one class action is denied, the

3    defendant is sued again in other case in another court and is

4    subject to discovery all over again on the same claims.  That

5    makes sense.  From a policy perspective, that makes sense.  But

6    that is --

7              THE COURT:  Well, how is that any different than a

8    person who is a putative class member, class certification is

9    denied, and then the putative class member wants to step up as

10   a class representative and try again?

11             MR. BLANCHARD:  Well, it's different in a couple of

12   ways.

13             One, we're talking about a pending case where the work

14   is already before your Honor.  You're aware of the case.  Not

15   just that it's pending, but there is a lot of discretion that

16   the Court has.

17             Obviously, as we've talked about, the Court may not

18   want to entertain renewed class certification motions.  The

19   Court may decide that's inappropriate or futile even.

20             THE COURT:  Well, during the -- during the interregnum

21   there, while others were arguing, you haven't found a

22   procedural rule that lets you take another crack at this,

23   have you?

24             MR. BLANCHARD:  I'm sorry, I was just about to do that

25   and then you called me out first.  I did want to focus on those

1    other arguments.

2         THE COURT:  No, I will acknowledge, 54(b) says that

3    until there is a final judgment I can revisit any interlocutory

4    order that I have entered in the case, but that's different

5    than -- that speaks to the authority of the Court.  That's

6    different than a rule that -- for example, Rule 60(b) or

7    something like that that provides a party with the opportunity

8    to seek reconsideration.

9         And that, that's what I don't see here, particularly

10   where we have a local rule under 7.1(g) or (h), I forget which

11   it is, that limits reconsideration to application within

12   14 days.

13        So I'm not sure where you're going to go with that,

14   Mr. Blanchard, but I guess that's sort of rhetorical.  It's not

15   so much of a question.  I have interrupted your rebuttal

16   argument, so go ahead.

17        MR. BLANCHARD:  That's fine, your Honor.

18        I do think what I -- why you brought that up, I think,

19   is because I was going through the point that this is a matter

20   that we're relying very much on the discretion of the Court,

21   not just in whether there would be leave to file a renewed

22   motion or a renewed complaint as to class action, but whether

23   there would be additional -- you know, defendants talk about

24   the prejudice, whether there would be additional discovery, how

25   much discovery.

```
 1        We think -- along with Mr. Ernst, we think it would be
 2   very minimal.  We are just talking about files here and one to
 3   two depositions that I could take in a single day.
 4        THE COURT:  Yeah, but there's more to it than that,
 5   Mr. Blanchard.  I don't mean to keep engaging you on this, but
 6   if you're in the defendants' shoes, what they are going to
 7   say or what they have said is that they are at a tremendous
 8   disadvantage because they have engaged in discovery, they
 9   have litigated this question, they have laid their cards on
10   the table with respect to class certification, I have pointed
11   out the defects, and now as a new person on the block you can
12   come forward with all of that information, address those
13   defects, and try again.  That's the prejudice I think they
14   are referring to.
15        MR. BLANCHARD:  Well, I don't think that is an undue
16   prejudice, your Honor.  I don't think it's an undue prejudice,
17   because I think the work here has been done and is not -- the
18   work and the effort and the analysis and the so-called cards
19   that defendants put on the table really relate to liability,
20   causation, bigger picture issues that would be exactly the
21   same for Ms. Heathcote or any other intervenor here.
22        THE COURT:  All right.
23        MR. BLANCHARD:  So as I was saying with American Pipe,
24   it's one thing to say under China Agritech that the policies,
25   we don't want successive class actions, but what defendants are
```

1    arguing for is a policy that would undermine American Pipe.

2         What this would mean is that Heathcote, intervenors,

3    others like that would actually have to rush to file competing

4    class actions, really, up front within the statute of

5    limitations in the -- out of concern that one class action

6    might not have an adequate class representative.

7         And it's actually -- to interpret China Agritech in

8    this broad policy way is contrary to the policy of American

9    Pipe.  What we're saying, what you would be saying is,

10   Heathcote should have filed this a couple of years ago and sat

11   back and had a competing class action or somehow stayed it and

12   waited until the adequacy issue was determined in this class

13   action.

14        And yes, not just the adequacy issue, I'll address

15   that in a minute, the futility arguments there, but I do think

16   what defendants are pushing is actually contrary to the

17   American Pipe policy and contrary to the dictates of American

18   Pipe that says a timely motion to intervene should be filed

19   after class certification is decided.

20        And that doesn't say anything as to whether the Court,

21   in its discretion, with a lot of discretion as to how discovery

22   would proceed, how many depositions, if any, would be granted,

23   what pleadings would be revisited, whether any of the summary

24   judgment pleadings would be revisited, those are all

25   hypotheticals that defendants put out there and say, well,

1    there could be a lot of prejudice.

2         But the Court has inherent authority to manage its

3    docket and decide all those questions in a way that's fair to

4    everybody, including Ms. Heathcote and the thousands of people

5    like her that were affected by what I think almost everybody

6    agrees was a constitutional violation here.

7         And the question is, can it be adjudicated as a group?

8    So to move on to that question that's been talked about as a

9    futility argument or superiority and predominance argument,

10   exactly what I am talking about is that Ms. Heathcote's claim

11   as to the class we're talking about here would satisfy those --

12   those concerns of the Court as well, because of the -- because

13   it was all batched, because we're talking about somebody --

14   that the computer was programmed to make false information

15   about weekly earnings and then to accuse somebody of fraud

16   based on that.  There really isn't a lot of other analysis that

17   goes in there.

18        And Ms. Taylor raises this issue of whether there was

19   notice of the questionnaire and she didn't respond to it.  It's

20   irrelevant whether somebody responded to the questionnaire.

21        One, they didn't have to.

22        Two, they were told in the questionnaire that a

23   decision would be made based on available evidence, not that

24   the machine would create false evidence and a decision would be

25   made based on that.  They were told that a decision would be

1    made based on the evidence, not that you would be defaulted to

2    guilty of fraud if you don't answer the questionnaire.

3            Three, the questionnaire explicitly says there are

4    criminal penalties that are associated with fraud and with a

5    false statement on this questionnaire.

6            There is a -- there is a protection against

7    self-incrimination that is implied here.  No court, not even

8    the agency, has ever suggested that there is a requirement to

9    respond to the questionnaire.

10           And so that's the class of people that Heathcote

11   seeks to represent.  It's irrelevant whether they got the

12   questionnaire, didn't get the questionnaire, were able to,

13   you know, appeal in time or not.

14           It violates procedural due process in the same way if

15   you said, well, if somebody is accused of a misdemeanor we're

16   just going to assume you're guilty.  And if you can appeal in

17   time, that can be corrected, that's -- that's fine, that's --

18   that's within your due process rights.  That's just not the way

19   our constitutional system works here.

20           So we know there is a violation.  We know there is a

21   commonality.  In this case, as to the group that I'm talking

22   about, there is superiority.  And there would be injustice that

23   would be done if we couldn't build on the work that's already

24   here and adjudicate these claims as a group.

25           As to any of the burden that we're talking about, that

1    is within the discretion of the Court to manage its docket, to

2    manage discovery, and --

3              THE COURT:  Mr. Blanchard, you're repeating yourself.

4              MR. BLANCHARD:  I am.  I was just trying to make it

5    into a summary, but I'll just leave it right there.  I repeated

6    myself.

7              So thank you for listening.  I do believe the best

8    way to proceed is as a group.  I do believe that there are

9    mechanisms to address a renewed motion for class certification,

10   and I appreciate your Honor's time today.

11             THE COURT:  Thank you for your presentation,

12   Mr. Blanchard.

13             And so we will end where we began with Mr. Ernst.

14             MR. ERNST:  Thank you, your Honor.

15             Your Honor, I think everybody would have to agree that

16   if the Court decided the motion to intervene before the motion

17   for class cert, then China Ag would not apply.

18             So what the defendants urge is that we have this kind

19   of arbitrary decisionmaking process by which even though the

20   plaintiffs filed their motions or the potential intervenors

21   filed their motions to intervene prior to a decision being

22   made, that because the Court decided the class cert motion

23   previous to the motions to intervene, then now China Ag applies

24   and the claims cannot be brought as they are barred by the

25   statute of limitations.

```
 1              The same can be said about the sequence in which the
 2   motions are filed.  It's just arbitrary that if the class
 3   cert motion was filed before the motion to intervene, then
 4   it's necessarily going to get decided before the motion to
 5   intervene.  That's not true, for one thing.  The Court can
 6   decide the motions in any order it wants.
 7              But it just seems to be a real arbitrary process,
 8   instead of an essentially bright-line rule that says if you
 9   file your motion to intervene before the class cert motion is
10   decided, then you get the tolling provisions of American Pipe.
11   And nothing -- nothing in China Ag prevents that from
12   happening.
13              And also, I would note that if you have that type of
14   bright-line rule, that assuages all the concerns about the
15   cases dragging on for ten years and one after another
16   successive class actions, because all the motions to intervene
17   have to be filed before the first determination of the class
18   action -- of the motion for class certification, I should say.
19              So I think that everybody has to admit that this is --
20   that China Ag wouldn't apply if the Court had only decided
21   these motions first and so it just becomes arbitrary.
22              Second, I would like to point out that in this case
23   plaintiffs filed their motion for class cert in April, I
24   believe, and then in May that's when the defendants filed their
25   12(b)(1).  And at that point, the intervenor's interests are
```

1    put into jeopardy to some extent.  And the -- it's true that

2    CSG --

3              THE COURT:  Mr. Ernst, weren't those issues raised in

4    the affirmative defenses?

5              MR. ERNST:  I was just getting to that.  CSG raised

6    the -- raised the real party interest in their affirmative

7    defense.  That's the only one that did it, the only defendant

8    that raised it.

9              But your Honor, defendants raise affirmative defenses

10   all the time in their -- in their responses, first responsive

11   pleadings, so they don't waive them.  And many times, many

12   times the motions are not brought.  And the reason is,

13   sometimes, anyways, they don't want to bring the motions

14   because they want to go up against certain plaintiffs so they

15   can choose the plaintiffs they want.

16             So the fact that they raise -- that they raise it in

17   their affirmative defenses doesn't put an intervenor on notice

18   that the claim might be dismissed.  What puts them on notice

19   is the actual motion that's filed, and that wasn't filed for

20   three years after, even though all the facts and all the

21   circumstances that supported the motion were known almost

22   immediately.  They were known in the -- they were known from

23   the complaint where the plaintiffs admitted that they filed

24   bankruptcy proceedings.  So that three years delay is

25   attributed to the defendants who waited that long to file it.

```
 1          THE COURT:  Well, you know, Mr. Ernst, I'm not
 2   following that part.  If it was known to them, it certainly was
 3   known to you.  As you say, it was pleaded in the complaint.  So
 4   I would think that even going in, when you were signing up the
 5   plaintiffs, you would have detected that maybe there were some
 6   warts that you had to address and found someone else to proceed
 7   with.
 8          MR. ERNST:  That's -- that's potentially true, your
 9   Honor, but it's -- the intervenors didn't know of it.
10          THE COURT:  Oh, all right.  I get your point.
11          How do you deal with the case that charges the
12   intervenors with the same knowledge because they have common
13   counsel?
14          MR. ERNST:  I -- I have not seen that case, your
15   Honor, and I disagree that they have -- they are charged with
16   any knowledge before, before they are represented by counsel.
17   That just would seem grossly unfair.
18          THE COURT:  All right.
19          MR. ERNST:  In any event, your Honor, what else I
20   would like to say about China Ag is that I think Mr. Stidham
21   argued that there were no carveouts or no -- that China Ag made
22   no distinction regarding intervenors.
23          Well, that's because that issue was not before the
24   Supreme Court, and the Supreme Court generally decides only
25   the issues before it.  So it didn't carve out an exception for
```

 1    intervenors because there were no intervenors in the case.

 2    And it didn't distinguish -- it didn't fail to distinguish

 3    intervenors who filed before the motion for class cert because

 4    there were no such litigants before it and no such arguments

 5    made before it.  So the fact that it's silent on the issue does

 6    not mean that it decided that in any way.

 7            And once again, China Ag simply does not deal with

 8    this precise issue, which is, can a person intervene before

 9    the class action is -- before the class certification motion is

10    decided and that subsequently represent the class when they

11    would be otherwise qualified.

12            And there are some -- there is one other point I would

13    like to make is, there was argument that the Court determined

14    that these particular plaintiffs were not sufficient to

15    represent the class for various reasons, but with respect to

16    the bankruptcy defendants, the Court indicated that those

17    defendants did seem qualified at first glance until they looked

18    at the bankruptcy issue, and that's what essentially

19    disqualified them.

20            And so these intervenors stand in those shoes, but

21    they don't have the bankruptcy issue.  So they are -- they

22    would be qualified to represent the class representatives, the

23    putative class members here with regard to that specific type

24    of claim that the Court identified as potentially well served

25    by class status, which is, they failed to answer their

1    questionnaire and they had an auto adjudication of fraud based

2    on the failure to answer.

3            And that was how the system was set up, that's how it

4    was programmed, is if they didn't answer, if the claimant

5    didn't answer within a given amount of time, it automatically

6    found them guilty of fraud.  And so that's the class that these

7    potential intervenors would represent.

8            And the Court noted that that was a legitimate class

9    that could be represented in this case, but that the plaintiffs

10   herein could not represent that putative class because of their

11   bankruptcy issues which created these affirmative defenses

12   that, as the Court noted, took up a lot of litigation.

13           So we -- these other intervenors don't have that

14   problem and would be qualified to represent the class.

15           Your Honor, before I forget, I do have that Westlaw

16   cite.

17           THE COURT:  I was just about to ask you for that.  Go

18   ahead.

19           MR. ERNST:  It's 2002 WL 33934282.

20           THE COURT:  All right.  Thank you very much.  I

21   appreciate your presentations.  The motions are submitted.

22   I will get you a written decision shortly.

23           I have several motions on this case under advisement,

24   and I hope to -- I don't think I should commit to this in

25   public, but I will anyway.  I hope to have them all decided by

 1    the end of the month.

 2            So if there is nothing further, then, I will recess

 3    this session of court.

 4            I would like my staff to say on the call here and I

 5    will excuse everyone else.  I hope you all stay well.

 6                    (Proceedings adjourned at 4:29 p.m.)

 7                        *       *       *

 8

 9

10                    CERTIFICATE OF COURT REPORTER

11

12        I certify that the foregoing is a correct transcript

13    from the record of proceedings in the above-entitled matter.

14

15    _____        *July 28, 2021*
      RENE L. TWEDT, CSR-2907, RDR, CRR, CRC        Date
16        Federal Official Court Reporter

17

18

19

20

21

22

23

24

25